**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INTELLECT WIRELESS, INC., | |
| Plaintiff and Counter-Defendant, | Case No. 1:09-cv-02945 |
| v. | Honorable Judge William T. Hart |
| HTC CORPORATION, HTC AMERICA, INC., and AT&T MOBILITY LLC, | Magistrate Judge Geraldine Scott Brown |
| Defendants and Counter-Claimants. | |

<u>**HTC CORPORATION AND HTC AMERICA, INC.'S FIRST AMENDED ANSWER,
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO INTELLECT WIRELESS,
INC.'S AMENDED COMPLAINT**</u>

Defendants HTC Corporation and HTC America, Inc. (collectively, "HTC") submit its answer, affirmative defenses and counterclaims to Plaintiff Intellect Wireless, Inc.'s ("Intellect Wireless") Amended Complaint as follows:

<u>NATURE OF SUIT</u>

1.    HTC admits that the Amended Complaint purports to assert a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, but denies the legal sufficiency of the claims and allegations.

<u>PARTIES</u>

2.    HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 of the Amended Complaint, and therefore denies the same.

3.    HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 3 of the Amended Complaint, and therefore denies the same.

4.     HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 of the Amended Complaint, and therefore denies the same.

5.     HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 of the Amended Complaint, and therefore denies the same.

6.     HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 of the Amended Complaint, and therefore denies the same.

7.     HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 of the Amended Complaint, and therefore denies the same.

8.     HTC admits that HTC Corporation is a foreign corporation with headquarters at No. 23, Xinghua Rd., Taoyuan City, Taoyuan County 330, Taiwan.  HTC denies that HTC Corporation does substantial business in this judicial district including the marketing, sale, offering for sale and importation of cellular telephone devices which are accused of patent infringement in this case.  To the extent not expressly admitted, HTC denies the allegations of Paragraph 8 of the Amended Complaint.

9.     HTC admits that HTC America, Inc. is the North American headquarters for HTC Corporation and is a Texas corporation with its offices at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington, 98005.  HTC admits that HTC America, Inc. conducts business in this judicial district including the marketing, sale, and offer for sale of certain cellular telephones. HTC denies that HTC America, Inc. does substantial business in the district.  HTC is without knowledge or sufficient information to form a belief as to which cellular telephone devices are accused of patent infringement in this case and therefore denies that it does substantial business in this judicial district including the marketing, sale, offer for sale, and importation of cellular

telephone devices which are accused of patent infringement in this case. To the extent not expressly admitted, HTC denies the allegations of Paragraph 9 of the Amended Complaint.

10.     HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the Amended Complaint, and therefore denies the same.

11.     HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Amended Complaint, and therefore denies the same.

JURISDICTION AND VENUE

12.     HTC admits that this Court has exclusive jurisdiction over the subject matter of this case under 28 U.S.C. § 1338(a).

13.     HTC admits that HTC America, Inc. transacts business in this district, but denies that it has committed acts of infringement in this judicial district. HTC denies that HTC Corporation transacts business in this district and denies that it has committed acts of infringement in this judicial district. HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13 of the Amended Complaint with respect to Research In Motion and AT&T Mobility, and therefore denies the same. To the extent not expressly admitted, HTC denies the allegations of Paragraph 13 of the Amended Complaint.

PATENT INFRINGEMENT

14.     HTC denies the allegations of Paragraph 14 of the Amended Complaint.

15.     HTC denies the allegations of Paragraph 15 of the Amended Complaint.

16.     HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 of the Amended Complaint, and therefore denies the same.

17.     HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 17 of the Amended Complaint, and therefore denies the same.

18.     HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 of the Amended Complaint, and therefore denies the same.

19.     HTC is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 of the Amended Complaint, and therefore denies the same.

20.     HTC denies the allegations of Paragraph 20 of the Amended Complaint.

<u>PRAYER FOR RELIEF</u>

Responding to Intellect Wireless, Inc.'s prayer for relief, HTC denies that Intellect Wireless is entitled to any relief, and specifically denies all of the allegations and prayers for relief contained in paragraphs A-D of its prayer for relief.

**<u>AFFIRMATIVE DEFENSES</u>**

Without admitting that it bears the burden of proof as to any of them, HTC asserts the following affirmative defenses:

<u>AFFIRMATIVE DEFENSE NO. 1</u>

(Failure to State a Claim)

21.     The Amended Complaint, and each cause of action therein, fails to state any claims against HTC upon which relief can be granted.

## AFFIRMATIVE DEFENSE NO. 2

### (Non-Infringement)

22.     HTC has not directly or indirectly infringed, or contributed to or induced the infringement of any valid and enforceable claim of U.S. Patent No. 7,266,186 ("the '186 patent") and U.S. Patent No. 7,310,416 ("the '416 patent") and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

## AFFIRMATIVE DEFENSE NO. 3

### (Invalidity)

23.     Some or all of the claims of the '186 patent and the '416 patent are invalid for failing to satisfy one or more requirements of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

## AFFIRMATIVE DEFENSE NO. 4

### (Prosecution History Estoppel)

24.     HTC has not and is not infringing some or all of the claims of the '186 patent and the '416 patent at least due to statements, representations, admissions, elections, positions, concessions and filings made to the U.S. Patent and Trademark Office ("USPTO") during the prosecution of the applications that matured into the '186 patent and the '416 patent that, in part or collectively, constitute prosecution history estoppel barring Intellect Wireless from asserting that the claims of the patents encompass or are infringed by any product or activities of HTC.

25.     HTC has not and is not infringing some or all of the claims of the '186 patent and the '416 patent at least due to statements, representations, admissions, elections, positions, concessions and filings made to the USPTO during the prosecution of one or more of U.S. Application Nos. 08/726,024, 08/177,851, and 60/005,029, which the '186 patent and the '416 patent claim priority to, and one or more of the applications that are related to the '186 patent and

the '416 patent, including, but not limited to, U.S. Patent Application Nos. 11/052,560, 11/055,846, 11/059,121, 11/115,445, 11/134,669, 11/134,670, 12/380,320, 09/ 477,167, 10/171,373, 10/692,179, 10/613,734, 10/047,191, 10/728,440 and 09/913,315 that, in part or collectively, constitute prosecution history estoppel barring Intellect Wireless from asserting that the claims of the patents encompass or are infringed by any product or activities of HTC.

<u>AFFIRMATIVE DEFENSE NO. 6</u>

(Damages Barred by Lack of Notice)

26.    Intellect Wireless's claim for damages is barred, in whole or in part, by a failure to satisfy the requirements of 35 U.S.C. § 287(a).

<u>AFFIRMATIVE DEFENSE NO. 7</u>

(No Costs)

27.    Intellect Wireless is barred by 35 U.S.C. § 288 from receiving any costs associated with this suit.

<u>AFFIRMATIVE DEFENSE NO. 8</u>

(No Injunctive Relief)

28.    Intellect Wireless is not entitled to any injunctive relief because any alleged injury to Intellect Wireless is not immediate or irreparable and Intellect Wireless has an adequate remedy at law for any alleged injury.

<u>AFFIRMATIVE DEFENSE NO. 9</u>

(Unenforceability)

**General Overview**

29.    The '186 and '416 patent are unenforceable due to inequitable conduct committed by the inventor, Daniel A. Henderson ("Henderson"), and the prosecuting attorney, Robert K. Tendler ("Attorney Tendler"), when they submitted Henderson's sworn declarations to the

USPTO containing false and misleading representations in order to obtain an allowance of the '186 and '416 patents.

30. As the inventor of the patents-in-suit, Henderson had a duty of candor and good faith in dealing with the USPTO, pursuant to 37 C.F.R. § 1.56(a).

31. As the attorney prosecuting the patents-in-suit, Attorney Tendler had a duty of candor and good faith in dealing with the USPTO, pursuant to 37 C.F.R. § 1.56(a).

32. The declarations allege that Henderson had built (*i.e.*, "actually reduced to practice") the claimed inventions in the '186 and '416 patents, when in fact, the inventions were never built.

33. Henderson and Attorney Tendler knew, at the time of submission of the false declarations, that the invention had never actually been actually reduced to practice.

34. Henderson verified an interrogatory response on behalf of Intellect Wireless that unequivocally states that "there was not an actual reduction to practice of the inventions of the '186 patent or the '416 patent."

35. The false declarations were submitted in order to overcome material prior art cited by the Examiner during prosecution of the '186 and '416 patents.

36. The USPTO Examiner relied upon the false declarations when allowing the '186 and '416 patents to issue.

**The Inventor's Applications for the Patents-in-suit, and His Related '846 Application**

37. The application that issued as the '186 patent, United States Patent Application No. 10/033,824 ("the '824 application"), was filed on December 19, 2001 naming Daniel A. Henderson as the sole inventor.

38.     The application that issued as the '416 patent, United States Patent Application No. 11/,045,677 ("the '677 application"), was filed on January 28, 2005 also naming Henderson as the sole inventor.

39.     United States Patent Application No. 11/055,846 ("the '846 application") is in the same patent family as both the '186 and '416 patents, and was also filed naming Henderson as the sole inventor.  The '846 application ultimately issued as United States Patent No. 7,257,210.

40.     The '846 application contains claims of similar scope to those of the '186 and '416 patents.

41.     The same attorney, Attorney Tendler, prosecuted the '846, '824, and '677 applications.

42.     The same USPTO Examiner, Olisa Anwah, examined the '846, '824, and '677 applications.

**The Invalidating Albert Patent**

43.     The '186 and '416 patents both claim priority to United States Patent Application No. 08/177,851 which was filed on January 5, 1994.  The '186 and '416 patents allege January 5, 1994 as their priority date.

44.     United States Patent No. 5,452,356 issued to David E. Albert on September 19, 1995 (the "Albert reference").

45.     The Albert reference has a filing date, and thus, a priority date of February 10, 1993.

46.     The Albert reference was filed before the alleged priority date of the '186 patent and the '416 patent.

47.     The Albert reference is material to the patentability of the '186 and '416 patents.

48.     The Albert reference invalidates, either alone or in combination with other references, numerous claims of the '186 patent.

49.     The Albert reference invalidates, either alone or in combination with other references, numerous claims of the '416 patent.

50.     According to a February 12, 2007 Rule 131 declaration that Henderson submitted to the USPTO in support of the '846 application, the Albert reference "was cited against the claims of" the '846 Application by the USPTO Examiner.

51.     According to a February 16, 2007 Rule 131 declaration that Henderson submitted to the USPTO in support of the '824 application, the Albert reference "was cited against the claims of" the '824 Application by the USPTO Examiner.

52.     According to a February 16, 2007 Rule 131 Declaration that Henderson submitted to the USPTO in support of the '677 application, the Albert reference "was cited against the claims of" the '677 Application by the USPTO Examiner.

I.      **HENDERSON COMMITTED INEQUITABLE CONDUCT**

    **A.      HENDERSON FALSELY REPRESENTED THAT HIS INVENTIONS WERE ACTUALLY REDUCED TO PRACTICE**

53.     According to an interview summary submitted by Henderson during the prosecution of the '846 application:  "It was agreed that by putting [a] non-facsimile limitation in all of the companion cases [meaning the '824 and '677 applications], these cases, too, would be allowable, and that the Examiner would do this by Examiner's amendment.  Thereafter, Fan Tsang [Examiner Anwah's Supervisory Primary Examiner] refused to allow the ['846] Application without a further search by Examiner Anwah.  Examiner Anwah in the further search found the Albert patent, namely U.S. Patent No. 5,452,356.  Applicant determined that he could swear behind this reference and the undersigned supplied a Rule 131 Declaration on

February 12, 2007, docketed by the Examiner on February 13, 2007.  Examiner Anwah, upon review of the February 12, 2007 rule 131 Declaration and in reliance thereon, allowed the case."

## Henderson and Attorney Tendler Submit Original and Corrected Rule 131 Declarations in Support of the '846 Application

54.     On February 9, 2007, Henderson submitted, through Attorney Tendler, a Rule 131 declaration (the "Initial '846 Declaration").

55.     The Initial '846 Declaration was submitted to overcome the Examiner's impending rejection of at least one claim of the '846 application, based on the Albert reference.

56.     The Initial '846 Declaration attempted to overcome the Albert reference by predating the Albert reference.

57.     In the Initial Declaration, Henderson states that "the claimed invention was actually reduced to practice and was demonstrated at a meeting with Kazuo Hashimoto of Hashimoto Corporation in July of 1993 pursuant to a licensing agreement in which the undersigned was required to produce a working prototype (Appendix W), and that block diagrams for this prototype are presented in Appendices F, G, and X hereto."  This statement was false.  The claimed invention was never actually reduced to practice and was not demonstrated at a meeting with Kazuo Hashimoto in July of 1993.

58.     The Examiner initially allowed the '846 application based upon the Initial '846 Declaration containing the false statements.

59.     Three days later, on February 12, 2007, Henderson submitted a revised version of the Initial '846 Declaration (the "Revised '846 Declaration"), which lacked the specific statements regarding demonstrating the invention to Hashimoto, and the specific statement regarding actually reducing the invention to practice in July of 1993.

-10-

60. In the Revised '846 Declaration, Henderson still represents to the USPTO that "diligence is shown from the conception date to the date of actual reduction to practice." This statement was false. Henderson never actually reduced the invention to practice.

61. The Revised '846 Declaration was submitted to overcome the Examiner's impending rejection of at least one claim of the '846 application based on the Albert reference.

62. The Revised '846 Declaration was submitted in order to "swear behind" the Albert reference by alleging an earlier invention date than that of the Albert reference.

63. In submitting the Revised '846 Declaration, Attorney Tendler states in a cover letter to the USPTO that "[t]he following is submitted because it is unclear whether the fax submission [of the February 9, 2010 declaration] was received and because Applicant wishes to submit a revision thereto."

64. The Revised '846 Declaration lacks any other explanation for the revisions to the Initial Declaration.

65. The Revised '846 Declaration lacks any explanation of what was revised or why revisions were made.

66. On March 1, 2007, in response to receiving the Revised '846 Declaration, the Examiner allowed the pending claims, stating, *inter alia*, "that the claims are allowable over Albert, U.S. Patent No. 5,452,356 in light of Appendix B of the Affidavit submitted on 2/13/07."

67. Later, the Examiner clarified in an interview summary that "agreement has in fact been reached based on the Applicant's agreement to modify 'picture' with 'non-fax' and in view of the removal of the Albert reference by a Rule 131 Declaration."

68. The Examiner allowed the '846 application based upon the declaration submitted by Henderson containing the false representation of actually reducing the invention to practice.

**Henderson and Attorney Tendler Submit a Rule 131 Declaration in Support of the '824**

**Application that Falsely Claims an Actual Reduction to Practice**

69.     On February 16, 2007, Henderson, through Attorney Tendler, submitted a Rule 131 declaration in support of the '824 Application ("the '824 Declaration").

70.     The '824 Declaration contained false and misleading statements.

71.     The submission of the false '824 Declaration led to the allowance of the '186 patent.

72.     The '824 Declaration was submitted to overcome the Examiner's impending rejection of at least one claim of the '824 application based on the Albert reference.

73.     In the '824 Declaration, Henderson states that "in the prosecution of the above-captioned case a reference to David E. Albert, U.S. Patent No. 5,452,356, which issued September 1995 and has a filing date of February 10, 1993, was cited against the claims of this case."

74.     The '824 Declaration was submitted in order to "swear behind" the Albert reference by alleging an earlier invention date than that of the Albert reference.

75.     Henderson states in the '824 Declaration "[t]hat diligence is shown from the conception date to the date of actual reduction to practice and from the conception date to the constructive reduction to practice afforded by the filing date of this patent application."  This is a false statement.  Henderson never actually reduced the invention to practice.

76.     Henderson and Attorney Tendler submitted a number of appendices to the '824 Declaration.

77.     In addition to the false statement in the '824 Declaration alleging an actual reduction to practice, at least some of the appendices to the '824 Declaration, and their descriptions, suggest that Henderson had actually reduced the invention to practice.

78.     Appendix U to the '824 Declaration is described as "Product view and feature chart shows the 'intellect': [*sic*] prototype now in the Smithsonian that was in development for Hashimoto demonstration."  This statement is misleading given Henderson's claim of an actual reduction to practice of the invention.

79.     Appendix GG to the '824 Declaration is described as "'Intellect' product brochure and packing receipt."  This statement is misleading given Henderson's claim of an actual reduction to practice of the invention.

80.     Henderson further claims in the '824 Declaration "[t]hat the invention was not abandoned, suppressed or concealed, as is shown by month-to-month activity in support of bringing the claimed subject matter to commercialization."  This statement is misleading given Henderson's claim of an actual reduction to practice of the invention.

81.     Henderson signed the '824 Declaration under penalty of perjury.

82.     Directly above the signature line, the '824 Declaration states:  "I further declare that all the statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon."

83.     The Examiner allowed the '824 application, which issued as the '186 patent, based upon the declaration submitted by Henderson containing the false representation of actually reducing the invention to practice.

## Henderson and Attorney Tendler Submit a Rule 131 Declaration in Support of the '677 Application that Falsely Claims an Actual Reduction to Practice

84.     Also on February 16, 2007, Henderson, through Attorney Tendler, submitted a Rule 131 declaration to the USPTO in support of the '677 Application ("the '677 Declaration"). The submission of the false '677 Declaration led to the allowance of the '416 patent.

85.     The '677 Declaration was submitted to overcome the Examiner's impending rejection of at least one claim of the '677 application based on the Albert reference.

86.     Henderson states in the '677 Declaration that "in the prosecution of the above-captioned case a reference to David E. Albert, U.S. Patent No. 5,452,356, which issued September 1995 and has a filing date of February 10, 1993, was cited against the claims of this case."

87.     The '677 Declaration was submitted in order to "swear behind" the Albert reference by alleging an earlier invention date than that of the Albert reference.

88.     Henderson states in the '824 Declaration "[t]hat diligence is shown from the conception date to the date of actual reduction to practice and from the conception date to the constructive reduction to practice afforded by the filing date of this patent application."  This is a false statement.  Henderson never actually reduced the invention to practice.

89.     Henderson and Attorney Tendler submitted a number of appendices to the '677 Declaration.

90.     At least some of the appendices to the '677 Declaration, as well as their descriptions, suggest that Henderson actually reduced the invention to practice.

91.     Appendix U to the '677 Declaration is described as "Product view and feature chart shows the 'intellect': [*sic*] prototype now in the Smithsonian that was in development for Hashimoto demonstration." This statement is misleading given Henderson's claim of an actual reduction to practice of the invention.

92.     Appendix GG to the '677 Declaration is described as "'Intellect' product brochure and packing receipt." This statement is misleading given Henderson's claim of an actual reduction to practice of the invention.

93.     Henderson further stated in the '677 Declaration "[t]hat the invention was not abandoned, suppressed or concealed, as is shown by month-to-month activity in support of bringing the claimed subject matter to commercialization." This statement is misleading given Henderson's claim of an actual reduction to practice of the invention.

94.     Henderson signed the '677 Declaration under penalty of perjury.

95.     Directly above the signature line, the '677 Declaration states: "I further declare that all the statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any patent issuing thereon."

96.     The Examiner allowed the '677 application, which issued as the '416 patent, based upon the declaration submitted by Henderson containing the false representation of actually reducing the invention to practice.

## Intellect and Henderson Admit that the Inventions of the '186 and '416 Patents were Never *Actually* Reduced to Practice

97.     On February 19, 2010, Intellect Wireless served its First Supplemental Response to HTC Corporation's Interrogatory No. 1.

98.     In that response, Intellect Wireless states: "While there were some mock-ups of the [*sic*] Mr. Henderson's invention, there was not an actual reduction to practice of the inventions of the '186 patent or the '416 patent either before or after the constructive reduction to practice." Intellect further states that "neither Daniel Henderson nor Intellect Wireless actually reduced to practice the inventions of the '186 patent or the '416 patent, accordingly Intellect Wireless does not have any products that are an actual reduction to practice of the '186 patent or the '416 patent."

99.     On September 20, 2010, Intellect Wireless provided a verification of that interrogatory response, signed by the inventor of the patents-in-suit, Henderson, as Intellect's "Chief Executive Officer."

100.     Intellect Wireless and Daniel Henderson concede that the inventions of the '186 and '416 patents were never actually reduced to practice.

101.     The signed verification by Henderson confirms that the '824 Declaration, '677 Declaration, Initial '846 Declaration, and Revised '846 Declaration all contain a false affirmative statement, namely, that the inventions had been actually reduced to practice, when they had not.

102.    The signed verification by Henderson also confirms that the Henderson's statements in the Initial '846 Declaration regarding demonstrating the invention to Kazuo Hashimoto, and the specific statement regarding actually reducing the invention to practice in July of 1993, were false.

### Henderson's Misrepresentations regarding Reduction to Practice were Material

103.    Henderson's false statements that the inventions underlying the '186 and '416 patents were actually reduced to practice were material to the patentability of the '824 and '677 applications.

104.    Affirmative misrepresentations in affidavits submitted to the USPTO are inherently material.

105.    A reasonable examiner would have considered the true nature of Henderson's reduction to practice of the invention to be important in deciding whether to allow the '824 and '677 applications to issue as patents.

106.    Henderson stated "in the prosecution of the above-captioned case a reference to David E. Albert, U.S. Patent No. 5,452,356, which issued September 1995 and has a filing date of February 10, 1993, was cited against the claims of this case." The false declarations in the '846, '824 and '677 applications were submitted to overcome the Albert reference.

107.    The Examiners ultimately allowed the '846, '824, and '677 applications based on the false statements in Henderson's Rule 131 declarations.

108.    A reasonable examiner would consider Henderson's misrepresentations important because Henderson's claim that the inventions had actually been reduced to practice supported his claim that he had diligently worked to reduce the inventions to practice from the time he purportedly conceived of them.

109.    The fact that Henderson had not actually reduced the inventions to practice refutes his claim that he diligently worked to actually reduce the inventions to practice from the time of conception, and that he had not abandoned, suppressed, or concealed them.

## Henderson Knew His Misrepresentations were Material

110.    Henderson knew his representations that the inventions had been reduced to practice were false.

111.    Henderson reached an agreement with the Examiner whereby he understood that he could establish the Albert reference was not prior art if he submitted the Rule 131 declarations in support of all three pending applications.

112.    Henderson knew that the Examiners ultimately allowed the '846, '824, and '677 applications because of the false representations in his Rule 131 declarations.

## Henderson Intended to Deceive the Patent Office

113.    Upon information and belief, Henderson communicated to the USPTO that the inventions underlying the '186 and '416 patents were actually reduced to practice, with intent to deceive and mislead the Examiners of the '824 and '677 applications.  This allegation is based on at least the following:

(a)  The allegations in paragraphs 29-112.

(b)  Henderson's Rule 131 Declarations claiming that the inventions had been actually reduced to practice, which was false.  Henderson knew, due to the nature of the information and because he was the purported sole inventor, that the inventions were not actually reduced to practice.  Therefore, intent to deceive may be established as a matter of law.

(c)  Henderson intended for the USPTO to rely on his misrepresentations.

(d)  Henderson misrepresented that his inventions had been actually reduced to practice at least four times in the course of applying for three patents.

(e)  In the same sentence in his Rule 131 declarations, Henderson clearly differentiated between actually reducing the inventions to practice and constructively reducing the inventions to practice.

(f)  The appendices that Henderson attached to his Rule 131 declarations are of such a nature that their inclusion is directed at showing actual, rather than constructive reduction to practice.

(g)  Henderson's "prototype" in the Smithsonian's collection is in fact a non-functioning mock-up lacking any electronics.

(h)  Henderson is an experienced inventor, and has significant experience with the United States patent system.  According to Intellect's First Amended Complaint:  "Mr. Henderson has been awarded 25 United States patents with several more pending that relate to picture / video messaging in wireless devices such as PDA's, portable computers and cellular phones."  (First Amended Complaint ¶ 3.)

(i)  Henderson touts himself as knowledgeable regarding patent law, and even lectures on the subject.  According to the website for one of his companies, PhoneTel Patent Services Inc. ("PhoneTel"):  "He has broad experience in the creation, management, and licensing of intellectual property. … He has lectured on 'The Power of the Patent.'  Henderson's many ties to the New Jersey Institute of Technology include establishing the PhoneTel IE Inventions and Patents Fund, … and involvement in creating a new course entitled 'Inventions and Patents.'"  "History of Mr. Henderson" on PhoneTel Patent Services

Inc.'s website, available at http://www.phonetel.com/html/henderson.html (last visited October 26, 2010).

(j)  Henderson in an experienced patent litigant.  According to PhoneTel's website, Henderson has been suing companies through PhoneTel since at least 1998.  "News" on PhoneTel's website, available at http://www.phonetel.com/html/news.html (last visited October 26, 2010).

114.     Upon information and belief, further information evidencing Mr. Henderson's intent to deceive is within the exclusive control of Henderson, Intellect, Suzanne Billing Henderson, Henderson's company Innovad, Attorney Tendler, the Law Offices of Robert K. Tendler, and/or Hashimoto Corporation.

115.     The '186 and '416 patents are therefore unenforceable based on the inequitable conduct by Henderson in falsely representing to the USPTO that the purported inventions had been actually reduced to practice.

B.      **HENDERSON FALSELY REPRESENTED THAT HE HAD DEMONSTRATED A WORKING PROTOTYPE OF THE INVENTION UNDERLYING THE '846 APPLICATION**

116.     In Henderson's Initial '846 Declaration, Henderson states that "the claimed invention was actually reduced to practice and was demonstrated at a meeting with Kazuo Hashimoto of Hashimoto Corporation in July of 1993 pursuant to a licensing agreement in which the undersigned was required to produce a working prototype (Appendix W), and that block diagrams for this prototype are presented in Appendices F, G, and X hereto."

117.     Henderson's Revised '846 Declaration lacks the statements regarding demonstrating the invention and actually reducing it to practice in July of 1993.

118.    In submitting the Revised '846 Declaration, Henderson, through Attorney Tendler, states in a letter to the USPTO that "[t]he following [Revised Declaration] is submitted because it is unclear whether the fax submission [of the February 9, 2010 declaration] was received and because Applicant wishes to submit a revision thereto."

119.    Neither Henderson nor Attorney Tendler provided any other explanation for the changes to the declaration and or any explanation of what was changed in the declaration.

120.    Henderson's sworn statement that "the claimed invention was actually reduced to practice and was demonstrated at a meeting with Kazuo Hashimoto of Hashimoto Corporation in July of 1993 pursuant to a licensing agreement in which the undersigned was required to produce a working prototype (Appendix W), and that block diagrams for this prototype are presented in Appendices F, G, and X hereto," was false.

121.    Henderson did not actually reduce the invention of the '846 application to practice.

122.    Henderson and Tendler failed to properly cure the false statements made to the Patent Office.

123.    In fact, Henderson and Tendler furthered the fraud on the USPTO by submitting additional false declarations to the Patent Office in order to secure additional patents.

**Henderson's Misrepresentations Regarding Building a Prototype in July 1993 are Material**

124.    Henderson's statements regarding building a prototype of the invention and demonstration to Kazuo Hashimoto of Hashimoto Corporation in July 1993 are material.

125.    A reasonable examiner would have considered the true nature of Henderson's reduction to practice important in deciding whether to allow the '846, '824, and '677 applications to issue as patents.

126.    The Examiners initially allowed the '846 application to issue as patents due to misrepresentations regarding the actual reduction to practice in July 1993 in Henderson's Initial Rule 131 declaration.

127.    A reasonable examiner would consider Henderson's misrepresentations important because Henderson's claim that he had demonstrated a working prototype tended to support his claim that he had diligently worked to reduce the invention to practice from the time he purportedly conceived of it.

128.    The fact that Henderson had not actually demonstrated a working prototype of his invention tended to refute his claims that he diligently worked to reduce the invention to practice from the time of purported conception, that he actually reduced the invention to practice, and that he had not abandoned, suppressed, or concealed the invention.

**Henderson Knew His Misrepresentations were Material**

129.    Henderson knew that his statements in the Initial '846 Declaration that he had actually reduced the invention to practice and demonstrated a working prototype of the invention in July of 1993 were material.

130.    False affirmative statements in Rule 131 declarations are inherently material.

131.    Henderson knew that he needed to overcome the Albert reference in order for the '846, '824, and '677 applications to issue as patents.

132.    Henderson submitted his Revised '846 Declaration in order to cover-up the misrepresentations.

133.    Henderson failed to inform the USPTO, during the prosecution of the '846 application, that he had not actually reduced the invention to practice.

134.     Henderson failed to inform the USPTO, during the prosecution of the '824 application, that he had not actually reduced the invention to practice.

135.     Henderson failed to inform the USPTO, during the prosecution of the '677 application, that he had not actually reduced the invention to practice.

136.     Henderson failed to inform the USPTO, during the prosecution of the '846 application, that he had not demonstrated a working prototype of the invention in July 1993.

137.     Henderson failed to inform the USPTO, during the prosecution of the '824 application, that he had not demonstrated a working prototype of the invention in July 1993.

138.     Henderson failed to inform the USPTO, during the prosecution of the '677 application, that he had not demonstrated a working prototype of the invention in July 1993.

139.     Henderson reached an agreement with the Examiner whereby the Albert reference would be overcome through the submission of the Rule 131 declarations in the '846, '824, and '677 applications.

140.     Henderson knew that the Examiner ultimately allowed the '846, '824, and '677 applications because of the representations in his Rule 131 declarations.

141.     The Rule 131 declarations submitted in the '846, '824, and '677 applications contain one or more false statements.

## Henderson Intended to Deceive the Patent Office

142.     Upon information and belief, Henderson intended to deceive and mislead the Examiner of the '846, '824 and '677 applications.  This allegation is based on at least the following:

(a)  The allegations in paragraphs 29-141.

(b)  Henderson states in his Initial '846 Declaration claimed that he demonstrated a working prototype, and thus actually reduced the invention to practice by July of 1993, which was false.  Henderson knew this was false.  Therefore, intent to deceive may be established as a matter of law.

(c)  The Initial '846 Declaration stated that Henderson had actually reduced the invention underlying the '846 application to practice.  Henderson knew his inventions were not actually reduced to practice.  Therefore, intent to deceive may be established as a matter of law.

(d)  Neither Henderson nor Attorney Tendler properly cured the misrepresentation during the prosecution of the '846 application.

(e)  Neither Henderson nor Attorney Tendler informed the Examiner during the prosecution of the '846 application that Henderson never demonstrated a working prototype of the invention in July 1993.

(f)  Neither Henderson nor Attorney Tendler informed the Examiner during the prosecution of the '846 application that Henderson never actually reduced the invention to practice.

(g)  Henderson knew that the same Examiner, Olisa Anwah, was examining the '846, '824, and '677 applications.

(h)  In his Revised '846 Declaration, as well as the Rule 131 Declarations submitted in support of the '824 and '677 applications, Henderson falsely maintained that he had actually reduced the inventions to practice.

143.    Upon information and belief, further information evidencing Henderson's intent to deceive is within the exclusive control of Henderson, Suzanne Billing Henderson, Attorney

-24-

Tendler, the Law Offices of Robert K. Tendler, Henderson's company Innovad, and/or the Hashimoto Corporation.

## **Henderson's Inequitable Conduct Renders the '186 and '416 Patents Unenforceable**

144.     Henderson's inequitable conduct during the prosecution of the '846 application infected the prosecution of the '824 and '677 applications, rendering the '186 and '416 patents unenforceable.

145.     The same Examiner, Olisa Anwah, examined the '846, '824, and '677 applications.

146.     In order to predate the Albert reference, Henderson and Attorney Tendler submitted Rule 131 declarations during the prosecution of the '846, '824, and '677 applications, in which Henderson and Attorney Tendler represented the inventions had been actually reduced to practice.

147.     An agreement was reached between Henderson and Attorney Tendler, on the one hand, and Examiner Anwah, on the other, that the '846, '824, and '677 applications would be allowed if Henderson and Attorney Tendler submitted Rule 131 declarations that purported to predate the Albert reference.

148.     The USPTO allowed the '846, '824, and '677 applications to issue as patents based on the Rule 131 declarations submitted by Henderson and Tendler.  These declarations falsely claimed that diligence was shown from the date of conception to the date of actual reduction to practice.  There was never an actual reduction to practice of the inventions of the '846, '824, and '677 applications.

II.     **ATTORNEY TENDLER COMMITTED INEQUITABLE CONDUCT**

A.     **ATTORNEY TENDLER FAILED TO PROPERLY NOTIFY THE USPTO THAT THE INITIAL '846 DECLARATION CONTAINED MATERIAL MISREPRESENTATIONS**

149.    The Initial '846 Declaration submitted by Attorney Tendler contains the statement that "the claimed invention was actually reduced to practice and was demonstrated at a meeting with Kazuo Hashimoto of Hashimoto Corporation in July of 1993 pursuant to a licensing agreement in which the undersigned was required to produce a working prototype (Appendix W), and that block diagrams for this prototype are presented in Appendices F, G, and X hereto."

150.    That statement was false, as explained in paragraphs 97-102 and 116-123.

151.    The statement was material, as explained in paragraphs 124-128.

152.    Attorney Tendler knew the statement was false and submitted the Revised '846 Declaration, which omitted the statement.

153.    Attorney Tendler knew there had been no actual reduction to practice of the invention, but still submitted the Revised '846 declaration which alleged that diligence was show from the date of conception to the date of actual reduction to practice.

**Attorney Tendler Knew Henderson's Misrepresentations were Material**

154.    Attorney Tendler knew that Henderson's statement in the Initial '846 Declaration that Henderson had demonstrated a working prototype evidencing actual reduction to practice in July of 1993 was material.

155.    False affirmative statements in Rule 131 declarations are inherently material.

156.    Attorney Tendler knew that he needed to overcome the Albert reference in order for the '846, '824, and '677 applications to issue as patents.

157.     Attorney Tendler submitted the Revised '846 Declaration in order to cover-up the misrepresentations.

158.     Attorney Tendler failed to inform the USPTO, during the prosecution of the '846 application, that Henderson had not actually reduced the invention to practice.

159.     Attorney Tendler failed to inform the USPTO, during the prosecution of the '824 application, that Henderson had not actually reduced the invention to practice.

160.     Attorney Tendler failed to inform the USPTO, during the prosecution of the '677 application, that Henderson had not actually reduced the invention to practice.

161.     Attorney Tendler failed to inform the USPTO, during the prosecution of the '846 application, that Henderson had not demonstrated a working prototype of the invention in July 1993.

162.     Attorney Tendler failed to inform the USPTO, during the prosecution of the '824 application, that Henderson had not demonstrated a working prototype of the invention in July 1993.

163.     Attorney Tendler failed to inform the USPTO, during the prosecution of the '677 application, that Henderson had not demonstrated a working prototype of the invention in July 1993.

164.     Attorney Tendler reached an agreement with the Examiner whereby the Albert reference would be overcome through the submission of the Rule 131 declarations in the '846, '824, and '677 applications.

165.     Attorney Tendler knew that the Examiner ultimately allowed the '846, '824, and '677 applications because of the representations in Henderson's Rule 131 declarations.

166.     The Rule 131 declarations submitted in the '846, '824, and '677 applications contain one or more false statements.

### Attorney Tendler Intended to Deceive the USPTO

167.     On information and belief, Attorney Tendler intended to deceive and mislead the Examiners of the '846, '824, and '677 applications.  This allegation is based on at least the following:

(a)  The allegations in paragraphs 29-163.

(b)  Henderson states in his Initial '846 Declaration that he demonstrated a working prototype, and thus actually reduced the invention to practice by July of 1993, which was false.  Tendler knew this was false.  Therefore, intent to deceive may be established as a matter of law.

(c)  The Initial '846 Declaration stated that Henderson had actually reduced the invention underlying the '846 application to practice.  Tendler knew the inventions were not actually reduced to practice.  Therefore, intent to deceive may be established as a matter of law.

(d)  Neither Henderson nor Attorney Tendler properly cured the misrepresentations during the prosecution of the '846 application.

(e)  Neither Henderson nor Attorney Tendler informed the Examiner during the prosecution of the '846 application that Henderson never demonstrated a working prototype of the invention in July 1993.

(f)  Neither Henderson nor Attorney Tendler informed the Examiner during the prosecution of the '846 application that Henderson never actually reduced the invention to practice.

(g)  Tendler knew that the same Examiner, Olisa Anwah, was examining the '846, '824, and '677 applications.

(h)  In the Revised Declaration, as well as the Rule 131 Declarations submitted by Attorney Tendler in support of the '824 and '677 applications, Attorney Tendler still maintained that Henderson had actually reduced the inventions to practice.

168.    Upon information and belief, further information evidencing Attorney Tendler's intent to deceive is within the exclusive control of Henderson, Attorney Tendler, the Law Offices of Robert K. Tendler, Henderson's company Innovad, and/or the Hashimoto Corporation.

169.    As explained in paragraphs 144-148, Attorney Tendler's inequitable conduct in the '846 application infected the prosecution of the '824 and '677 applications, rendering the '186 and '416 patents unenforceable.

## B.    ATTORNEY TENDLER SUBMITTED THE RULE 131 DECLARATIONS IN THE '824 AND '677 APPLICATIONS KNOWING THEY CONTAINED A MATERIAL MISREPRESENTATION

170.    The '824 and '677 Declarations submitted by Attorney Tendler contained the false statement that "diligence is shown from the conception date to the date of actual reduction to practice."

171.    That false statement was material for at least the reasons explained in paragraphs 103-109.

### Attorney Tendler Knew that Henderson did Not Reduce the Inventions to Practice

172.    Attorney Tendler knew that the inventions claimed in the '846, '824 and '677 applications had not been actually reduced to practice.  This allegation is based on at least the following:

(a)  Through Attorney Tendler, in his Revised '846 Declaration, Henderson removed his representation in the Initial '846 Declaration that he had demonstrated a working prototype to Kazuo Hashimoto in July of 1993.

(b)  While Henderson's Revised Declaration, and the '824 and '677 Declarations claimed that Henderson had actually reduced the inventions to practice, those Declarations provided no specific information regarding the purported actual reduction to practice, and provided no testimony or other evidence actually establishing that a working example had been developed.

(c)  Upon information and belief, Henderson communicated to Tendler that the inventions in the '846, 824 and '677 applications had not been actually reduced to practice.

(d)  The appendices attached to the Rule 131 declarations do not demonstrate an actual reduction to practice.

173.    37 C.F.R. 10.23 provides:  "A practitioner who acts with reckless indifference to whether a representation is true or false is chargeable with knowledge of its falsity.  Deceitful statements of half-truths or concealment of material facts shall be deemed actual fraud within the meaning of this part."

174.    Even if Attorney Tendler did not know that Henderson never actually reduced the inventions of the '846, '824 and '677 applications to practice, for at least the reasons alleged in paragraphs 149-153 and 172, Attorney Tendler was recklessly indifferent to that fact.

**Attorney Tendler Intended to Deceive the USPTO**

175.    Upon information and belief, Attorney Tendler communicated to the USPTO that Henderson had actually reduced the inventions underlying the '824 and '677 applications to practice, with intent to deceive and mislead the Examiners.  This allegation is based on at least the following:

(a) The allegations in paragraphs 29-174.

(b) Attorney Tendler knew or was at least recklessly indifferent to the fact that Henderson's representation regarding actually reducing the inventions to practice was false. Therefore, intent to deceive may be established as a matter of law.

(c) Attorney Tendler intended for the USPTO to rely on his and Henderson's misrepresentations.

(d) Attorney Tendler made the misrepresentations regarding an actual reduction to practice at least four times in the course of applying for three patents.

(e) In the Rule 131 declarations submitted during prosecution of the '846, '824 and '677 applications, Henderson and Attorney Tendler differentiated, in the same sentence, between actually reducing the inventions to practice and constructively reducing the inventions to practice.

176.    Upon information and belief, further information evidencing Attorney Tendler's intent to deceive is within the exclusive control of Attorney Tendler, The Law Offices of Robert K. Tendler, Henderson, Intellect, and/or Henderson's company Innovad.

<u>AFFIRMATIVE DEFENSE NO. 10</u>

(Reservation of Rights)

177.    HTC reserves the right to add any additional defenses that discovery may reveal.

**<u>COUNTERCLAIMS</u>**

Pursuant to Federal Rule of Civil Procedure 13, HTC hereby asserts the following counterclaims against Intellect Wireless as follows:

<u>THE PARTIES</u>

178.    HTC Corporation is a foreign corporation with headquarters at No. 23, Xinghua Rd., Taoyuan City, Taoyuan County 330, Taiwan.

179.    HTC America, Inc. is a Texas Corporation with its offices at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005.

180.    On information and belief, Intellect Wireless is a Texas Corporation with offices in Fort Worth, Texas and Reston, Virginia.

181.    Intellect Wireless, by its Amended Complaint, has asserted and continues to assert that HTC is infringing the claims of U.S. Patent Nos. 7,266,186 (the "'186 patent") and 7,310,416 (the "'416 patent").  HTC, by its Answer, has asserted and continues to assert that it does not infringe any valid and enforceable claim of the '186 patent and the '416 patent, and that some or all of the claims of the '186 patent and the '416 patent are invalid.  Thus, an actual, justiciable controversy exists between HTC and Intellect Wireless concerning the infringement and validity of the claims of the '186 patent and '416 patent.

## JURISDICTION AND VENUE

182.    This Court has subject matter jurisdiction over the following Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a), the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

183.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) as a result of Intellect Wireless commencing this action in this district.

## COUNTERCLAIM NO. 1

### (Declaratory Judgment of Non-Infringement)

184.    HTC incorporates by reference the allegations set forth in paragraphs 178-183 as if set forth herein in their entirety.

185.    Intellect Wireless alleges that it owns all right, title, and interest in, and has standing to sue for infringement of the '186 patent and the '416 patent.  Intellect Wireless alleges

that HTC has directly and indirectly infringed, and has contributed to or induced infringement of the '186 patent and the '416 patent.

186.    HTC denies that it has directly and indirectly infringed, and has contributed to or induced infringement of the '186 patent and the '416 patent.

187.    There exists, therefore, an actual and justiciable controversy between HTC and Intellect Wireless with respect to the non-infringement of the claims of the '186 patent and the '416 patent.

188.    Accordingly, HTC hereby seeks entry of a declaratory judgment that it does not infringe any claim of the '186 patent and the '416 patent.

<u>COUNTERCLAIM NO. 2</u>

(Declaratory Judgment of Invalidity)

189.    HTC incorporates by reference the allegations set forth in paragraphs 178-188 as if set forth herein in their entirety.

190.    HTC alleges that some or all of the claims of the '186 patent and the '416 patent are invalid for failing to satisfy one or more requirements of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and/or 112.

191.    There exists, therefore, an actual and justiciable controversy between HTC and Intellect Wireless with respect to the invalidity of the claims of the '186 patent and the '416 patent.

192.    Accordingly, HTC hereby seeks entry of a declaratory judgment that the claims of the '186 patent and the '416 patent are invalid.

COUNTERCLAIM NO. 3

(Declaratory Judgment of Unenforceability)

193.    HTC incorporates by reference the allegations set forth in paragraphs 29-183 as if set forth herein in their entirety.

194.    HTC alleges that the '186 patent and the '416 patent are unenforceable based upon the inventor, Daniel Henderson, and the prosecuting attorney, Robert Tendler, committing inequitable conduct before the USPTO by falsely representing that the claimed inventions in the patents-in-suit were reduced to practice when they were not.

195.    There exists, therefore, an actual and justiciable controversy between HTC and Intellect Wireless with respect to the unenforceability of the claims of the '186 patent and the '416 patent.

196.    Accordingly, HTC hereby seeks entry of a declaratory judgment that the claims of the '186 patent and the '416 patent are unenforceable due to inequitable conduct.

PRAYER FOR RELIEF

WHEREFORE, HTC respectfully requests that:

A.    Intellect Wireless's complaint be dismissed with prejudice;

B.    The '186 patent and the '416 patent be declared not infringed;

C.    The '186 patent and the '416 patent be declared invalid;

D.    The '186 patent and the '416 patent be declared unenforceable;

E.    Intellect Wireless be enjoined from asserting that HTC, its officers, agents, representatives, stockholders, and/or customers infringe, contributorily infringe, or induce infringement of the claims of the '186 patent and the '416 patent;

-34-

F.      Intellect Wireless be enjoined from bringing suit against any officers, agents, representatives, stockholders, and/or customers of HTC alleging that they infringe, contributorily infringe, or induce infringement of the claims of the '186 patent and the '416 patent;

G.      This be declared an exceptional case pursuant to 35 U.S.C. § 285 and HTC be awarded its attorneys' fees and costs (including expert fees); and

H.      HTC be awarded damages, costs, attorneys' fees, and such other and further relief as the Court may deem just and proper.

JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), HTC demands a trial by jury of all issues triable of right by a jury.

Dated:  November 10, 2010              Respectfully submitted,


                                       /s/ Martin R. Bader_____
                                       Stephen S. Korniczky
                                       Martin Bader
                                       SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
                                       12275 El Camino Real, Suite 200
                                       San Diego, CA  92130
                                       Tel:    (858) 720-8900
                                       Fax:    (858) 509-3691
                                       E-mail:       skorniczky@sheppardmullin.com
                                       E-mail:       mbader@sheppardmullin.com

                                       Paul J. Korniczky
                                       LEYDIG, VOIT & MAYER, LTD.
                                       Two Prudential Plaza, Suite 4900
                                       180 N. Stetson Avenue
                                       Chicago, IL  60601-6731
                                       Tel:    (312) 616-5600
                                       Fax:    (312) 616-5700
                                       E-mail:       pkorniczky@leydig.com

                                       Attorneys for Defendants and Counter-Claimants
                                       HTC CORPORATION and HTC AMERICA, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of **HTC CORPORATION AND HTC AMERICA, INC.'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO INTELLECT WIRELESS, INC.'S AMENDED COMPLAINT** was served through the Court's ECF filing system on the following:

Raymond P. Niro
Paul K. Vickrey
Paul C. Gibbons
David J. Mahalek
NIRO, HALLER & NIRO, LTD.
181 West Madison Street, Suite 4600
Chicago, IL 60602
**Attorneys for Plaintiff**
**INTELLECT WIRELESS, INC.**

Joel D. Bertocchi
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, IL 60601
**Attorneys for Defendant**
**AT&T MOBILITY LLC**

and by first class mail on:

Jeffrey L. Johnson
Claudia W. Frost
PILLSBURY, WINTHROP, SHAW, PITTMAN LLP
909 Fannin Street, Suite 2000
Houston, TX 77010
**Attorneys for Defendant**
**AT&T MOBILITY LLC**

Date: November 10, 2010                    /s/ Martin R. Bader