**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INTELLECT WIRELESS, INC., | |
| Plaintiff, | Case No. 1:09-cv-02945 |
| v. | Honorable Judge William T. Hart |
| HTC CORPORATION and HTC AMERICA, INC., | Magistrate Judge Geraldine Soat Brown |
| Defendants-Counterplaintiffs. | |

**DEFENDANTS HTC CORPORATION AND HTC AMERICA, INC.'S RENEWED
MOTION TO DECLARE CASE EXCEPTIONAL AND AWARD ATTORNEYS' FEES**

SMRH:413404499

## TABLE OF CONTENTS

**Page**

I.     Introduction ...................................................................................................... 1

II.    Background ........................................................................................................ 3

      A.    Henderson's False Declarations To The PTO ........................................ 3

      B.    Henderson Uses the Smithsonian Institute To Bolster His False Declarations ............ 4

      C.    Intellect Wireless and Niro Filed False Complaints ............................... 5

      D.    Intellect Wireless and Niro Engaged in a Fraudulent Licensing Scheme, Abused the Court's Settlement Process, and Intentionally Withheld Discovery ................................. 6

      E.    Intellect Wireless and Niro Further Abused the Discovery Process ......... 7

III.   Argument .......................................................................................................... 9

      A.    Henderson's Inequitable Conduct Justifies Declaring This Case Exceptional .......... 10

      B.    Litigation Misconduct by Intellect Wireless's Attorneys Justifies Awarding Fees Against the Attorneys ................. 12

      C.    Intellect Wireless's Bad Faith Litigation Tactics and Misconduct Justify Declaring This Case Exceptional ................. 14

      D.    The Combination of Inequitable Conduct and Litigation Misconduct Justifies an Award of Attorneys' Fees ................. 15

IV.   Conclusion ...................................................................................................... 15

TABLE OF AUTHORITIES

Page(s)

Cases

*Agfa Corp. v. Creo Prods. Inc.*
  451 F.3d 1366 (Fed. Cir. 2006) ................................................................. 10, 11, 12

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*
  267 F.3d 1370 (Fed. Cir. 2001) ...................................................................... 11, 15

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*
  394 F.3d 1348 (Fed. Cir. 2005) ............................................................................ 11

*Claiborne v. Wisdom*
  414 F.3d 715 (7th Cir. 2005) ................................................................................ 13

*Eon-Net LP v. Flagstar Bancorp*
  653 F.3d 1314 (Fed. Cir. 2011) ...................................................................... 10, 15

*Evident Corp. v. Church & Dwight Co.*
  399 F.3d 1310 (Fed. Cir. 2005) ............................................................................ 11

*Jolly Group, Ltd. v. Medline Indus., Inc.*
  435 F.3d 717 (7th Cir. 2006) ................................................................................ 13

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*
  726 F.3d 1359 (Fed. Cir. 2013) ...................................................................... 10, 15

*Nilssen v. Osram Sylvania, Inc.*
  528 F.3d 1352 (Fed. Cir. 2008) ........................................................................ 2, 10

*Pollenex Corp. v. Sunbeam-Home Comfort*
  835 F. Supp. 403 (N.D. Ill. 1993) ................................................................. 10, 11, 12

*Taltech Ltd. v. Esquel Enters. Ltd.*
  604 F.3d 1324 (Fed Cir. 2010) ...................................................................... 10, 15

*Tarkett, Inc. v. Congoleum Corp.*
  156 F.R.D. 608 (E.D. Pa. 1994) ....................................................................... 2, 10

*Tillman v. New Line Cinema*
  374 Fed. Appx. 664 (7th Cir. 2010) .............................................................. 12, 13

Statutes

28 U.S.C. § 285 ........................................................................................................ 1

28 U.S.C. § 1927 .................................................................................... 1, 12, 13, 14

Other Authorities

Local Rule 54.3 ................................................................................................................ 10

HTC Corp. and HTC America, Inc. (collectively, "HTC") bring this renewed motion to declare this case exceptional and for an attorneys' fees award under 28 U.S.C. §§ 285 and 1927 and the Court's inherent authority. Fees are warranted in view of the inequitable conduct and/or litigation misconduct by Intellect Wireless, Inc. ("IW"), its CEO, Daniel A. Henderson ("Henderson"), and its attorneys, Raymond P. Niro, Paul K. Vickrey, Paul C. Gibbons, David J. Mahalek, and Niro, Haller & Niro Ltd. (collectively, "Niro").

## I.    <u>Introduction</u>

IW brought this suit against HTC for infringement of U.S. Patent Nos. 7,266,186 ("the '186 patent") and 7,310,416 ("the '416 patent," and, collectively, the "patents-in-suit"), which purportedly covered a wireless picture phone. Yet, at the time he filed this lawsuit, Henderson knew he submitted false declarations to the U.S. Patent and Trademark Office ("PTO") to fraudulently obtain the patents-in-suit. Following a bench trial, the Court found that Henderson fraudulently obtained the patents-in-suit and that he committed inequitable conduct, which rendered the patents-in-suit unenforceable. (Dkt. 217.) The Court's findings also highlighted IW and Niro's litigation misconduct concerning the Motorola license. (*Id*. at 42–43.) Subsequently, the Federal Circuit definitively upheld the Court's decision. (Ex. 1.)[1]

IW's plot to extract license fees from the entire wireless communications industry started at least in 2006, when Henderson submitted false declarations to the PTO. The PTO rejected Henderson's patents based on prior art. Instead of complying with his absolute duty of candor with the PTO, he submitted over a dozen false declarations to overcome the prior art and get the patents allowed. (Dkt. 217 at 43.) Henderson abused the integrity of the PTO and, by ignoring his duty of candor and committing inequitable conduct, obtained 26 patents, including the patents-in-suit.

Inequitable conduct itself is grounds for declaring a case exceptional ***without any other***

***misconduct***. *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1358 (Fed. Cir. 2008). Attorneys' fees are justified in patent cases where the inventor's inequitable conduct is based merely on withholding prior art from the PTO. *Tarkett, Inc. v. Congoleum Corp.*, 156 F.R.D. 608, 614 (E.D. Pa. 1994). Here, Henderson's "affirmative egregious misconduct" of submitting numerous false declarations to the PTO is far more egregious than withholding prior art. (Ex. 1 at 7.)

HTC's request for attorneys' fees is not limited to Henderson's inequitable conduct. Attorneys' fees in this case are also warranted based on IW and Niro's litigation and discovery misconduct, which included: (1) filing of false pleadings to the court, (2) abuse of discovery, (3) disregard for the Court's settlement proceeding, including implementing a fraudulent licensing scheme to deceive HTC into entering a settlement, and (4) maintenance of a frivolous suit. In numerous Complaints IW and Niro filed in this district, they highlighted the same false statements about Henderson's "prototype" that he successfully made to dupe the PTO into granting his patents. They also leveraged the Smithsonian's reputation in these Complaints to lend credibility to the infringement claims by highlighting Henderson's "prototype" being in the Smithsonian.

Moreover, before the present litigation even began, IW and Niro set up a fraudulent licensing scheme using a $5 million threshold license agreement with Motorola (the "License"). Despite numerous production requests from HTC, IW and Niro disclosed only half of its $5 million license with Motorola, while withholding an addendum to the license that refunded the entire $5 million (the "Refund Addendum"). Knowing that the Refund Addendum eventually had to be disclosed if the case did not settle, IW and Niro finally produced it to HTC ***five months after the close of document discovery*** and ***long after the Court-ordered settlement conference***. Then, IW and Niro forced HTC to file a motion to compel because they improperly refused to produce documents that would confirm they withheld the Refund Addendum from other defendants. IW,

---

[1] All exhibits are to the Declaration of Martin R. Bader, filed concurrently herewith.

Henderson, and Niro all personally profited from this misconduct and these ill-gotten gains.

IW and Niro's tactics also included forcing HTC to litigate for over four years on patents IW never would have obtained but for Henderson's lies to the PTO. During this time, IW and Niro abused the discovery process and drove up the cost of the litigation in an attempt to force HTC to settle. For example, IW and Niro failed to respond to the most basic requests for admissions. To illustrate, they failed to "[a]dmit that Henderson did not actually reduce the invention of U.S. Patent No. 7,257,210 [i.e., a wireless device that received a picture] to practice." They had no basis for this denial since we know, without question, that Henderson never built such a device.

IW and Niro abused the U.S. Patent and legal systems for their own personal gain to the tune of tens of millions of dollars. This is the type of misconduct that the Court needs to discourage.[2] Because IW is a non-practicing entity that makes and sells no products or services, there is no other remedy for HTC in this case other than the shifting of attorney fees and costs. This case is truly exceptional and warrants attorneys' fees.

## II.   Background

### A.   Henderson's False Declarations To The PTO

Henderson's scheme to obtain patent licenses from the entire wireless industry began in at least 2006. While prosecuting a family of patents before the PTO, Henderson was confronted with a problem. Examiner Anwah rejected one of his patent applications based on two prior art references (i.e., the Wolff and Richardson patents). Instead of accepting the rejection, Henderson swore behind the prior art in an August 4, 2006 declaration that falsely stated he was first to build a prototype called the "Intellect" that could automatically receive caller ID from a telephone network. (Dkt. 217 at 13–15.) His declaration also falsely describes a demonstration to his deceased mentor,

---

[2] Although not binding, public policy stresses the importance of awarding attorneys' fees to prevailing defendants under § 285 to deter frivolous litigation by non-practicing entities. (Ex. 34.)

Dr. Kazuo Hashimoto, as including the transmission of caller ID, which never occurred. (*Id*.)

Henderson's efforts to overcome prior art continued on December 10, 2006, when he signed a second declaration during prosecution of U.S. Patent No. 7,251,318. (Dkt. 217 at 15–17.) This declaration falsely repeats the same statements regarding the demonstration to Hashimoto and his prototype's ability to receive caller ID. (*Id*.) On December 18, 2006, he signed a third false declaration, this time for U.S. Patent No. 7,254,000, again swearing that he transmitted caller ID over a wireless network during the Hashimoto demonstration when it did not occur. (*Id*. at 17–19.)

Henderson then began amending the claims in ten different pending applications to cover wirelessly receiving and/or displaying pictures. These declarations continued his pattern of deceit because the "Intellect" prototype could not receive and display pictures. For example, in the application for U.S. Patent No. 7,257,210 ("the '210 patent"), when Examiner Anwah raised the Albert patent as barring issuance of the '210 patent, Henderson submitted a February 9, 2007 declaration stating that he built and demonstrated a prototype to Hashimoto that wirelessly received a picture and caller ID. (Dkt. 217 at 21–23.) These statements were completely false. Apparently recognizing the magnitude of his false statements, he signed a February 12, 2007 declaration that removed some of the prior false statements regarding the prototype, but left others in place. (*Id*. at 24–25.) On February 16, 2007, in eight additional declarations he submitted to the PTO, including those submitted for the patents-in-suit, Henderson continued to falsely represent that he built and demonstrated a prototype that received and displayed pictures and caller ID. (*Id*. at 13–26, 38–39; Ex. 1 at 9–10.) These false declarations were never repealed, corrected, or reported to the PTO. [3]

### B.   Henderson Uses the Smithsonian Institute To Bolster His False Declarations

---

[3] Years after filing the false declarations while prosecuting a subsequent related pending application Henderson again abused the integrity of the PTO and violated its policies when he attempted to elicit "retroactive" testimony from Examiner Anwah regarding his reasons for allowing the patents-in-suit. *See* MPEP § 1701.

Concurrent with submitting his false declarations to the PTO, Henderson perpetrated the same deceit on the Smithsonian. Henderson donated $10,000 to the Smithsonian, submitted his "Intellect" prototype, and issued a press release mischaracterizing it as a "pioneering wireless picturephone technology [that he] developed in 1993." (Dkt. 217 at 27; Ex. 1 at 10.) On October 31, 2007, Henderson submitted the press release to the PTO misleadingly stating that it described "prototypes relating to the subject matter of this Application, i.e., the Intellect picture phones …" received by the Smithsonian. (*Id.*) Henderson also posted information about it on his personal website, which held out to the world that "his prototype wireless picturephone was received in the National Museum of American History at the Smithsonian Institution in October 2007." (Ex. 2.) As the Court found, submitting "the press release describing the Intellect as a picturephone was deceptive. Henderson did not produce a picturephone in 1993." (Dkt. 217 at 41.) The Federal Circuit agreed, stating that the "misleading Smithsonian press release … reinforces the pattern of deceit" Henderson perpetrated on the PTO with his false declarations. (Ex. 1 at 10.)

### C. Intellect Wireless and Niro Filed False Complaints

In addition to bringing this action, IW and Niro perpetuated the same lies Henderson told to the PTO to Judges Coar, Gotschall, Grady, Holderman, and Pallmeyer in a multitude of complaints against fourteen defendants. (*See, e.g.,* Exs. 3–10.) These Complaints falsely state the same story that "Mr. Henderson's prototype for a wireless picture phone device was received as part of the permanent collection of the Smithsonian Institution in the National Museum of American History." (Exs. 5–6.) These Complaints also included press accounts with false information:

> The idea of camera phones is as old as cameras and phones, but it wasn't until 1993, when Daniel A. Henderson put together a couple of prototypes, that the two started to converge in a meaningful way. Dubbed the 'Intellect,' Henderson's design was for a phone that could display pictures received wirelessly instead of taking pictures and sending them wirelessly.

(*See, e.g.,* Ex. 3 at 2.) IW and Niro meant for all of these complaints and amended complaints to

deceive and mislead the courts and defendants, in the same way that Henderson deceived and misled the PTO (i.e., that Henderson had built a picturephone). During discovery, however, IW initially admitted in February 2010 verified interrogatory responses that Henderson never built a device that received or displayed a picture. (Ex. 11 at 13; Ex 12.) IW and Niro did not withdraw the complaint, nor did they seek to amend the complaint to remove the information they knew was false. Instead, in January 2011 in a related case, IW and Niro filed an amended complaint, which repeated the false statements after they already admitted there was no prototype of a picture phone. (Ex. 4 at 1–2.) This string of complaints was just part of a pattern of perpetuating false information to the Court and discovery misconduct.

> **D.** **Intellect Wireless and Niro Engaged in a Fraudulent Licensing Scheme, Abused the Court's Settlement Process, and Intentionally Withheld Discovery**

Before this litigation began, Henderson and Niro set up a fraudulent licensing scheme using the $5 million Motorola License that was shown to defendants who IW sued. Under the License, Motorola was required to make its payment directly into Niro's trust account. (Ex. 13 at 5.) IW and Niro designed and implemented the License to deceive these other defendants into taking early "low cost" settlements instead of proceeding on the merits. Indeed, IW and Niro introduced the Motorola license to these defendants as setting a "baseline" royalty rate for all subsequent licensees.[4] However, they withheld a Refund Addendum signed on the same day by the same people as the License that gave Motorola its $5 million back from subsequent licensees. (Ex. 14.)

On October 18, 2010, three days before document discovery closed, IW and Niro produced the License to HTC, ***but not a Refund Addendum***. (Dkt. 217 at 42–43.) Two months later, the parties participated in a Court-ordered settlement conference before Magistrate Judge Brown. (*Id.*; Ex. 15.) In their settlement letter to HTC, IW and Niro touted the License, but failed to mention or

disclose the Refund Addendum. Remarkably, IW had even paid a large portion of this refund to Motorola in 2009, long before settlement conference. (*See* Ex. 16 at 14.) Knowing that the addendum eventually had to be disclosed if the case did not settle, IW and Niro withheld the Refund Addendum until the last possible moment, i.e., ***three months after the settlement conference***, just ***two days before Henderson's deposition***, and nearly ***five months after document discovery closed***. (*Id.*) As the Court found, "IW has been evasive about its licensing activities." (*Id.*)

IW and Niro used this same technique of limited disclosure to induce settlement without disclosing the Refund Addendum, which brought the net amount paid by Motorola from $5 million to $0. Litigation costs typically run many millions of dollars for a multi-patent case. However, IW settled with Garmin, Sanyo, and U.S. Cellular for $110,000, $200,000, and $287,500, respectively. (Exs. 17–19.) IW and Niro's abuse of the judicial settlement conference and its premeditated plan to withhold the Refund Addendum in violation of its discovery obligations is consistent with their pattern of misconduct in this case. In sum, IW and Niro shared over $25 million in profits from their false complaints, IW's fraudulently obtained patents, and their deceptive licensing scheme.

### E. Intellect Wireless and Niro Further Abused the Discovery Process

In addition to disclosure of the Motorola License in this case, HTC propounded discovery to determine if IW and Niro ever disclosed the Refund Addendum to other accused infringers. (Ex. 20 at 7–8.) HTC requested that IW produce documents from the other related litigations showing if, and when, the IW and Niro produced the Refund Addendum. (*Id.*) IW and Niro refused to produce the documents in breach of their discovery obligations, because they would have shown that IW and Niro improperly withheld the Refund Addendum from its other licensees. (Ex. 20 at 7–8.) Despite repeated requests and a motion to compel, IW and Niro refused to disclose whether they produced

---

[4] For example, Motorola had 25% of the market and paid $5 million. A subsequent defendant with 12.5% of the market share was required to pay $2.5 million.

the Refund Addendum to other defendants prior to extracting settlements from them. (Exs. 20–23.) The Court continued the motion, noting that it would reopen the issue if the case went to trial on infringement and liability issues. (Exs. 24–25.) HTC also propounded interrogatories to determine if IW and Niro disclosed the Refund Addendum to other defendants. Again, IW and Niro refused to provide substantive responses. (Ex. 21 at 7–8.) Their silence confirms they did not disclose the Refund Addendum to other defendants, consistent with their pattern of deceit.

IW and Niro also attempted, through deception and wordplay, to distract from the basic fact that Henderson never built or demonstrated an invention that could receive and display a picture or caller ID. HTC served straightforward requests for admission: "Admit that Intellect did not actually reduce the invention of U.S. Patent No. 7,426,264 to practice" and "Admit that Henderson did not actually reduce the invention of U.S. Patent No. 7,257,210 to practice." (Ex. 26 at 5–17.) IW and Niro improperly refused to admit or deny these two and 20 similar requests. (*Id.*)

Likewise, IW's interrogatory responses are a series of inconsistent and illusive statements about whether Henderson actually built and demonstrated a device practicing the patents-in-suit. IW and Niro initially refused to provide any information about whether Henderson actually built his inventions. (Ex. 27.) After HTC demanded the information, IW served its verified First Supplemental Interrogatory responses on February 19, 2010 conceding that "neither Daniel Henderson nor Intellect Wireless actually reduced to practice the inventions of the '186 patent or the '416 patent." (Ex. 11 at 14; Ex. 12.) This response admitted that the declarations were false.

Upon realizing the significance of its admission, IW and Niro provided a Second Supplemental Interrogatory response flip-flopping their story and claiming that Henderson ***may*** have reduced to practice the patents-in-suit. (Ex. 28; Ex. 29 at 488:10–491:7.) Finally, having yet to find a story to reconcile Henderson's false declarations to the PTO, IW and Niro provided a Third Supplemental Interrogatory response claiming for the first time that actual reduction to

practice in Henderson's declarations actually referred to the '862 patent. (Ex. 30 at 6–8.) It took over a year from IW's original interrogatory response for IW and Niro to manufacture their story that Henderson had been referring to the '862 patent when he referred to actual reduction to practice in his declarations. (*Compare* Ex. 27, *with* Ex. 30; Ex. 29 at 488:10–491:7.) Their story was such an afterthought that even Tendler, Henderson's patent attorney, was unaware that he was thinking of the '862 patent. (Dkt. 217 at 40–41.)

At trial, Henderson and Niro changed the story yet again.[5] Although the interrogatory response claimed Henderson reduced to practice the '862 patent, at trial he testified his device only "simulated" the '862 patent. In actuality, Henderson's "simulated" prototype demonstration to Hashimoto did not include wireless transmission of either caller ID information or a picture. (Dkt. 217 at 36–37, 41.) Instead, Henderson's prototype was merely pre-loaded with caller ID and textual data for his "simulated demonstration." (*Id.*) The Court rejected IW and Niro's excuses and contradictions relating to the '862 patent. (*Id.* at 37.)

IW and Niro also took inconsistent positions during discovery related to Henderson. First, IW and Niro provided substantive responses to requests for admission on Henderson's experience, admitting he lectured on "The Power of the Patent," that he attended the Sedona Conference on patent litigation, and that he donated money to the Smithsonian. (Ex. 26 at 21–22, 24; Ex. 31 at 10, 17–18, 24, 29–30.) Then, IW and Niro refused to answer 29 simple requests for admission, such as whether Henderson approved the content on his website, whether Henderson received more than $1 million from IW, and whether Henderson kept a calendar in 1993, objecting that the topics were outside of IW's knowledge, even though Henderson is IW's CEO. (Ex. 31 at 5, 7–13, 15–17.)

## III.  Argument

---

[5] This is not the first time a story dramatically changed in this case. Henderson lied during his deposition about his arrest record and then came clean in contradictory errata. (Ex. 32–33.)

Determining whether a case is exceptional is the first step in assessing an award of attorneys' fees. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1323 (Fed. Cir. 2011). The Court must determine "whether the prevailing party has proved by clear and convincing evidence that the case is exceptional." *Id.* A case may be exceptional due to inequitable conduct, litigation misconduct, or bad faith litigation.[6] *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013). In this case, there is all three: inequitable conduct, litigation misconduct, *and* bad faith litigation. This case exceptional for any or all of these reasons.

## A.      Henderson's Inequitable Conduct Justifies Declaring This Case Exceptional

The Court is justified in declaring this case exceptional solely based on its finding of inequitable conduct. Inequitable conduct without any other misconduct is a basis for declaring a case exceptional. *Nilssen*, 528 F.3d at 1358. Inequitable conduct justifies an exceptional case finding where the inventor merely misrepresented certain aspects of prior art or withheld prior art. *Tarkett*, 156 F.R.D. at 614. The court in *Tarkett* declared the case exceptional because the inventor misrepresented that prior art lacked a key feature, despite later admitting that he knew the prior art contained it, and because he failed to disclose other prior art. *Id.*

Likewise, making misleading statements to the PTO is also a sufficient basis for finding the case exceptional. *Pollenex Corp. v. Sunbeam-Home Comfort*, 835 F. Supp. 403, 404–406 (N.D. Ill. 1993). The Federal Circuit has readily affirmed numerous exceptional case determinations based on inequitable conduct where the patentee merely withheld prior art references, rather than the affirmative, egregious act of making false statements to the PTO. *See, e.g., Taltech Ltd. v. Esquel Enters. Ltd.*, 604 F.3d 1324, 1329 (Fed Cir. 2010); *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366 (Fed. Cir. 2006); *Evident Corp. v. Church & Dwight Co.*, 399 F.3d 1310 (Fed. Cir. 2005); *Bruno*

---

[6] Defendants' motion is to declare this case exceptional and for the Court to award attorneys' fees in an amount to be determined later. If the Court grants Defendants' motion, Defendants will meet and confer

*Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348 (Fed. Cir. 2005); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370 (Fed. Cir. 2001). Even among inequitable conduct cases, this case is noteworthy because it involves "affirmative egregious misconduct." (Ex. 1 at 7.) Henderson affirmatively lied to the PTO; there is no more egregious behavior.

In *Agfa*, the Federal Circuit affirmed a District Court determination of an exceptional case and awarded fees based on the case being more exceptional than other cases of inequitable conduct. *Agfa*, 451 F.3d. at 1380. In *Agfa*, the inventor failed to disclose prior art inconsistent with Agfa's positions during prosecution. *Id*. at 1377. The prior art was known to the inventors, who were Agfa employees, because Agfa displayed and sold the prior art products. *Id*. at 1378. Thus, the court determined that the inventors committed inequitable conduct by not disclosing prior art.

Similarly, in *Pollenex*, the applicant withheld prior art that was more pertinent than the art disclosed, misled the PTO based on arguments inconsistent with the withheld prior art, and examined the withheld prior art while attempting to reduce to practice the invention. *Pollenex*, 835 F. Supp. at 404–406. This conduct justified an exceptional case finding. *Id*.

Henderson's inequitable conduct is far worse than the factual patterns in the prior case law. Henderson affirmatively lied, misrepresented facts, and fabricated evidence to the PTO. He not only was untruthful about building a prototype of the patented invention, but he falsely claimed doing so before the true inventor, Albert. There is no more egregious behavior that an inventor can engage in before the PTO. Henderson falsely and repeatedly swore that he: (1) built a device that received and displayed pictures sent over a wireless network; (2) built a device that received caller ID over a wireless network; (3) demonstrated a device to Hashimoto in 1993 that received caller ID and a picture over a wireless network; and (4) actually reduced his invention to practice and did it before the true inventor. It was not until trial that he finally admitted the Hashimoto demonstration

with IW and Niro on the amount of fees and other non-taxable costs in accordance with Local Rule 54.3.

was, at best, only a "simulation" during which neither caller ID nor any type of picture was transmitted or received. (Dkt. 217 at 36–37; Ex. 1 at 10.) Henderson abused the integrity of the PTO and, by ignoring his duty of candor, obtained 26 patents, including the patents-in-suit.

Henderson's false declarations are so egregious that the Federal Circuit stated it could have found inequitable conduct solely "based on the content of the two declarations" submitted in one of Henderson's patent applications. (Ex. 1 at 10.) But, Henderson did not stop at submitting two false declarations. He filed so many false declarations that the Court and Federal Circuit held Henderson "engaged in a pattern of deceit" over the course of numerous months and multiple patent applications. (*Id*.) He "fabricated examples of actual reduction to practice in order to overcome a prior art reference" and get his patents allowed. (*Id*.) He committed acts that amounted to "affirmative egregious misconduct." (*Id*. at 7.) His misconduct is far worse than the misconduct in *Pollenex* and *Agfa*, which the Federal Circuit affirmed as exceptional.

### B. Litigation Misconduct by Intellect Wireless's Attorneys Justifies Awarding Fees Against the Attorneys

IW and Niro's filing of false documents, abuse of discovery, disregard for the Court's settlement proceedings, and maintenance of a frivolous suit all warrant an attorneys' fees award against Niro. Under 28 U.S.C. §1927 or its inherent power, the Court may award attorneys' fees against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." Attorneys' fees under §1927 "are meant to compensate the party that has been injured by a lawyer's bad-faith conduct and to compel the lawyer to bear the costs of his own lack of care." *Tillman v. New Line Cinema*, 374 Fed. Appx. 664, 666–67 (7th Cir. 2010).

A court may award attorneys' fees under §1927 "when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice; pursued a claim that is without a plausible legal or factual basis and lacking in justification; or pursued a path that a reasonably careful attorney would have known, after

appropriate inquiry, to be unsound." *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (citations omitted). Notably, §1927 imposes "a continuing duty upon attorneys to dismiss claims that are no longer viable." *Id.* (citations omitted). Vexatious conduct does not require subjective bad faith. *Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005). Bad faith includes "extremely negligent conduct, like reckless and indifferent conduct." *Id.*

Courts have awarded fees under §1927 for a number of reasons. Courts have upheld an attorneys' fees award for failure to respond properly to document requests and interrogatories. *Claiborne*, 414 F.3d at 722. They have also upheld attorneys' fees based on bringing and maintaining "an ill-founded case," even when the plaintiff voluntarily dismissed the case, and proceeding with litigation which had no chance to succeeding. *Id.*; *Tillman*, 374 Fed. Appx. at 666.

Here, IW and Niro ignored their obligation to produce relevant documents and abused the judicial settlement process before Magistrate Judge Brown. IW and Niro produced the Motorola License to HTC and touted it for settlement, but not the Refund Addendum, which IW and Niro did not produce until after the settlement conference and long after the close of document discovery. (Dkt. 217 at 42–43; Ex. 15; Ex. 16 at 14.) Despite repeated requests and a motion to compel, IW and Niro refused to disclose whether it produced the Motorola Refund Addendum to other defendants prior to extracting settlements from them. (Exs. 18–21.) The Court even found that the activity surrounding the Motorola agreements was "evasive." (*Id.*) Niro personally profited millions of dollars from these deceptive actions.

IW and Niro repeated the same false statements that Henderson told to the PTO in the Complaint against HTC, and again in the Amended Complaint by falsely stating that Henderson's picture phone prototype is in the Smithsonian. (Exs. 5–6.) Henderson and Niro knew there was no prototype of a picturephone.

IW and Niro's interrogatory responses are a series of inconsistent and illusive statements

-13-

about whether Henderson actually built and demonstrated a device practicing the patents-in-suit. IW and Niro initially refused to provide any information (Ex. 27), then admitted the truth, that Henderson did not have actual reduction to practice of the patents-in-suit. (Ex. 11 at 14.) Realizing the significance of its admission, IW and Niro claimed there may have been actual reduction to practice (Ex. 28; Ex. 29 at 488:10–491:7), before concocting a story about reduction to practice of a different patent. (Ex. 30 at 6–8.) Finally, at trial, they changed the story again, as Henderson testified his device demonstration was only a simulation, not a transmission, which did not include wireless transmission of either caller ID information or a picture. (Dkt. 217 at 36–37, 41.) IW and Niro's excuses and contradictions relating to the '862 patent were rejected by this court and are consistent with their pattern of misconduct in this case. (*Id.* at 37.)

IW and Niro also refused to answer over 20 straightforward requests for admission. (Ex. 26 at 5–17.) In addition, they took inconsistent positions during discovery related to Henderson, providing beneficial responses when it suited them and refusing to answer 29 other simple requests for admission, by objecting that the topics were outside of IW's knowledge, even though Henderson is IW's CEO. (Ex. 31 at 5, 7–13, 15–17.)

Niro's maintenance of this suit despite knowing that Henderson submitted false declarations to get his patents is unreasonable and in bad faith. Niro combined its disregard of the facts with discovery misconduct and false complaints. Through its inherent powers and §1927 the Court should hold Niro responsible for the attorneys' fees HTC expended in this case. Niro and IW should not be allowed to profit from their ill-gotten gains at HTC's expense.

### C. Intellect Wireless's Bad Faith Litigation Tactics and Misconduct Justify Declaring This Case Exceptional

Putting aside inequitable conduct, IW's misconduct during the course of this litigation forms a separate basis for finding this case exceptional. "[L]itigation misconduct alone may suffice to make a case exceptional." *Monolithic*, 726 F.3d at 1366; *see also Eon-Net*, 653 F.3d at 1323

-14-

("[L]itigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under §285."); *Taltech*, 604 F.3d at 1329; *Brasseler*, 267 F.3d at 1380.  Litigation misconduct includes a wide range of actions, including submitting false and misleading documents. *Eon-Net*, 653 F.3d at 1324–26; *Brasseler*, 267 F.3d at 1380 (engaging in "high-spun wordplay" to diminish the implications arising from one's conduct is litigation misconduct).  Litigation misconduct does not even require bad faith. *Monolithic*, 726 F.3d at 1367.  Here, as outlined in the prior section and Background, IW and Niro engaged in a pattern of litigation and discovery misconduct from the day they filed the case until the day it ended.

> **D.     The Combination of Inequitable Conduct and Litigation Misconduct Justifies an Award of Attorneys' Fees**

This case involves egregious inequitable conduct by Henderson and maintenance of a frivolous lawsuit and repeated litigation misconduct by IW and Niro.  Henderson obtained his patents and brought this lawsuit based upon a pattern of fraud and deceit.  IW and Niro started this case with a false Complaint about information exclusively in IW and Niro's possession, i.e., whether the device at the Smithsonian received and displayed pictures and caller ID.  IW and Niro perpetuated this false information to multiple other courts in this district.  Next, IW and Niro touted the Motorola License before the Magistrate, but not the Refund Addendum.  Then, IW and Niro refused to disclose whether they produced the Refund Addendum to other defendants.  Throughout, IW and Niro changed answers and selectively answered discovery to evade discovery obligations.  Finally, IW and Tendler attempted to elicit comments and testimony from Examiner Anwah on already issued patents in violation of PTO policy.  The pattern of misconduct that permeates this case from the issuance of the patents through trial requires an award of attorneys' fees.

## IV.     Conclusion

For the reasons outlined in this motion, the Court should exercise its discretion to award HTC its reasonable attorneys' fees and non-taxable costs to be determined in further proceedings.

Dated:  November 22, 2013        Respectfully submitted,

/s/ Stephen S. Korniczky
Stephen S. Korniczky
Martin R. Bader
Graham (Gray) M. Buccigross
Matthew M. Mueller
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, CA  92130
Tel:     (858) 720-8900
Fax:     (858) 509-3691
E-mail:          skorniczky@sheppardmullin.com
E-mail:          mbader@sheppardmullin.com
E-mail:          gbuccigross@sheppardmullin.com
E-mail:          mmueller@sheppardmullin.com

Paul J. Korniczky
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 N. Stetson Avenue
Chicago, IL  60601-6731
Tel:     (312) 616-5600
Fax:     (312) 616-5700
E-mail:          pkorniczky@leydig.com

Attorneys for Defendants and Counter-Claimants
HTC CORPORATION and HTC AMERICA, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served through the Court's ECF filing system on the following:

Raymond P. Niro
Paul K. Vickrey
David J. Mahalek
NIRO, HALLER & NIRO, LTD.
181 West Madison Street, Suite 4600
Chicago, IL 60602
**Attorneys for Plaintiff**
**INTELLECT WIRELESS, INC.**

Date:  November 22, 2013          /s/ Stephen S. Korniczky