IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTELLECT WIRELESS, INC., | |
| Plaintiff, | |
| v. | Case No. 09 C 2945 |
| HTC CORPORATION, HTC AMERICA, INC. | Honorable William T. Hart<br>Magistrate Judge Geraldine Soat Brown |
| Defendants. | |

**INTELLECT'S OPPOSITION TO HTC'S MOTION TO DECLARE CASE
EXCEPTIONAL AND AWARD ATTORNEYS' FEES**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 1

III. HTC HAS NOT SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT THIS
CASE IS EXCEPTIONAL .................................................................................. 2

    A. Inequitable Conduct Does Not Warrant An Exceptional Case Finding ................... 3

    B. Intellect Has Not Committed Litigation Misconduct ................................................ 7

        1. The Filing of Allegedly False Pleadings ...................................................... 7

        2. Intellect's Alleged "Fraudulent" Licensing Scheme and Misconduct with
Respect to Settlement ................................................................................... 8

        3. Intellect's Alleged Discovery Misconduct ................................................. 10

    C. HTC's Own Conduct .............................................................................................. 14

    D. The Totality Of Circumstances Do Not Warrant An Exceptional-Case Finding ..... 14

IV. EVEN IF THIS CASE IS EXCEPTIONAL, AN AWARD OF ATTORNEYS' FEES IS
NOT WARRANTED ........................................................................................ 15

V. CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Agfa Corp. v. Creo Prods., Inc.,*
451 F.3d 1366 (Fed. Cir. 2006) ...........................................................................................4

*Avocet Sports Technology Inc. v. Polar Electro Inc.,*
2013 WL 4067823, at *4 (N.D. Cal. Aug. 1, 2013).............................................................9

*Beckman Instruments, Inc. v. LKB Produkter AB,*
892 F.2d 1547 (Fed. Cir. 1989) ...................................................................................4, 5, 7

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,*
393 F.3d 1378 (Fed. Cir. 2005) ...........................................................................................3

*Dodge-Regupol, Inc. v. RB Rubber Prods., Inc.,*
2010 WL 1342918 (M.D. Pa. Mar. 31, 2010)......................................................................3

*Eon-Net LP v. Flagstar Bancorp,*
653 F.3d 1314 (Fed. Cir. 2011) .....................................................................................9, 15

*Forest Labs., Inc. v. Abbott Labs.,*
339 F.3d 1324 (Fed. Cir. 2003) ...........................................................................................3

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.,*
292 F.3d 1363 (Fed. Cir. 2002) ...........................................................................................3

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.,*
687 F.3d 1300 (Fed. Cir. 2012), *cert. granted*, 134 S. Ct. 48 (U.S. Oct. 1, 2013).....................passim

*iLOR, LLC v. Google, Inc.,*
631 F.3d 1372 (Fed. Cir. 2011) .................................................................................passim

*Intellect Wireless, Inc. v. HTC Corp.,*
732 F.3d 1339 (Fed. Cir. 2013) ...........................................................................................2

*Intellect Wireless, Inc. v. HTC Corp.,*
910 F. Supp. 2d 1056 (N.D. Ill. 2012)..................................................................................2

*ISCO Int'l, Inc. v. Conductus, Inc.,*
279 F. Supp. 2d 489 (D. Del. 2003) .....................................................................................3

*Kilopass Tech., Inc. v. Sidense Corp.,*
--- F.3d ----, 2013 WL 6800885 (Fed. Cir. Dec. 26, 2013) ............................................2, 3

*McKesson Information Solutions Inc. v. Bridge Med., Inc.*,
  2006 WL 2583025 (E.D. Cal. Sept. 6, 2006) ........................................15

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*,
  603 F.3d 943 (Fed. Cir. 2010) ..................................................................5

*Naxon Telesign Corp. v. GTE Info. Sys., Inc.*,
  212 U.S.P.Q. 919 (N.D. Ill. 1980) ....................................................13, 14

*Nilssen v. Osram Sylvania, Inc.*,
  528 F.3d 1352 (Fed. Cir. 2008) ..............................................................3

*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
  635 F.3d 539 (Fed. Cir. 2011) ................................................................3

*People of the State of California v. The Jules Fribourg*,
  19 F.R.D. 432 (N.D. Cal. 1955) . (see Ex. CC at pp. 5-17) ......................13

*Pittway v. Fyrenetics, Inc.*,
  1992 U.S. Dist. LEXIS 12172 (N.D. Ill. 1992) ..................................13, 14

*Pollenex Corp. v. Sunbeam-Home Comfort*,
  835 F.Supp. 403 (N.D. Ill 1993) ..............................................................4

*ResQNet.Com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ..................................................................5

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
  781 F.2d 198 (Fed. Cir. 1986) ................................................................15

*Sensonics, Inc. v. Aerosonic Corp.*,
  81 F.3d 1566 (Fed. Cir. 1996) ..........................................................11, 14

*Site Update Solutions, LLC v. Accor North America, Inc.*,
  2013 WL 2238626 (N.D. Cal. May 21, 2013) ..........................................9

*Tarkett, Inc. v. Congoleum Corp.*,
  156 F.R.D. 608 (E.D. Pa. 1994) ..............................................................4

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) ..............................................6

*Torin Corp. v. Philips Indus., Inc.*,
  625 F. Supp. 1077 (S.D. Ohio 1985) ......................................................11

*W.Y. Indus., Inc. v. Kari-Out Club, LLC*,
  2013 WL 4730653 (D.N.J. Sept. 3, 2013) ..........................................7, 12

*Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.,*
   231 F.3d 1339 (Fed. Cir. 2000) ................................................................................................14

**FEDERAL STATUTES**

28 U.S.C. § 1927 ........................................................................................................................1

35 U.S.C. § 285 ................................................................................................................. passim

## I.     INTRODUCTION

An "exceptional" case declaration under 35 U.S.C. § 285 is a finding that the non-prevailing party has engaged in egregious behavior.  Such allegations should not be casually made because "the sanctions imposed under § 285 carry serious economic and reputational consequences for both litigants and counsel."  *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1376 (Fed. Cir. 2011).  In light of these potential consequences, a litigant's ever-present obligation of candor to the Court becomes even more important.  In moving for an exceptional case finding, HTC has failed to fulfill this obligation. Because the facts of this litigation do not support an "exceptional" case finding, HTC's motion to declare this case exceptional should be denied.[1]

## II.     BACKGROUND

Intellect brought this lawsuit against HTC on May 14, 2009 (Dkt. No. 1) after having previously successfully litigated against Motorola, Sprint, Kyocera and LG.  (Case No. 1:08-cv-01340 (N.D. Ill.) (J. Holderman) ("the Motorola Litigation")).  Subsequent to the filing of this lawsuit, Intellect filed a lawsuit against Sharp, Hewlett-Packard, Palm, Dell and Garmin on October 20, 2010.  (Case No. 1:10-cv-6763 (N.D. Ill.) (J. Pallmeyer) ("the Sharp Litigation")).  HTC first presented its inequitable conduct defense on November 10, 2010, a year and a half after this litigation began.  (Dkt. Nos. 97, 98).  Intellect, having already settled with the other defendants in this case, specifically requested an early bench trial on the issue of inequitable conduct "[r]ather than prolong this litigation (since it is clear that a settlement can only be reached after the inequitable conduct issue is resolved)."  (Dkt. No. 124).  Intellect proposed an early, efficient mechanism to address HTC's inequitable conduct claim -- something other than protracted litigation.  HTC opposed Intellect's proposal to efficiently resolve HTC's inequitable conduct claim without

---

[1] Counsel for Intellect Wireless, Inc. is filing a separate brief to address HTC's belated claim for an attorneys' fees award against Intellect's trial lawyers under to 28 U.S.C. § 1927.

protracted litigation, preferring instead to move for summary judgment on inequitable conduct. (Ex. A, 6/30/2011 Hearing Tr. at p. 3). The Court ordered the parties to finish discovery and proceed according to the pretrial order rather than address HTC's claim of inequitable conduct in an early bench trial as requested by Intellect. (*Id.* at pp. 3-4).

In July 2011, two years after this litigation began, HTC moved for summary judgment. (Dkt. No. 133). On March 2, 2012, the Court denied HTC's summary judgment motion and set the issue for trial concluding "that there are a number of disputed factual issues and undeveloped issues which preclude a summary finding of inequitable conduct as a matter of law." (Dkt. No. 183 at p. 6). The Court held a four-day bench trial from June 5, 2012 through June 8, 2012 and, on September 6, 2012, ruled that the patents-in-suit were unenforceable due to inequitable conduct. *Intellect Wireless, Inc. v. HTC Corp.*, 910 F. Supp. 2d 1056 (N.D. Ill. 2012). The Federal Circuit subsequently affirmed this ruling in a precedential opinion issued on October 9, 2013. *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339 (Fed. Cir. 2013). If the inequitable conduct issue was so easily decided, there would have been no need for a trial two years after the complaint was filed.

## III. HTC HAS NOT SHOWN BY CLEAR AND CONVINCING EVIDENCE THAT THIS CASE IS EXCEPTIONAL

An award of fees under § 285 "is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be *grossly unjust* . . . to require it to bear its own costs." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1310 n.1 (Fed. Cir. 2012), *cert. granted*, 134 S. Ct. 48 (U.S. Oct. 1, 2013) (emphasis added). In other words, when an alleged infringer is the prevailing party, the aims of § 285 is "to prevent an alleged infringer from suffering a 'gross injustice'" and to "compensate a defendant for attorneys' fees it should not have been forced to incur." *Kilopass Tech., Inc. v. Sidense Corp.*, --- F.3d ---- -, 2013 WL 6800885, at *12-13 (Fed. Cir. Dec. 26, 2013). As HTC concedes, an exceptional case

must be shown by ***clear and convincing*** evidence. (HTC Mot.[2] at p. 10; *see also Kilopass*, 2013 WL 6800885 at *12-13 (recognizing the clear and convincing evidentiary burden)). Such a finding is the exception, not the rule, and can only be supported by a limited universe of circumstances. *iLOR*, 631 F.3d at 1376; *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003); *see also Dodge-Regupol, Inc. v. RB Rubber Prods., Inc.*, 2010 WL 1342918, at *4 (M.D. Pa. Mar. 31, 2010) ("Congress evinced an intention that [§ 285 sanctions] should be used only sparingly.").

The standard for finding an exceptional case is an "exacting" one. *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 544 (Fed. Cir. 2011). A party seeking such a finding against a patentee must show: (1) misconduct in securing the patent; (2) litigation misconduct; or (3) an objectively baseless litigation brought in subjective bad faith. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).[3] HTC's § 285 motion is predicated on inequitable conduct and purported bad faith litigation misconduct. (HTC Mot. at pp. 10-12, 14-15).[4] However, neither of these bases warrants a finding of an exceptional case in the circumstances before the Court.

### A. Inequitable Conduct Does Not Warrant An Exceptional Case Finding

"[T]here is no *per se* rule of exceptionality in cases involving inequitable conduct." *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1358 (Fed. Cir. 2008). Thus, the Court is not required to declare this case exceptional based on the finding of inequitable conduct. *See id.* Indeed, courts have refused to find a case exceptional even where inequitable conduct was found. *See, e.g., Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1377-78 (Fed. Cir. 2002); *ISCO Int'l, Inc.*

---

[2] Citations to "HTC Mot." are to Dkt. No. 232, Defendants HTC Corporation and HTC America, Inc.'s Renewed Motion to Declare Case Exceptional and Award Attorneys' Fees.

[3] While the Federal Circuit has recently criticized *Brooks Furniture*'s formulation of the third basis for supporting an exceptional case finding, the requirement of subjective bad faith in addition to objective baselessness remains the law. *See Kilopass*, 2013 WL 6800885 at *9-11. However, because HTC has not argued that an exceptional case exists based on this basis, the potential effect of *Kilopass* need not be explored.

[4] HTC's section regarding alleged litigation misconduct by Intellect's attorneys (HTC Mot. at pp. 12-14) is addressed by Intellect in a separate opposition.

*v. Conductus, Inc.*, 279 F. Supp. 2d 489, 511-12 (D. Del. 2003). While the patents-in-suit were found unenforceable due to inequitable conduct, an exceptional case finding is not appropriate.

HTC's cases are distinguishable and do not support an exceptional case finding in this case. In *Agfa Corp. v. Creo Prods., Inc.*, 451 F.3d 1366 (Fed. Cir. 2006), Agfa withheld material information including knowledge of an agreement to resell Creo's product and Agfa's distribution of Creo brochures. 451 F.3d at 1378. In *Pollenex Corp. v. Sunbeam-Home Comfort*, 835 F.Supp. 403 (N.D. Ill 1993) an exceptional case finding was warranted because the plaintiff intentionally copied defendants prior art products, mislead the PTO about those products, and then sued the defendant for infringement. 835 F.Supp. at 406. Finally, *Tarkett, Inc. v. Congoleum Corp.*, 156 F.R.D. 608 (E.D. Pa. 1994) is distinguishable as a district court case from the Eastern District of Pennsylvania in which the jury found the patent to be not infringed, invalid, procured through inequitable conduct, and that Tarkett had unclean hands in the enforcement of the '516 patent. 156 F.R.D. at 614.

*First*, Intellect's defense against HTC's inequitable conduct allegations was not frivolous. This Court only determined that inequitable conduct had occurred after a bench trial; prior to this determination, the Court had denied HTC's motion for summary judgment. (Dkt. No. 183). Moreover, the Federal Circuit affirmed this Court's opinion in a written, precedential opinion after oral argument. This Court's and the Federal Circuit's treatment of Intellect's defense to HTC's allegations shows that Intellect, while ultimately unsuccessful, was reasonably justified in its defense. *iLOR*, 631 F.3d at 1379 ("[T]he fact that this court held oral argument and issued a precedential written opinion in the first appeal suggests that we did not regard the case as frivolous."); *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) ("[W]e find it difficult to agree that the inequitable conduct defense was 'baseless' when it survived a motion for summary judgment and was rejected only after findings were made on disputed facts[.]").

HTC's request ignores the fact that this Court *denied* HTC's motion for summary judgment of inequitable conduct. Three other judges also denied summary judgment motions. Judge Gottschall denied defendants motion for summary judgment of no direct infringement. (Ex. B, Dkt. No. 158 in Case No. 1:08-cv-1215). Judge Pallmeyer denied defendants motion for summary judgment of no indirect infringement. (Ex. C, Dkt. No. 132 in the Sharp Litigation). Finally, Judge Holderman denied defendants' motion for summary judgment of invalidity for indefiniteness. (Ex. D, Dkt. No. 199 in the Motorola Litigation). Thus, in spite of HTC's allegations of inequitable conduct, Intellect was reasonable in maintaining its infringement claims. *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) (characterization of claims as frivolous was undermined by the court's denial of motions for summary judgment); *see also ResQNet.Com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 875 (Fed. Cir. 2010) ("[T]he district court's denial of summary judgment of noninfringement reflects the belief that it was reasonable for ResQNet to have retained that patent for suit."). If Intellect's defense of HTC's inequitable conduct allegations was truly baseless, HTC should have been able to have it summarily dismissed (which it could not do). *See Beckman Instruments*, 892 F.2d at 1551. The objective reasonableness of Intellect's inequitable conduct defense is further supported by the Federal Circuit's attention to this matter. While the Federal Circuit ultimately disagreed with Intellect's defense, it did so only after oral argument and in a precedential written opinion. *See iLOR*, 631 F.3d at 1379.

HTC's request for an exceptional case finding neglects that Examiner Anwah, the same examiner for the patents-in-suit, was advised of the basis for HTC's inequitable conduct allegations during the prosecution of the '221 patent., another patent in the same family as the patents-in-suit. (Ex. EE, PTX 20 at p. 2). The Rule 131 Declarations and the statements about an actual reduction to practice were specifically discussed with Examiner Anwah on November 10, 2011. (Ex. FF, PTX 21A, Interview Summary). Examiner Anwah subsequently issued an Interview Summary stating that

he had relied upon a constructive reduction to practice of the inventions. (Ex. GG, PTX21C, Interview Summary). In addition, Examiner Anwah subsequently allowed U.S. Patent No. 8,472,595 on May 3, 2013 after consideration of HTC's inequitable conduct allegations, this Court's inequitable conduct opinion, and HTC's appeal brief. (Ex. HH, IDS at p 15). Accordingly, it was reasonable for Intellect to proceed with its infringement claim against HTC.

**Second**, much of the litigation expense in this case occurred before HTC had even brought its inequitable conduct allegations. Intellect did not file and pursue its infringement claims with knowledge of HTC's inequitable conduct claim; this case had been pending eighteen months before HTC sought to plead an allegation of unenforceability on November 10, 2010. (Dtk. No. 97). Within two weeks of adding its inequitable conduct counterclaim, HTC discussed settling with Intellect for a seven figure amount on November 24, 2010; Intellect later withdrew that proposal. (Ex. II, Chen 11/24/2010 and 12/2/10 emails with other cases and clients redacted). Moreover, it was Intellect that proactively sought to have the Court decide the issue of inequitable conduct earlier by filing a motion for a bench trial. (Dkt. No. 124). Most of the attorneys' fees incurred by HTC were a result of HTC's refusal to have an early bench trial on the inequitable conduct issue. *See Highmark*, 687 F.3d at 1310 n.1.

Intellect was not required to dismiss its claims simply because HTC made allegations of inequitable conduct. As the Federal Circuit has recognized, inequitable conduct allegations are "overplayed" and common litigation tactics that are routinely brought on the "slenderest" grounds. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (*en banc*). While this Court and the Federal Circuit ultimately disagreed with Intellect, this was only after the denial of summary judgment, a bench trial, oral argument before the Federal Circuit, and a written, precedential opinion – all events that indicate the merit of Intellect's defense. *See iLOR*, 631 F.3d at

1379; *Beckman Instruments*, 892 F.2d at 1551. HTC simply has not shown how the pursuit of litigation with a meritorious defense can constitute litigation misconduct.

### B. Intellect Has Not Committed Litigation Misconduct

In the context of § 285, "[l]itigation misconduct generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings, and includes advancing frivolous arguments during the course of litigation or otherwise prolonging litigation in bad faith." *Highmark,* 687 F.3d at 1315-16. Exceptional case findings based on litigation misconduct have "been based upon egregious behavior and/or abusive litigation tactics." *W.Y. Indus., Inc. v. Kari-Out Club, LLC,* 2013 WL 4730653, at *3 (D.N.J. Sept. 3, 2013).

It appears from HTC's motion that its complaints regarding alleged litigation misconduct can be divided into four categories: (1) the filing of false pleadings (HTC Mot. at pp. 5-6, 12-13); (2) a fraudulent licensing scheme and subsequent disregard for settlement proceedings (*id.* at pp. 6-7, 12); (3) abuse of the discovery process (*id.* at pp. 7-9, 12-14); and (4) the maintenance of an unreasonable suit in bad faith (*id.* at pp. 12, 14). However, HTC fails to explain how any this alleged misconduct is sufficient to support an exceptional case finding under § 285. HTC's "analysis" of Intellect's purported litigation misconduct in support of an exceptional case finding consists of one sentence merely referencing the background and prior section of its brief. (HTC Mot. at p. 15). Such a conclusory argument does not satisfy HTC's clear and convincing evidentiary burden. Nevertheless, Intellect will address each of these categories of alleged misconduct in turn.

#### 1. The Filing of Allegedly False Pleadings

In contending that Intellect has committed misconduct by filing false complaints in cases before a number of different judges in the Northern District of Illinois, HTC inaccurately paraphrases those complaints. In fact, the allegedly false statements in Intellect's various complaints are not false. The statement in paragraph 3 of Intellect's complaint that "Mr. Henderson's

prototype for a wireless picturephone device was received as part of the permanent collection of the Smithsonian Institution in the National Museum of American History" is unequivocally true. (Dkt. No. 1, ¶ 3). A copy of the donation certificate from the Smithsonian is attached hereto. (Ex. E, IW008064). What the Federal Circuit found misleading was the Smithsonian press release (not the statement made in Intellect's complaint), which stated that the picturephone technology was developed *in 1993*. Intellect did not author the Smithsonian press release and Intellect's complaints did not quote from or cite to the press release that was found to be misleading. Importantly, none of Intellect's complaints stated that the prototypes received by the Smithsonian showed a technology developed *in 1993*. (*E.g.*, Dkt. No. 1 at ¶3).

Moreover, the "press accounts with false information" that HTC identifies (HTC Mot. at p. 5, Ex. 3 at ¶3) refers to a PC Today article, which Intellect did not cite to or quote from in its complaints in *this litigation*. (Dkt. Nos. 1, 23). Contrary to HTC's implication, the PC Today article was only quoted in one other litigation – one to which HTC is not a party. (*See* Case No. 1:10-cv-6763, Dkt. No. 1). HTC does not, and cannot explain, why Intellect's complaint in a *different case* can be a basis for an exceptional case finding by *this Court*. *See Highmark*, 687 F.3d at 1319. In any event, Intellect accurately quoted the 2009 PC Today article in the *Sharp* Litigation.

### 2. Intellect's Alleged "Fraudulent" Licensing Scheme and Misconduct with Respect to Settlement

HTC's allegations of a fraudulent licensing scheme and accompanying settlement misconduct are also untrue. While the Motorola addendum that provided for an adjustment of the Motorola royalty was not produced prior to the settlement conference, it was produced prior to both of Mr. Henderson's depositions, where HTC had a full and fair opportunity to cross-examine Intellect. Further, HTC's claim that "[i]n their settlement letter to HTC, IW and Niro touted the [Motorola] License" mischaracterizes Intellect's reliance on the Motorola settlement agreement. In the letter provided for the settlement conference with Magistrate Judge Brown, Intellect mentions

the Motorola license exactly **one time**, as part of a list of the names of the twelve licensees of the patents-in-suit. In fact, Intellect's settlement letter **never** mentions the value of the Motorola license. Instead, Intellect stated that a license with HTC would be comparable to the licenses with Apple and RIM and specifically identified the amounts paid by those licensees.

HTC's other "evidence" that Intellect engaged in a "fraudulent licensing scheme" is nothing more than conjecture. HTC's allegations are rooted in the Federal Circuit's opinion in *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011). In *Eon-Net*, the plaintiff and its related entities had filed over 100 lawsuits against diverse defendants; each complaint was followed by a demand for a quick settlement between $25,000-$75,000 based on annual sales. *Id.* at 1326-27. The Federal Circuit found these circumstances supported "the district court's finding that [the plaintiff] acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement from [the defendant]." *Id.* Under HTC's reading of *Eon-Net*, any plaintiff that has settled litigation for an amount less than an undefined "cost of litigation" is guilty of bad faith exploitation. This is not the case. *See, e.g., Site Update Solutions, LLC v. Accor North America, Inc.*, 2013 WL 2238626, at *14 (N.D. Cal. May 21, 2013) (reasoning that so long as an argument was not frivolous, it could not say that settlements "for amounts below the cost of defense are, by themselves, enough to warrant a finding of subjective bad faith."). The *Site Update* court explained that "[p]atentees with meritorious arguments can seek settlements far below the cost of defense." *Id.* at *12-14. In again denying attorneys' fees, the Northern District of California likewise distinguished *Eon-Net* in *Avocet Sports Technology Inc. v. Polar Electro Inc.*, explaining that because there was "no evidence that the defendants … settled low to avoid the cost of defense [and] that the cases against the settling defendants here were objectively baseless," it could not "rule out the possibility that defendants in the other cases entered into fair settlements for more than 'nuisance value' because Plaintiff had legitimate cases against them on the merits." 2013 WL 4067823, at *4 (N.D. Cal. Aug. 1, 2013).

HTC infers that Intellect routinely settled with members of the wireless communications industry for "'low cost' settlements instead of proceeding on the merits." (HTC Mot. at p. 6). However, HTC failed to (1) calculate the average cost of litigation; or (2) identify all the amounts for which Intellect settled potential or actual lawsuits. HTC next claims that Intellect's settlements are for amounts less than the cost of litigating the case. (*Id.* at p. 7). To the contrary, Intellect has entered into six settlements for amounts in excess of $1.6 million, one with a party that was a co-defendant in this case. (Exs. F-K). HTC next implies that Intellect's settlements with Garmin, Sanyo and U.S. Cellular were part of this "fraudulent scheme." (HTC Mot. at p. 7). Again, nothing supports such an implication, as the amount of payment may be based on a host of factors. For example, both Sanyo and Garmin shortly thereafter exited the cellular phone business. (Ex. L, Garmin Third Quarter 2010 10Q at pp. 2-3; Ex. M, Sanyo sale article). The best HTC can do is point to three cherry-picked settlement agreements, while failing to explain (1) why these three agreements were chosen as opposed to others and (2) how the amounts of those three agreements is so much lower than the cost of litigation.

### 3.    Intellect's Alleged Discovery Misconduct

Intellect did not engage in discovery misconduct or abuse the discovery process. To the contrary, Intellect continuously worked with HTC to minimize the parties' litigation costs. For example, Intellect agreed to stay discovery pending the settlement conference with Magistrate Judge Brown. (Dkt. No. 93). Intellect repeatedly agreed to extensions of the discovery schedule and to deadlines for briefs to accommodate HTC's requests. (Dkt. Nos. 66, 77, 150, and 163). Intellect also followed the Court's advice and took depositions of all of HTC's foreign witnesses by telephone in an effort to minimize the expense of litigation:

> THE COURT: But for overseas discovery, if possible, I would like you to see you use telephone depositions. It becomes enormously time consuming and expensive if you all start trooping to foreign climes, even though I know you enjoy travel; but, never the less, you have to consider the economics, as well.

(Ex. N, 1/6/2011, Hearing Tr. at p. 9). And Intellect did not oppose HTC's request for an Internet connection during the bench trial. (Dkt. No. 197). Intellect cooperated with HTC whenever possible. These good-faith actions further weigh against an exceptional-case finding. *See Torin Corp. v. Philips Indus., Inc.*, 625 F. Supp. 1077, 1097 (S.D. Ohio 1985) (despite inequitable conduct, fees under § 285 was not warranted where "Plaintiff conducted this litigation fairly and expeditiously and has tried to minimize litigation costs to the parties and to conserve judicial resources).

HTC's allegations about Intellect's alleged discovery misconduct pertaining to the timing of the production of the Motorola addendum does not present an accurate picture of the parties' document production practices during this litigation. Document discovery was initially to be completed by June 2010. However, HTC requested two extensions to the document discovery deadline – the first being an extension to September 30, 2010 and the second being an extension to October 21, 2010. (Dkt. Nos. 67, 77). Intellect cooperated with HTC and agreed to both of HTC's requests for extensions. HTC also failed to explain that the defendants subsequently moved to stay fact discovery from November 2, 2010 until January 31, 2011 so the parties could participate in a settlement conference without on-going discovery. (Dkt. No. 93). Intellect did not oppose defendants' motion, which was granted by the Court. (Dkt. No. 95).

While the Motorola addendum was produced after the deadline for document discovery, Intellect's production must be balanced against HTC's own document production practices. *See Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed. Cir. 1996) ("[T]he court may consider the litigation actions of both sides in connection with § 285."). HTC produced a significant volume of documents after the close of document discovery, making *thirteen* separate document productions after the close of document discovery. (Ex. O, March 4, 2011 letter; Ex. P, March 8, 2011 email; Ex. Q, March 31, 2011 email; Ex. R, April 4, 2011 email; Ex. S, May 16, 2011 email; Ex. T, June 27, 2011 letter; Ex. U, June 27, 2011 email; Ex. V, July 7, 2011 email; Ex. W, August 9, 2011 email; Ex. X,

August 12, 2011 letter; Ex. Y, September 20, 2011 email; Ex. Z, April 6, 2012 letter; and Ex. AA, April 25, 2012 email). All told, HTC produced 75,280 pages of documents **after** the close of document discovery. Moreover, eight of those document productions occurred after Intellect had completed deposing the last of HTC's fact witnesses, which prejudiced Intellect. On the other hand, the Motorola addendum was produced to HTC prior to both of Mr. Henderson's depositions on March 10, 2011 and June 28, 2011. Because HTC had an opportunity to examine Mr. Henderson regarding the Motorola addendum, HTC cannot justifiably complain of prejudice despite the document's belated production. This is especially true in light of the volume of documents produced by HTC subsequent to the document discovery deadline.

HTC also contends that Intellect's interrogatory answers and supplemental interrogatories were somehow inappropriate. To the contrary, Intellect supplemented its responses to HTC's interrogatories as discovery progressed and in accordance with Federal Rule of Civil Procedure 26(e)(2). As this Court and HTC both know, the prototypes and mock ups had been donated to the Smithsonian years earlier and were not available for inspection and testing. In fact, HTC subpoenaed the Smithsonian to have the prototypes and mock ups brought to Chicago for the bench trial and, even then, the use of the items in the collection of the Smithsonian was subject to a number of strict conditions. (Ex. BB, Smithsonian letter, Dkt. No. 192-2). Accordingly, Intellect's continuing investigation into the inventor's efforts at reducing the claims of the various patents to practice and its supplementation of interrogatory answers pertaining to these devices was reasonable and not "egregious behavior and/or abusive litigation tactics." *W.Y. Indus.*, 2013 WL 4730653 at *3.

HTC next complains that Intellect refused to answer "straightforward" requests for admission. (HTC Mot. at p. 14). However, these were not "straightforward" requests to admit facts. Fed. R. Civ. P. 36(a)(1)(A) (requests to admit are proper as to "the truth of any matters…relating to…facts, the application of law to fact, or opinions about either; and the

genuineness of any described documents."). The vast majority of HTC's first set of requests to admit were improperly directed to legal conclusions regarding patents not even asserted against HTC. (Ex. CC at pp. 5-17). Courts have repeatedly held that requests that seek legal conclusions are not appropriate under Rule 36. *See 7 Moore's Federal Practice* §§ 36.10[7], 36.10[8] (3d ed. 1997); *Pittway v. Fyrenetics, Inc.*, 1992 U.S. Dist. LEXIS 12172, at *43 (N.D. Ill. 1992); *Naxon Telesign Corp. v. GTE Info. Sys., Inc.*, 212 U.S.P.Q. 919 (N.D. Ill. 1980); *People of the State of California v. The Jules Fribourg*, 19 F.R.D. 432, 436 (N.D. Cal. 1955) (sustaining objections to request for admissions where requests ask for admission of "a legal conclusion which may be an important element in the case..."). HTC fails to acknowledge that Intellect provided answers to HTC's requests for admission that were properly based in fact. (Ex. CC at pp. 21-26). HTC next claims that Intellect's refusal to answer 29 "simple" RFAs supports its claim for an exceptional case finding. (HTC Mot. at p. 14). As with HTC's prior requests to admit, these requests improperly sought admissions about companies, websites, patents and subjects beyond Intellect's knowledge. The requests to admit that Intellect could not answer pertained to Phonetel, Mr. Henderson's personal website and personal income, a legal trust, and Intellect's relationship with its counsel. (Ex. DD). On the other hand, Intellect provided responses to the requests to admit facts pertaining to Intellect Wireless or that were within Intellect Wireless' knowledge. (*Id.* at RFA Nos. 60-65, 70-74, 79-84, 110-114,133-136, 155-156).

HTC also contends that Intellect committed misconduct by failing to answer discovery requests as to whether Intellect produced the Motorola addendum to defendants in other litigations. HTC's allegation misses the point, because whether Intellect produced the Motorola addendum in *other litigations* is irrelevant. "[A] court generally should sanction conduct beyond that occurring in trial *only* when a party engages in bad-faith conduct which is in direct defiance *of the sanctioning court*." *Highmark*, 687 F.3d at 1319 (first emphasis added; internal alterations and quotations omitted). In other words, conduct untethered to the litigation here has no bearing on an

- 13 -

exceptional case finding based on litigation misconduct. *See id.* at 1315-16, 1318-19 (supposed misrepresentations to another court did not support an exceptional case finding predicated upon litigation misconduct). HTC's allegations regarding Intellect's conduct in other litigations in no way affected HTC, making an exceptional case finding improper. *See Id.* at 1310 n.1, 1316.

### C. HTC's Own Conduct

HTC's litigation conduct and discovery practices are also relevant to the Court's determination of whether an exceptional case determination is appropriate. *See Sensonics,* 81 F.3d at 1575.

- HTC first presented its inequitable conduct defense a year and a half after this litigation began. (Dkt. Nos. 97, 98). HTC opposed Intellect's request for a bench trial (Dkt. No. 124) to efficiently resolve HTC's inequitable conduct claim without protracted litigation, preferring instead to move for summary judgment on inequitable conduct. (Ex. A, 6/30/2011 Hearing Tr. at p. 3).

- HTC made *thirteen* separate document productions totaling more than 75,000 pages after the close of document discovery. (See Exs. O-AA). Eight of those document productions occurred after Intellect had finished deposing HTC's fact witnesses.

- The vast majority of HTC's requests to admit (Exs. CC and DD) were improperly directed to legal conclusions regarding patents not even asserted against HTC and other legal matters. *Pittway v. Fyrenetics, Inc.*, 1992 U.S. Dist. LEXIS 12172, at *43 (N.D. Ill. 1992); *Naxon Telesign Corp. v. GTE Info. Sys., Inc.*, 212 U.S.P.Q. 919 (N.D. Ill. 1980).

HTC's own litigation conduct mitigates against an exceptional case finding as to Intellect.

### D. The Totality Of Circumstances Do Not Warrant An Exceptional-Case Finding

"In assessing whether a case qualifies as exceptional, the district court must look at the totality of the circumstances." *Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1347 (Fed. Cir. 2000). While the patents-in-suit were found unenforceable, several countervailing circumstances weigh heavily against an exceptional case finding:

- Intellect's defense against HTC's inequitable conduct allegations was meritorious: this Court denied summary judgment and the Federal Circuit issued a written precedential opinion;

- Intellect continuously worked with HTC to minimize the parties' litigation costs by agreeing to discovery extensions, agreeing to stay discovery, and requesting an early bench trial;

- Intellect's claims of infringement were not frivolous – its infringement claims survived summary judgment before Judge Gottschall and Judge Pallmeyer; it prevailed on a invalidity challenge before Judge Holderman;

- Intellect prevailed on claim construction after a *Markman* hearing before Judge Holderman;

- There is no evidence that Intellect acted in bad faith; and

- HTC's own actions mitigate against an exceptional-case finding.

When the totality of the circumstances is considered, HTC has failed to show by clear and convincing evidence that this case is exceptional.

## IV.    EVEN IF THIS CASE IS EXCEPTIONAL, AN AWARD OF ATTORNEYS' FEES IS NOT WARRANTED

Even "if the district court finds the case to be exceptional, the court must then determine whether an award of attorney fees is appropriate[.]" *Eon-Net*, 653 F.3d at 1323-24. In other words, "an exceptional case does not require in all circumstances the award of attorney fees": whether such an award is appropriate may be based on factors "such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). The circumstances as described above show that the award of fees is inappropriate, and the further award of attorneys' fees does not serve the interests of judgment. *McKesson Information Solutions Inc. v. Bridge Med., Inc.*, 2006 WL 2583025, at *1 (E.D. Cal. Sept. 6, 2006) (citing *S.C. Johnson*, 781 F.2d at 201).

## V.    CONCLUSION

For the foregoing reasons, HTC's renewed motion to declare this case exceptional and award attorneys' fees should be denied.

Respectfully submitted,

*/s David J. Mahalek*
Raymond P. Niro (rniro@nshn.com)
Paul K. Vickrey (vickrey@nshn.com)
David J. Mahalek (mahalek@nshn.com)
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137

Attorneys for Intellect Wireless, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 3, 2014, the foregoing **INTELLECT'S OPPOSITION TO HTC'S MOTION TO DECLARE CASE EXCEPTIONAL AND AWARD ATTORNEYS' FEES** was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

| | |
|---|---|
| Stephen S. Korniczky (skorniczky@sheppardmullin.com) Martin R. Bader (mbader@sheppardmullin.com) Graham M. Buccigross (gbuccigross@sheppardmullin.com) Matthew M. Mueller Sheppard, Mullin, Richter and Hampton LLP 12275 El Camino Real Suite 200 San Diego, CA 92130 Telephone: 858-720-8900 Facsimile: 858 509-3691 | George L. Kanabe Sheppard Mullin Richter & Hampton LLP 379 Lytton Avenue Palo Alto, CA 94301 Telephone: 650-815-2600 |
| Paul J. Korniczky (pkorniczky@leydig.com) Leydig, Voit & Mayer, Ltd. 180 N. Stetson Avenue Suite 4900 Two Prudential Plaza Chicago, IL 60601-6731 Telephone: 312-616-5600 Facsimile : 312-616-5700 (fax) | Nagendra Setty Sheppard Mullin Richter & Hampton LLP Four Embarcadero Center San Francisco, CA 94111 Telephone: 415-434-9100 |
| *Attorneys for HTC Corporation and HTC America, Inc.* | |

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

*/s David J. Mahalek*
Attorneys for Intellect Wireless, Inc.