IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **INTELLECT WIRELESS, INC.**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 2945 |
| | ) | |
| v. | ) | |
| | ) | Honorable William T. Hart |
| **HTC CORPORATION,** | ) | Magistrate Judge Geraldine Soat Brown |
| **HTC AMERICA, INC.**, | ) | |
| | ) | |
| Defendants. | ) | **JURY DEMAND** |

**PLAINTIFF INTELLECT WIRELESS, INC.'S RESPONSE TO THE HTC DEFENDANTS' MOTION TO COMPEL DOCUMENTS**

Plaintiff Intellect Wireless, Inc. (IW), by and through its attorneys, KULWIN, MASCIOPINTO & KULWIN, L.L.P. (KMK), hereby respectfully submits its response to Defendants', HTC Corporation and HTC America, Inc. (HTC), Motion to Compel Production of Privileged Documents.

## I. INTRODUCTION

HTC moves to compel production of "at least sixty nine (69) documents withheld based on the attorney-client privilege and/or work product that are responsive at least to category No. 5...[of their Document Request] as identified on Niro's privilege log." HTC Motion at pg. 4. HTC asserts the documents are improperly being withheld because a) IW and Henderson, not Niro hold the privilege, b) any such privilege is vitiated by the crime-fraud exception and c) the privilege is waived. All of the positions are meritless.

1

### A. IW And Henderson Are Asserting The Privilege

HTC's first basis for compelling production can be quickly disposed. IW and Henderson directed the Niro Firm to assert the privilege on all of the documents in question on the grounds that, *inter alia*, they concern attorney-client communications involving other litigation and matters related to such litigation not involving HTC's claims here.

### B. No Waiver

HTC takes the position that IW and Henderson waived the attorney-client privilege as to essentially all, if not all, communications they had with the Niro Firm between 2007 and the present by waiving the privilege solely as required to defend the inequitable conduct claim relating to the Rule 131 Declaration filed concerning patents 7266186 and 7310416. This is news to IW and Henderson since they never made and/or intended any such broad waiver. Moreover, it makes no sense. If HTC is correct, then a patent defendant could vitiate the privilege as to all attorney-client communications relating to a family of patents and/or a specific industry in which a particular patent is employed (here wireless communications) solely by prevailing on an inequitable conduct claim as to one member of that patent family or one patent in that particular industry. Such a proposition would make it impossible for patent counsel to freely and openly communicate about anything with their clients for fear that literally all of their communications would ultimately have to be revealed. The chill this would place on putative patent plaintiffs is obvious – which no doubt is what HTC is hoping by asserting their position here. As such, it should be denied. *See, e.g., Wi-Lan, Inc. V. LG Electronics, Inc.* 684 F.3d 1364 (Fed. Cir. 2012).

### C. No Crime Fraud Exception

IW sees no reason to belabor the record with a repetition of the legal precedent set forth by the Niro Firm with respect to purported existence of the crime fraud exception to the attorney-client

privilege and therefor incorporates those precedents here. *See Niro Firm's Brief in Response* at pgs. 3-4. Having said that, IW responds further below:

*1. Neither IW Nor Henderson Engaged in Conduct Which Vitiates the Privilege*

As noted in IW's Sur-Reply in opposition to <u>HTC's Renewed Motion to Declare Case Exceptional and Award Attorneys Fees</u>, (as well as in its initial Reply to HTC's Motion), it did not engage in frivolous litigation and/or purposely take false positions in pursuing its initial patent enforcement suit and/or in defending HTC's inequitable conduct claim here. More specifically, IW's positions have been consistent throughout the litigation – and the recent February 2007 Tendler/Henderson emails were not inconsistent with the positions taken in that litigation; to wit: Henderson, in reliance on the advice of his counsel, Tendler, executed the Rule 131 Declaration on the grounds that his invention qualified as "an actual reduction to practice" as opposed to solely a constructive reduction to practice. Immediately following the submission of the Declaration, Henderson thought better of it and within one (1) day directed his counsel – Tendler – to fully clarify the matter with the Patent office examiner to ensure that neither he nor the Patent Office was under any misimpression as to what he had invented and/or precisely on what basis he was seeking a patent. IW's and Henderson's counsel, Tendler, assured him he would do just that. As Tendler told Henderson in response to Henderson's email in which he expressed concerns about the accuracy of the filed Rule 131 Declaration:

> "I think this is fixable with complete candor with the USPTO. We will have to delineate what the prior 131s covered and what we are claiming and how the new 131 covers what we are claiming now. Anwar [the Examiner] will be OK with this." (Tendler email to Henderson, Feb. 10, 2007, 5:01 P.M., Bates No. RKT 49).

In sum, Henderson justifiably relied upon his counsel – Tendler – in believing the erroneous actual reduction to practice assertion in the original filed Rule 131 Declaration would be corrected

in a manner that not only would clearly communicate that IW was not basing its patent application upon "actual reduction" but only upon "constructive reduction," but that this correction would be done in a manner that complied in all respects with the applicable law. That Henderson's patent counsel – now suspended from practice before the United States Patent Office directly as a result of his conduct here (See Notice of Suspension attached hereto as Ex. A)– failed to file the proper documentation to complete the correction in accordance with the applicable law, thus leading to the inequitable conduct claim here, in no way now makes every communication he later had with his patent enforcement counsel (Niro) about enforcing **all of the rest of his wireless patents**, communications made "in furtherance" of the inequitable conduct found here, let alone fraud.[1]

### 2. Reliance on Counsel

The Niro Firm, in its defense, makes a number of assertions about the events here from its perspective. IW and Henderson simply say this: they went to what they thought was a qualified patent counsel – Tendler – to prosecute IW's patent. When the Rule 131 issue arose, Henderson not only acted immediately to advise his counsel of his deep desire to be perfectly truthful with the patent office, but his corresponding desire to ensure that nothing done in connection with the prosecution of those IW's patents would jeopardize any of its other patents. Toward that end, Henderson directed Tendler to contact the Niro Firm to discuss it. It mystifies Henderson and IW to this day why Tender never did. IW and Henderson always presumed that Tendler had discussed

---

[1] HTC seeks to reargue the underlying merits of its Section 285 motion in the context of this Motion to Compel. IW has already responded to those allegations and has been given leave to file a Supplemental Brief at the close of discovery – should any be allowed – on this issue. Accordingly, IW will reserve its response to those merits for that appropriate time. Suffice it to say, however, nothing in that motion justifies obliterating the attorney-client privilege in the manner requested here. Indeeed, if anything, the recently produced emails, when read in their totality, support a finding that neither IW nor Henderson had the requisite state of mind to establish inequitable conduct in the first instance.

all facts relevant to the matter with the Niro Firm – especially since they undertook his representation during the course of this litigation – and that its attorneys would initiate any discussion about the Rule 131 Declaration at issue here had they thought it appropriate – assuming of course as he did, and as he had every right to believe – Tendler had discussed it with them. Unfortunately, Tendler apparently did not discuss it with the Niro Firm and thus they in turn never discussed it with Henderson and/or IW. But, at the end of the day, for purposes of the instant motion and beyond, it matters not, because, as noted above, neither Henderson nor IW engaged in communications with the Niro Firm – and in particular the communications over which they are asserting a privilege – to further any inequitable conduct and/or fraud here.[2]

## II.  CONCLUSION

For all the above reasons, Intellect Wireless, Inc. respectfully moves this Court to deny HTC's Motion to Vitiate the Attorney-Client Privilege and Compel Production of Documents.

Dated: April 18, 2014                              Respectfully Submitted,

                                                    KULWIN, MASCIOPINTO & KULWIN, LLP.


                                                    By: /s/ Shelly B. Kulwin

Shelly B. Kulwin
Jeffrey R. Kulwin
Rachel A. Katz
KULWIN, MASCIOPINTO & KULWIN, L.L.P.
161 N. Clark Street, Suite 2500
Chicago, IL 60601
312-641-0300

---

[2] Finally, IW needs to briefly respond to a point raised in the Niro response although it is not in its view particularly germane to this matter. To the extent the Niro Firm is implying that IW and/or Henderson somehow is at fault for failing to share with it information about the patent prosecution at issue here –neither IW nor Henderson bear any such responsibility. Neither IW nor Henderson recall discussing the issue with them – precisely as its members assert. But the issue was never discussed not through any fault of IW and/or Henderson, but because a) Tendler failed to consult with the Niro Firm about it as Henderson specifically directed him to do; and/or b) the Niro attorneys own communication failures .

5

**CERTIFICATE OF SERVICE**

      I, Shelly B. Kulwin, an attorney, certifies that he served copies of the above document, along with this Certificate of Service to the attorney(s) listed below via ECF on this April 18, 2014.

Stephen S. Korniczky
(skorniczky@sheppardmullin.com)
Martin R. Bader
(mbader@sheppardmullin.com)
Graham M. Buccigross
(gbuccigross@sheppardmullin.com)
Matthew M. Mueller
Sheppard, Mullin, Richter and Hampton LLP.
12275 El Camino Real, Suite 200
San Diego, CA 92130

*Attorneys for HTC Corporation and HTC America, Inc.*

Paul J. Korniczky (pkorniczky@leydig.com)
Leydig, Voit & Mayer, Ltd.
180 N. Stetson Avenue
Suite 4900
Two Prudential Plaza
Chicago, IL 60601-6731

*Attorneys for HTC Corporation and HTC America, Inc.*

Robert P. Cummins
(rpc@cumminslawfirm.com)
The Cummins Law Firm, P.C.
161 North Clark , Suite 2550
Chicago, IL 60601

*Attorneys for Niro, Haller & Niro*

                Respectfully Submitted,

                By: /s/ Shelly B. Kulwin

Shelly B. Kulwin
Jeffrey R. Kulwin
Rachel A. Katz
KULWIN, MASCIOPINTO & KULWIN, L.L.P.
161 N. Clark Street, Suite 2500
Chicago, IL 60601
312-641-0300

*Attorneys for Intellect Wireless, Inc.*