**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INTELLECT WIRELESS, INC., | |
| Plaintiff, | Case No. 1:09-cv-02945 |
| v. | Honorable Judge William T. Hart |
| HTC CORPORATION, HTC AMERICA, INC., and AT&T MOBILITY LLC, | Magistrate Judge Geraldine Scott Brown |
| Defendants. | |

**HTC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF ALLEGEDLY PRIVILEGED DOCUMENTS FROM INTELLECT WIRELESS, INC. AND THE NIRO FIRM**

**A.      INTRODUCTION**

The crime-fraud exception vitiates any privilege that may have attached to the 69 documents that the Court ordered Intellect Wireless ("IW") and Niro to produce but that they are withholding due to privilege.  Further, IW waived any privilege that may have attached to these documents when Henderson and Tendler testified at trial.

This Court and the Federal Circuit already rejected Henderson's "mistake" theory and his attempt to blame his prosecuting attorney, Robert Tendler, and found that Henderson intended to deceive the U.S. Patent and Trademark Office ("PTO").  Thus, Henderson committed fraud on the patent office.  This finding was further validated when Tendler belatedly produced the February 10, 2007 "smoking gun" e-mail where he and Henderson discuss that the February 9, 2007 declaration was "incorrect," "factually inaccurate," and "improper."  Yet, neither Henderson nor Tendler corrected the fraud on the PTO.  Instead, Henderson used the fraudulently procured patents to sue HTC.  When confronted with HTC's

inequitable conduct allegations at his deposition and at trial, Henderson flat-out lied under

oath:

- "Q. [By IW's Counsel]:  Is there anything in this declaration [*i.e.*, the February 9, 2007 declaration] that is untrue?
  A.  No. It's true."  (Supp. Bader Decl., Ex. G, 399:22-24.)

- "And I'm testifying today that I believe these were true and ***I believe them today to be true as well***."  (*Id.*, 339:25-340:1 (emphasis added).)

- "Q.  It says, I'm replacing the declaration because I think the earlier one – this is your story, right, that I am replacing the declaration because I believe the earlier one may be construed to be inaccurate, correct?
  A.  Yes.
  Q.  And in your heart, you didn't believe it was inaccurate, correct?
  A.  That's correct.  (Trial Transcript, 355:18-25.)

Henderson testified under oath that the declarations were true and accurate.  However,

Henderson's e-mail prior to this litigation refers to the declaration as "the factually inaccurate

declaration I signed," "the incorrect declaration," and "the improper declaration."  He further

stated in the e-mail that "the intellect device shown to Hashimoto in July 1993 HAD NO WAY

of displaying a picture on a two line alphanumeric display, contrary to my recent inaccurate

declaration."  (Bader Decl., Ex. A [Doc. 276-3].)  Henderson's testimony under oath to the

Court these past three years could not be more diametrically opposed to the truth.

Thus, Henderson's fraud with respect to the declarations permeated and continued

throughout the entire litigation.  Moreover, the communications at issue in this Motion were

made in furtherance of Henderson's fraud because Henderson attempted to cover up his fraud

on the PTO by lying to HTC and the Court.  The correspondence between Henderson and Niro

relating to the Rule 131 declarations must be produced because the crime-fraud exception

applies.  *See W.R. Grace & Co. v. Viskase Corp.*, No. 90 C 5383, 1991 U.S. Dist. LEXIS

10424, at **9-10 (N.D. Ill. 1991) (applying crime-fraud exception due to non-disclosure of

prior art based on *prima facie* showing of materiality); *Shelbyzyme, LLC v. Genzyme Corp.*, No. 09-768, 2013 U.S. Dist. LEXIS 88822, at **3-4, 24-25 (D. Del. June 25, 2013) (applying crime-fraud exception based on false declaration that entire delay in filing petition regarding abandonment was unintentional); *Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1051-55 (D. Del. 1985) (applying crime-fraud exception based on knowing misrepresentation of inventorship).

Niro's argument that he was unaware of Henderson's February 10, 2007 e-mail where Henderson admits knowingly deceiving the PTO, is completely irrelevant to this Motion to Compel. The crime-fraud exception applies regardless of whether the attorneys knew of the client's fraud. *In re Napster*, 479 F.3d 1078, 1090 (9th Cir. 2007).

Finally, whether or not the crime-fraud exception applies, the ten narrowly tailored document categories all relate to the false Rule 131 declarations, and IW already expressly waived its privilege relating to the Rule 131 declarations. The Court should accordingly order IW and Niro to produce all documents identified on Niro's Supplemental Privilege Log, as well as any other withheld documents responsive to the Court's January 30, 2014 Order.

## II.  ARGUMENT

### A.  The Crime-Fraud Exception Vitiates Henderson's Claimed Privilege

#### 1.  Henderson Committed Common Law Fraud

This Court already found, and the Federal Circuit affirmed, **facts constituting common law fraud**. In particular, this Court found that Henderson intended to deceive the PTO: "[c]lear and convincing evidence strongly supports an intent to deceive, rather than mere mistake, as the single most reasonable inference to be drawn from the facts." *Intellect Wireless, Inc. v. HTC Corp.*, 910 F. Supp. 2d 1056, 1074 (N.D. Ill. 2012). IW's only argument for why Henderson did not commit common law fraud is that Henderson meant to correct his

admittedly false declaration, but that Tendler failed to do so. This Court and the Federal Circuit already squarely rejected this argument.

IW further argues that if the crime-fraud exception applies here, then an accused infringer could vitiate all privilege simply by prevailing on an inequitable conduct claim. However, this is exactly why the Federal Circuit requires proof of not just inequitable conduct, but common law fraud. For example, failing to disclose a prior art reference to the PTO is potentially inequitable conduct, but it may not rise to the level of common law fraud. Here, however, Henderson's conduct easily meets that standard, as he affirmatively lied to the PTO during the prosecution of the asserted patents, to HTC during his deposition, and to the Court during trial.

### 2. The Requested Communications Were Made in Furtherance of Henderson's Fraud

The requested communications were made in furtherance of Henderson's fraud. IW and Niro cite *Union Carbide* for the proposition that, in order for the crime-fraud exception to apply, the communications must be in furtherance of the fraud. *See Union Carbide Corp. v. The Dow Chem. Co.*, 619 F. Supp. 1036, 1052 (D. Del. 1985). HTC does not dispute this legal proposition. Here, Henderson consulted with Niro regarding the prosecution of the patents-in-suit and related picture phone patent applications that also relied on false Rule 131 declarations. Neither IW nor Niro disputes this. Furthermore, Henderson and IW knowingly pursued baseless litigation. Henderson knew at the time he submitted the original February 9, 2007 Rule 131 declaration to the PTO that it was "incorrect," "factually inaccurate," "improper," and a "lethal blow" to the enforceability of his picture phone patent portfolio, yet pursued litigation against HTC anyway. (Bader Decl., Ex. A.) Then, in an attempt to save his patents, he lied during his deposition and at trial by testifying that he believed the February 9,

2007 declaration was true. (Supp. Bader Decl., Ex. G, 339:25-340:1, 399:22-24; Trial Transcript, 355:18-25.) This testimony cannot be reconciled with the February 10, 2007 e-mail. Thus, any specific conversations or communications Henderson had with his counsel regarding the declarations that he knowingly procured and enforced through fraud are not protected by the attorney-client privilege. *See W.R. Grace*, 1991 U.S. Dist. LEXIS 10424, at \*\*9-10; *Shelbyzyme*, 2013 U.S. Dist. LEXIS 88822, at \*\*3-4, 24-25; *Union Carbide*, 619 F. Supp. at 1051-55.

### 3. Niro's Knowledge of Henderson's Fraud is Irrelevant to this Motion

Niro spends the entirety of its brief arguing why it did not knowingly further Henderson's fraud on the PTO, courts, and the telecommunications industry. This is completely irrelevant to this Motion because **the crime-fraud exception applies regardless of whether Niro knew it was furthering Henderson's fraud**. "The attorney need not have been aware that the client harbored an improper purpose. Because both the legal advice and the privilege are for the benefit of the client, it is the client's knowledge and intent that are relevant." *In re Napster*, 479 F.3d 1078, 1090 (9th Cir. 2007).

Regardless, the Niro firm's representations range from demonstrably false to carefully qualified to dance around the issues. For example:

- The Niro lawyers represent to the Court they "knew nothing of the 131 Declaration issues discussed in Exhibit 35 [the January 10, 2007 email] in 2007 or at any time thereafter until the document was produced in January 2014." (See Doc. 270-4.) This is demonstrably false. Of course the Niro lawyers knew of the issues with the February 9, 2007 Rule 131 declaration prior to January 2014. HTC informed them of the inequitable conduct issues in a September 2010 letter and then filed an Amended Answer alleging inequitable conduct in detail in November 2010 (Doc.

No. 97).  Given this demonstrably false statement, how can the Court believe anything the Niro lawyers say?

- Niro asserts it did not "see or hear about the February 10, 2007 email until it was produced by Tendler this year." (Niro Oppo. at 1.)  Niro never denies that the email was in its possession prior to January 2014.  Nor does Tendler actually deny that he provided the email to the Niro firm prior to January 2014 (he just claims he has no recollection).

- Niro asserts that "Henderson never consulted with the Niro firm in 2007 for the purpose of furthering Tendler's presentation of the Rule 131 declarations." (Niro Oppo. at 2.)  The Niro lawyers never deny that they were aware of the false Rule 131 declarations in 2007.  Nor do they deny that Henderson consulted with them after 2007 regarding the false Rule 131 declarations.

Should the Court desire that HTC further address these issues, HTC is prepared to file supplemental briefing in support of its motion for attorneys' fees and/or to depose the Niro lawyers.

**B.      HTC Does Not Claim that IW Waived <u>All</u> Privilege**

IW argues that HTC is claiming that IW waived **<u>all</u>** privilege in this case.  That is simply not true.  HTC requested, and the Court ordered IW and Niro to produce ten narrowly tailored categories of documents that **<u>all relate specifically to the falsity of the Rule 131 declarations</u>**.  In response, Niro provided a log identifying 69 documents.  These 69 documents certainly do not represent all privileged communications between IW and Niro over the course of at least seven years and six separate litigations against multiple defendants.  Rather, it is apparent that they relate only to the Rule 131 declarations.  While it is questionable whether the log is

even complete with respect to the ten categories, HTC has not requested every single communication between Henderson and Niro from the last seven years of litigation.

## C.    IW Waived Privilege as to the Requested Documents

As an additional ground, the Court should also order IW and Niro to produce the requested documents because IW waived any privilege with respect to communications relating to the Rule 131 declarations.  In particular, IW allowed Tendler to testify at trial about his communications with Henderson regarding the Rule 131 declarations.  IW subsequently expressly waived the privilege.  (Bader Decl., Ex. E ("the waiver [ ] applies to the 131 issue raised in the subpoena based upon the trial testimony")).)  In view of the newly produced February 10, 2007 e-mail, it is now clear that Henderson's entire story surrounding these declarations was made up for litigation and that Henderson's testimony was a lie.  He knew the statements to the PTO were false from the outset.  Therefore, privilege was waived for all conversations and/or communications relating to the Rule 131 declarations.

IW and Niro argue that the Court must consider the fairness of finding that IW waived its privilege.[1]  HTC agrees that the Court should consider fairness, and here fairness requires that the Court find IW waived privilege with respect to documents relating to the Rule 131 declarations.  "The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not."  *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005).  It is certainly fair to order IW and Niro to produce the requested and narrowly tailored document categories.  IW introduced and relied on Tendler's testimony regarding communications about the Rule 131 declarations at trial.  IW

cannot disclose communications that it believes support its position while withholding others that may not support its position. The withheld documents are highly relevant to HTC's motion for attorneys' fees.

**D.     At a Minimum, the Court Should Conduct an *In Camera* Inspection**

Neither IW nor Niro addressed the factors that courts consider in determining whether an *in camera* inspection is proper. Rather, they submitted a very limited subset of the requested documents for *in camera* inspection. At the same time, they offered that "an *in camera* review of the withheld materials by the Court will confirm the sworn testimony of the Niro lawyers." (Niro Response, p. 3.) Yet IW is refusing to submit the vast majority of the documents for inspection. IW should not be permitted to pick and choose which documents it submits.

**III.     <u>CONCLUSION</u>**

The Court should order IW and Niro to produce the documents withheld as privileged and/or work product on Niro's Supplemental Privilege Log as well as all other allegedly privileged and/or work product documents responsive to the Court's January 30, 2014 Order.

Dated:  April 25, 2014                    Respectfully submitted,

                                          */s/ Martin R. Bader*_____
                                          Stephen S. Korniczky
                                          Martin R. Bader
                                          Graham (Gray) M. Buccigross
                                          Matthew M. Mueller
                                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
                                          12275 El Camino Real, Suite 200

---

[1] To the extent that a fairness requirement applies, it only applies to waiver, not to vitiation of privilege pursuant to the crime-fraud exception.

San Diego, CA  92130
Tel:     (858) 720-8900
Fax:     (858) 509-3691
E-mail:          skorniczky@sheppardmullin.com
E-mail:          mbader@sheppardmullin.com
E-mail:          gbuccigross@sheppardmullin.com
E-mail:          mmueller@sheppardmullin.com


Paul J. Korniczky
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 N. Stetson Avenue
Chicago, IL  60601-6731
Tel:     (312) 616-5600
Fax:     (312) 616-5700
E-mail:          pkorniczky@leydig.com

Attorneys for Defendants and Counter-Claimants
HTC CORPORATION and HTC AMERICA, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served through the Court's ECF filing system on the following:

**Shelly Byron Kulwin**
**Anthony James Masciopinto**
**Jeffrey R. Kulwin**
Kulwin, Masciopinto & Kulwin, LLP
161 North Clark Street
Suite 2500
Chicago, IL 60601
(312) 641-0300
Email: skulwin@kmklawllp.com
Email: amasciopinto@kmklawllp.com
Email: jkulwin@kmklawllp.com
Attorneys for Intellect Wireless, Inc.


**Robert Patrick Cummins**
The Cummins Law Firm, P.C.
161 N. Clark St.
Suite 2550
Chicago, IL 60601
Email: rpc@cumminslawfirm.com
Attorney for Respondent Niro, Haller & Niro

Dated:  April 25, 2014                                         */s/ Martin R. Bader*                    
                                                                     Martin R. Bader