**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| INTELLECT WIRELESS, INC., | |
| Plaintiff, | Case No. 1:09-cv-02945 |
| v. | Honorable Judge William T. Hart |
| HTC CORPORATION and HTC AMERICA, INC., | Magistrate Judge Geraldine Soat Brown |
| Defendants and Counter-Claimants. | |

## DEFENDANTS HTC CORPORATION AND HTC AMERICA, INC.'S FEE AND EXPENSE MOTION

## TABLE OF CONTENTS

Page

I.    INTRODUCTION................................................................................................1

II.   HTC SHOULD BE REIMBURSED FOR ITS REASONABLE FEES ..................2

    A.    HTC's Attorneys Charged Reasonable Rates for Work on This Case........................4

    B.    HTC's Invoices are Not "Block Billed" and IW Cannot Properly Object
        When Its Own Invoices are Billed in the Same Manner ...............................5

    C.    HTC is Entitled to All Its Fees After IW Proposed a One-Day Trial on
        Inequitable Conduct ...................................................................7

    D.    HTC's Work Throughout the Case was Reasonable and Not Duplicative .................8

        1.    Kanabe's Work at Trial was Reasonable and Not Duplicative ......................8

        2.    HTC Justifiably Prepared Its Summary Judgment Motion .............................8

        3.    HTC's Other Work was Reasonable and Necessary, Especially Given
            IW's Willingness to Submit False Information to HTC and the Court..........10

    E.    Work IW Describes as "Administrative" was Necessary ...........................11

    F.    HTC's Time Entries are Extremely Descriptive and Minimally Redacted...............11

    G.    HTC's Fees are All Related to This Lawsuit .............................................12

    H.    HTC's Expenses are Necessary and Justified ..........................................12

III.  HTC IS ENTITLED TO PREJUDGMENT AND POST-JUDGMENT INTEREST...........15

IV.   CONCLUSION .................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Berberena v. Coler*
    753 F.2d 629 (7th Cir. 1985) ............................................................................ 12

*Blum v. Stenson*
    465 U.S. 886 (1984) ......................................................................................... 4

*Dupuy v. McEwen*
    648 F. Supp. 2d 1007 (N.D. Ill. 2009) ........................................................ 7, 12

*Farfaras v. Citizens Bank & Trust of Chicago*
    433 F.3d 558 (7th Cir. 2006) ..................................................... 6, 7, 10, 11, 12, 14

*Fortino v. Quasar Co.*
    950 F.2d 389 (7th Cir. 1991) ........................................................................ 15

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*
    292 F.3d 1363 (Fed. Cir. 2002) ...................................................................... 1

*Gibson v. City of Chicago*
    873 F. Supp. 2d 975 (N.D. Ill. 2012) ............................................................. 6

*Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*
    874 F.2d 431 (7th Cir. 1989) ........................................................................ 15

*Gratz v. Bollinger*
    353 F. Supp. 2d 929 (E.D. Mich. 2005) ......................................................... 4

*Hensley v. Eckerhart*
    461 U.S. 424 (1983) ......................................................................................... 5

*Hickory Farms, Inc. v. Snackmasters, Inc.*
    No. 05 C 4541, 2008 U.S. Dist. LEXIS 67762 (N.D. Ill. Apr. 2, 2008) .......................... 2, 5, 6

*Hutchison v. Amateur Elec. Supply, Inc.*
    42 F.3d 1037 (7th Cir. 1994) ............................................................... 3, 5, 10, 14

*Intellect Wireless, Inc. v. HTC Corp.*
    732 F.3d 1339 (Fed. Cir. 2013) ...................................................................... 9

*Intellect Wireless, Inc. v. HTC Corp.*
    910 F. Supp. 2d 1056 (N.D. Ill. 2012) ........................................................... 9

*Intellect Wireless, Inc. v. Sharp Corp.*
    No. 10 C 6763, 2014 U.S. Dist. LEXIS 73653 (N.D. Ill. May 30, 2014) ............................... 1

*Isco Int'l, Inc. v. Conductus, Inc.*
    279 F. Supp. 2d 489 (D. Del. 2003) ............................................................... 1

*Kilopass Tech., Inc. v. Sidense Corp.*
738 F.3d 1302 (Fed. Cir. 2013) ........................................................................... 1

*Local Okla. Bank, N.A. v. United States*
452 F.3d 1371 (Fed. Cir. 2006) ......................................................................... 15

*Mathis v. Spears*
857 F.2d 749 (Fed. Cir. 1988) ........................................................................... 15

*Nilssen v. Gen. Elec. Co.*
No. 06 C 04155, 2011 U.S. Dist. LEXIS 13615 (N.D. Ill. Feb. 11, 2011) ............ 15

*Nilssen v. Osram Sylvania, Inc.*
528 F.3d 1352 (Fed. Cir. 2008) ........................................................................... 1

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*
776 F.2d 646 (7th Cir. 1985) ............................................................. 3, 5, 10, 14

*Oiness v. Walgreen Co.*
88 F.3d 1025 (Fed. Cir. 1996) ........................................................................... 15

*Pickett v. Sheriden Health Care Ctr.*
664 F.3d 632 (7th Cir. 2011) ............................................................................. 4

*Sloan Valve Co. v. Zurn Indus., Inc.*
No. 10-cv-204, 2012 WL 3716961 (N.D. Ill. Aug. 27, 2012) ................................. 4

*In re Synthroid Mktg. Litig.*
264 F.3d 712 (7th Cir. 2001) ............................................................................. 7

*Tomazzoli v. Sheedy*
804 F.2d 93 (7th Cir. 1986) ............................................................................. 11

*Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*
69 F.3d 512 (Fed. Cir. 1995) ........................................................................... 15

*West Virginia v. United States*
479 U.S. 305 (1987) ........................................................................................ 15

Statutes

35 United States Code § 285 ........................................................................ 1, 15

Other Authorities

Local Rule 54.3 ..................................................................................... 2, 5, 6, 11

## I.    **INTRODUCTION**

Over five years ago, Intellect Wireless, Inc. ("IW") filed this exceptional case against Defendants HTC Corporation and HTC America, Inc. (collectively, "HTC"). IW premised its patent infringement action on patents the inventor and his attorney fraudulently obtained from the U.S. Patent and Trademark Office ("PTO"). Daniel Henderson, IW, and their attorneys never should have filed this case. HTC will never be able to recover the lost company and employee time spent defending IW's egregious misconduct. The Court, however, can fulfill the purpose of Section 285, which is "to compensate a defendant for attorneys' fees it should not have been forced to incur." *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013). Indeed, there is legal precedent upon which to weigh the egregious nature of this lawsuit. Judge Pallmeyer reviewed a number of earlier cases involving inequitable conduct[1] and noted that IW's "disturbing" conduct in this case was "more egregious than that of the patent holders in" those cases. *Intellect Wireless, Inc. v. Sharp Corp.*, No. 10 C 6763, 2014 U.S. Dist. LEXIS 73653, at *26-27 (N.D. Ill. May 30, 2014). IW forced HTC to incur ▮▮▮▮▮▮ in fees and expenses (including those incurred in recent months). (Exs. 3, 5.) HTC never should have incurred ***any*** of these fees or expenses, because "[h]ad [IW] not filed false declarations with the PTO, [IW] likely would not have obtained the patents at issue nor sued the Defendants here for infringement." *Intellect Wireless v. Sharp*, 2014 U.S. Dist. LEXIS 73653, at *33. IW should reimburse HTC the full amount of its fees and expenses incurred in this lawsuit.

---

[1] *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352 (Fed. Cir. 2008) (awarding attorneys' fees in an inequitable conduct case involving submitting misleading but not necessarily false declarations to the PTO); *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363 (Fed. Cir. 2002) (inequitable conduct involved withholding information); *Isco Int'l, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489 (D. Del. 2003) (same).

## II.     HTC SHOULD BE REIMBURSED FOR ITS REASONABLE FEES

HTC's request for its attorneys' fees is reasonable and IW has failed to demonstrate otherwise. On the contrary, IW has done everything to drive up the cost of litigation by taking unreasonable and obstructive positions throughout this process, including serving duplicative and baseless objections and refusing to narrow issues for the Court.

In violation of the Local Rules, IW refused to identify the amount of HTC's fees that it deems reasonable. The plain language of Local Rule ("LR") 54.3 requires IW to identify "the total amount of fees and/or related nontaxable expenses that respondent deems should be awarded." IW provided HTC with 12 categories of objections. (Ex. 1 at 4-5.) Rather than provide the total attorneys' fees it does ***not*** object to, IW only provided a total for the objected to fees for most categories. IW objects to many of HTC's time entries on multiple grounds and then "double counts" those time entries for multiple objections to come up with the total fees to which it objects. IW's methodology fails to comply with the Local Rules because it does not reveal the total amount of unobjectionable fees.[2] IW wants the Court and HTC to comb through IW's 155 pages of objections, cross-reference the objections with HTC's invoices, and then add up the line items that IW has ***not*** objected to in order to determine the fees that IW deems reasonable. IW's methodology is not only inefficient and unreasonable, but it is contrary to the explicit language (and spirit) of LR 54.3. IW's refusal to comply with the Local Rules only serves to increase the amount of attorneys' fees that HTC incurred preparing this motion. IW's failure to comply with LR 54.3 in this respect also justifies HTC receiving all of its requested fees, including those incurred for this motion. *Hickory Farms, Inc. v. Snackmasters, Inc.*, No. 05 C 4541, 2008 U.S.

_____

[2] By way of example, had IW complied with the Local Rules and specifically identified $2 million in non-objectionable fees, the Court could better determine the appropriate amount of

Dist. LEXIS 67762, at *32-34 (N.D. Ill. Apr. 2, 2008).

IW has failed to establish any reasonable basis to reduce HTC's attorneys' fees and expenses. Moreover, even if the Court were to determine that it should reduce some of HTC's fees, IW's double counted objections prevent the Court from reasonably doing so in this case. IW's general, overlapping objections to HTC's fees requests fail to identify specifically which fees and what amount of those fees are in dispute. Such general, unspecific objections are without merit and the Court should ignore them entirely. *See Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1048 (7th Cir. 1994) (party challenging fees has a "responsibility to state objections with particularity and clarity"); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir. 1985). IW includes the same billing entries under multiple categories of objections. For example, IW objects to the same billing entries for HTC's work participating in joint defense group meetings under at least two categories: (1) work unrelated to this case and (2) block billing. If the Court adjusted HTC's fees for what IW describes as work unrelated to this case and also adjusted HTC's fees for what IW describes as block billing, then the Court would have to further determine which entries IW included in both categories before determining the appropriate adjustment. (*See, e.g.,* Ex. 2 at 106, 136 (Korniczky entry on 02/11/10).) Moreover, IW bases its objections on HTC's fees without applying the discounts HTC received, making them larger than the actual fees requested. For example, IW objects to the ███████████ in fees HTC spent on Kanabe's work, but this objection exceeds the ███████████ actually billed for his work. (Compare Ex. 1 at 1, 4.) Therefore, the Court should deny IW's objections entirely.

All of HTC's actions in this litigation were reasonable, focused, and directed at proving very explicit and articulated defenses. The remainder of this section addresses each of IW's

fees at or above $2 million to award HTC. As it stands, both HTC and the Court must speculate

-3-

objections and sets forth the reasons why the Court should disregard them:

**A.     HTC's Attorneys Charged Reasonable Rates for Work on This Case**

IW objects to the rates charged by HTC's attorneys. The Seventh Circuit has "defined a reasonable hourly rate as one that is 'derived from the market rate for the services rendered.'" *Pickett v. Sheriden Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). HTC's billing rates for its attorneys are presumptively reasonable, because they are the actual rates the attorneys charged in this case. *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-cv-204, 2012 WL 3716961, at *2 (N.D. Ill. Aug. 27, 2012) ("Courts presume that an attorney's actual billing rate is an appropriate market rate."). HTC also actually paid the invoices provided in this case. "When a client pays the attorney's bill at a time when indemnification or reimbursement is uncertain, it is strong evidence of the reasonableness of the attorney's hourly rate." *Id.*

Without citing any authority, IW attempts to limit HTC's billing rate to that which IW paid. Other courts have commented on the irrelevance of such information. *See Gratz v. Bollinger*, 353 F. Supp. 2d 929, 947 (E.D. Mich. 2005) ("As an initial matter, the Court finds the hourly rates charged by Defendants' attorneys and the hours those attorneys expended defending against Plaintiffs' lawsuit of no particular value to its determination of Plaintiffs' fees award."). Significantly, it is inappropriate to compare billing rates directly because "[t]he type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively – even within a law firm. Accordingly, the hourly rates of lawyers in private practice also vary widely." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Even so, HTC's billing rates are largely in line with IW's suggested rates. For example, Bader is a partner with 12 years of experience and his average rate in this case is within the range IW proposed in the Joint Statement. (Ex. 1 at 1, 4.)

---

as to the range of fees at issue.

Similarly, S. Korniczky is a partner with 27 years of experience and his average rate in this case is *less* than IW's proposed rate. (*Id.*)

Moreover, IW has failed to comply with the plain language of LR 54.3. In response to HTC's disclosure of its fee rates, the Local Rules state that "the respondent shall include a similar table giving respondent's position as to the name, compensable hours, appropriate rates, and totals for each biller listed by movant." IW failed to do this as part of the Joint Statement, instead providing a partial list of rates that do not even cover all of levels of experience for HTC's attorneys. (Ex. 1 at 4.) Such general, unspecific objections are without merit and the Court should ignore them. *See Hutchison*, 42 F.3d at 1048; *Ohio-Sealy*, 776 F.2d at 664. For example, as previously mentioned, S. Korniczky and Bader's rates are within the range and, thus, IW purportedly has no objection to them. Yet, there is no indication which rate IW would apply to Gray Buccigross, an associate attorney with 10 years of experience, or Nick Setty, a partner with 22 years of experience. Thus, the Court should disregard IW's objections to the rates HTC's attorneys charged, which are commensurate with market rates and discounted from the rates HTC's outside counsel normally charges. (*See* Ex. 3.)

### B. HTC's Invoices are Not "Block Billed" and IW Cannot Properly Object When Its Own Invoices are Billed in the Same Manner

IW's argument that the Court must reduce HTC's fees because the fees are allegedly "block billed" fails for at least three reasons. First, the time entries about which IW now complains are not block billed. Contrary to what IW would have this Court believe, the Supreme Court has held that "counsel, of course, is not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Attorneys are not required to break down "individual, but related tasks, into single billing entries." *Hickory Farms*, 2008 U.S. Dist. LEXIS 67762, at *21. Rather, work performed in connection with the same end

product is sufficiently related to be billed in a single entry. *Id.*; *see also Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 987 (N.D. Ill. 2012). For example, IW complains about billing by S. Korniczky on February 11, 2010 in which he ████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████ (Ex. 2 at 106.) This billing entry is centered on a single joint defense group teleconference in which the participants discussed multiple topics. It is nonsensical to separately track and bill separate time entries for each topic discussed on a single telephone call.

     Second, the Court should reject IW's argument because its own attorneys prepared their invoices using the same billing practices about which IW now complains. (Ex. 4.) For example, IW's attorney billed 35 hours in a single time entry for work on multiple issues in multiple cases:



(*Id.* at 11.) Similarly, IW's attorneys routinely billed well over 20 hours of time in a single time entry for an entire month of work. (*Id.* at 33.) If any party in this litigation block billed time, it is IW, not HTC. Moreover, it is contrary to LR 54.3 for IW to object to billing practices in which its own attorneys engaged. *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006) (LR 54.3's "purpose is to avoid exactly the type of hypocritical objections presented by [IW]. Although [IW] object[s] to the use of block billing and 'vague' descriptions by [HTC's] counsel, [IW]'s counsel used similarly vague descriptions and block billing.").

     Finally, the Court should reject IW's argument regarding any alleged block billing

because the Seventh Circuit has repeatedly stated that courts need not reduce fees simply because of block billing. "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras*, 433 F.3d at 569. The appropriate inquiry is not whether the tasks are block billed, but "whether the entries are detailed enough to allow the opposing party and the court to determine that the time billed accurately reflects the time spent on the case." *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1029 (N.D. Ill. 2009). Here, the entries IW disputes clearly reflect time billed to this case. In addition, the alleged block billing entries were acceptable to HTC, which paid the invoices in question. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) (courts shouldn't require more detail than clients). Thus, the Court should not reduce HTC's fees for what IW describes as block billing.

### C.     HTC is Entitled to All Its Fees After IW Proposed a One-Day Trial on Inequitable Conduct

IW's blanket objection to all fees after it filed a motion for a one-day bench trial is baseless and should be rejected. HTC filed its summary judgment motion only one week after IW's trial proposal. (Dkt. 133.) IW and its attorneys submitted false pleadings to the Court that claim an actual reduction to practice and a functional prototype that could receive caller ID and pictures in opposition to HTC's summary judgment motion. (*See* Dkt. 323 at pp. 7-8; *see also infra*, C.2.) As we know now, the statements IW and its attorneys made opposing the summary judgment motion were completely and unambiguously false. However, the motion for summary judgment thoroughly and efficiently focused the evidence and issues for the Court. Indeed, shortly thereafter, the Court denied HTC's motion, bifurcated the case for an early trial on inequitable conduct, and instructed the parties to focus on two specific issues at trial: (1) the relationship between the asserted patents and the patents wherein the false declarations were initially submitted and (2) Henderson's intent to deceive the PTO. Even after the Court focused

the issues for trial, it still took four days to present all of the evidence. Had the Court granted IW's motion for a bench trial before reading the summary judgment motion, HTC still would have incurred the fees and expenses related to trial preparation, trial, and post-trial matters, and the trial undoubtedly would have lasted longer as the issues would not have been as well defined. HTC should not receive less than its full fees due to the Court's correct decision to try to resolve the case through summary judgment prior to conducting a trial.

### D. HTC's Work Throughout the Case was Reasonable and Not Duplicative

#### 1. Kanabe's Work at Trial was Reasonable and Not Duplicative

IW's objection to the work Kanabe performed at the bench trial in this case is baseless. IW objects to ████████████████ in fees Kanabe billed, which is a greater number of hours and more attorneys' fees than Kanabe even worked in this case. (Compare Ex. 1 at 1 with *id.* at 4 (showing Kanabe billing ████████ in fees).) Notably, IW does not identify any specific entries for Kanabe it finds objectionable, but rather argues that because he was not lead trial counsel his presence at trial was unnecessary and duplicative. HTC bore the burden of proving inequitable conduct at trial. HTC's trial team consisted of only six attorneys: three partners (S. Korniczky, Bader, and Setty), one special counsel (Kanabe), one associate (Mueller), and local counsel (P. Korniczky). In contrast, IW's trial team consisted of four attorneys: Niro, Vickrey, Mahalek, and Gibbons. HTC had the burden of proof at trial, spent nearly twice as much time presenting evidence at trial, and required local counsel. The slight difference in the number of attorneys is justified given the comparative workload at trial. IW does not object to any of Kanabe's specific billing entries in this category, or explain why his work was duplicative or unnecessary and HTC is entitled to recover these fees. (Ex. 2 at 3.)

#### 2. HTC Justifiably Prepared Its Summary Judgment Motion

HTC sought to resolve this case on a motion for summary judgment on inequitable

conduct to avoid the expense of a bench trial. IW defeated HTC's motion for summary judgment by refusing to admit basic and straightforward facts about the false declarations Henderson filed with the PTO and the lack of functionality in prototypes.[3] In particular, IW refused to admit that Henderson did not actually reduce his patents to practice and that his declarations were false. "Henderson obviously knew that he had never constructed or reduced to practice a device capable of transmitting caller information, a picture or an image, and that to state otherwise was false." *Intellect Wireless, Inc. v. HTC Corp.*, 910 F. Supp. 2d 1056, 1072 (N.D. Ill. 2012). The Federal Circuit noted that "[i]t is undisputed that Mr. Henderson's original declaration was unmistakably false." *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1341 (Fed. Cir. 2013).

Yet, IW asserts that ▮▮▮▮ hours spent on issues relating to summary judgment were excessive and duplicative. Notably, IW does not identify any of the specific entries it believes are excessive and duplicative in this category and provides no authority that the hours were inappropriate. Instead, IW argues that HTC's core team of five attorneys (S. Korniczky, Bader, Buccigross, Mueller, and P. Korniczky) did not all need to work on summary judgment and that because HTC lost its summary judgment motion, this work was unnecessary. (Ex. 2 at 3-4.) However, the issues on summary judgment were complex. Indeed, the motion relied on declarations in nearly a dozen patent file histories, the Court granted HTC a larger page limit for briefing the complex issues, and there were 88 exhibits attached to the motion. (Dkts. 133, 165.) Further, IW moved to strike portions of HTC's summary judgment briefing and filed supplemental authority on the summary judgment issue, which necessitated responses from HTC. (Dkts. 166, 169, 172, 174.) Moreover, IW's own billing records indicate that it also used five attorneys on summary judgment briefing (Niro, Vickrey, Mahalek, Gibbons, and Culig).

---

[3] A more complete accounting of the misconduct related to discovery and the summary judgment

(Ex. 4 at 35-45.) IW also spent over ▉ hours on summary judgment issues, despite not having

HTC's burden of filing both opening and reply briefs. (*Id.*) IW's objections regarding the time

HTC spent on summary judgment are hypocritical and the Court should grant HTC its full fees

for time spent on summary judgment issues. *Farfaras*, 433 F.3d at 569.

>    3.    HTC's Other Work was Reasonable and Necessary, Especially Given
>          IW's Willingness to Submit False Information to HTC and the Court

Without explanation, IW concludes that ▉ of the hours HTC spent working on this

case over a period of five years were "excessive and/or duplicative." (Ex. 2 at 4.) IW provides no

indication as to why specific billing entries are "excessive and/or duplicative." Nor does IW

identify the work that was allegedly duplicated or what it believes would be the appropriate

amount of time for each task. For example, IW does not even indicate if an entry is excessive *or*

duplicative for the vast majority of the HTC entries it objects to on those grounds. (Ex. 2 at 4-

62.) Even when indicating the specific objection, IW still does not explain why the entry is

objectionable. For example, IW simply states "(excessive)" for the time HTC's expert, James

Carmichael, spent to prepare for and attend the four-day trial in this case, where he testified

extensively over two days. (Ex. 2 at 68.) Only for a handful of entries does IW actually indicate

why an entry is objectionable, and even then it simply makes conclusory statements. (*See, e.g.,*

Ex. 2 at 7 ("excess because travel time not compensable" and "unnecessary because co-

defendant").) Regardless, these objections apply at most to ▉ hours to which

IW objects. For the rest of the entries, IW provides no explanation as to what makes the specified

time excessive. IW likewise provides no indication of how any of these entries are duplicative, or

what specific work was duplicated. The Court should ignore these objections because they are

vague and lack particularity. *See Hutchison*, 42 F.3d at 1048; *Ohio-Sealy*, 776 F.2d at 664.

---

briefing is recited in HTC's briefing regarding attorneys' fees. (Dkt. 323 at pp. 5-8, 14-15.)

### E. Work IW Describes as "Administrative" was Necessary

HTC worked to reduce its overall fees by utilizing non-attorney staff for various legal tasks, such as helping to prepare and file motions. IW argues that this work was administrative, not legal in nature. Courts have previously awarded fees for "clerical" work by attorneys (at reduced rates), secretaries, and paralegals if done specifically for a case. *See Tomazzoli v. Sheedy*, 804 F.2d 93, 99 (7th Cir. 1986) (awarding attorneys' fees for "clerical tasks"). Moreover, IW's own billing records show that it regularly engaged in the same practices. (*See, e.g.,* Ex. 4 at 7, 14, 16 ("Organizing Defendant's Document Production," "Preparing Documents for Production," "Paralegal services organizing pleadings, preparing docketing information and maintaining pleading books").) IW's objections are baseless, hypocritical and the Court should reject them. *Farfaras*, 433 F.3d at 569.

### F. HTC's Time Entries are Extremely Descriptive and Minimally Redacted

Although IW acknowledges that LR 54.3 (d)(1) allows redaction of information that is protected by the attorney-client privilege or work product doctrine, IW argues that ██████████ ██████████ in fees[4] are "vaguely detailed" and overly redacted. (Ex. 1 at 5.) Once again, IW hypocritically objects to actions that it also performed. IW redacted or altered extensive portions of its billing records. In fact, IW redacted materials by either placing black blocks over the information or whiting out the redacted information, which, against the backdrop of a white page, makes it difficult to determine where redactions took place. (*See, e.g.,* Ex. 4 at 4, 7.) In addition, IW appears actually to have changed the time entries, fees, and descriptions in billing entries in which it performed redactions. (*See, e.g., id.* at 2, 13, 19 ████████████ ██████████) In contrast, HTC has not altered its invoices and reasonably and consistently only

redacted the content of privileged communications, mostly between an attorney and client. The Court should reject IW's hypocritical position. *Farfaras*, 433 F.3d at 569.

Moreover, billing entries must be "detailed enough to allow the opposing party and the court to determine that the time billed accurately reflects the time spent on the case." *Dupuy*, 648 F. Supp. 2d at 1029. The Court should also examine billing entries in the context of other entries to determine whether they are impermissibly vague, rather than in isolation. *Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985). HTC's billing entries are not vague, but rather easily satisfy the requirements for sufficient detail, especially when the Court places those entries in context.

### G.      HTC's Fees are All Related to This Lawsuit

IW's final argument is that work performed was not actually related to this litigation. (Ex. 2 at 132-151.) For example, IW objects to time HTC spent working with defendants in other related lawsuits where the same patents were being asserted. HTC did this to save time, for example, by not duplicating work that others already completed on common issues, such as invalidity. Likewise, HTC's work on the reexamination of the asserted patents also related to this litigation because success in that process would end the litigation. IW objects to the time spent on the reexaminations even though its attorneys billed for working on the same reexaminations. (*See, e.g.,* Ex. 4 at 43█████████████████████████████████

█████████████████████) Finally, without explanation, IW objects to time entries that are explicitly related to this case. (*See, e.g., id.* at 146 (objecting to work related to opposing IW's motion for a one-day trial and third-party subpoenas).) All of these activities are explicitly related to this litigation and HTC is entitled to recover the associated fees.

### H.      HTC's Expenses are Necessary and Justified

---

[4] IW's objection to over█████████in fees is nonsensical in that implies a billing rate over $6,250 per hour.

IW also raises specific objections to ███████████████████ in expenses incurred in this litigation.[5] Contrary to IW's arguments, the expenses HTC seeks in this motion do not include those sought in its Bill of Costs, which the Court has not yet taxed.[6] IW's arguments boil down to three points:  (1) HTC's trial expenses are excessive, (2) HTC's expenses for multiple attorneys attending a few hearings and depositions are excessive, and (3) various other expenses are excessive "on their face." The Court should disregard each of IW's arguments.

First, HTC's trial expenses were necessary and limited to providing support and accommodations for the attorneys and staff that actively participated in the trial. As noted above, HTC utilized six attorneys at trial. HTC also utilized a trial assistant (Limbaugh) who was present in the courtroom for presentation of exhibits and other information to the Court. HTC also utilized two paralegals (Bautista and Erickson). Given the importance of the case, HTC's client representatives (i.e., Wiggins and Lin) also attended the trial to provide strategic guidance and monitor the trial. Finally, HTC's expert (Carmichael) also testified extensively at trial. Each person needed accommodations and food during the course of the proceedings. IW objects to the ████████ in expenses related to trial without identifying why these expenses are allegedly excessive. HTC incurred these expenses for court reporters, transportation to the courtroom, delivery of documents to the courtroom for trial (including copies of all exhibits, which counsel utilized at trial), charges for demonstrative exhibits that HTC displayed throughout trial, and food and lodging for trial team members. (Ex. 3 at 876-78.) IW also objects to another ████████ in trial expenses for meals, lodging, duplication of materials for the Court, and transportation to

---

[5] HTC has reduced its expenses to eliminate the ████████ related to a trip to Beijing, the Shoemake deposition, and the Lambert deposition, which were inadvertently billed to this case.

[6] To the extent that the Court excludes expenses sought in the Bill of Costs, HTC would add those excluded expenses to what it seeks in this motion.

the courtroom. (*Id.* at 880-81.) Unsurprisingly, the members of the trial team would dine together and, rather than ask for separate checks, obtained a single bill resulting in meal expenses that may seem excessive for an individual, but are extremely reasonable on a per person basis. The Court should reject IW's vague objections.

Second, IW objects to ▇▇▇▇▇ in expenses for travel related to depositions and court hearings as excessive because multiple attorneys attended hearings or depositions. Just as IW sent multiple attorneys to important hearings, so did HTC. It was not unreasonable or excessive for two HTC attorneys to travel to and attend hearings or depositions. For example, Bader and S. Korniczky attended the Henderson deposition, which was the most important deposition in the case. Both asked questions at his deposition because of the large number of issues that needed to be covered. Similarly, multiple IW attorneys attended the depositions of Robert Tendler and Alex Chen. (Ex. 4 at 26-28 (RPN entry on 4/1/11, DJM entries on 4/6/11 and 4/15/11, PKV entry on 4/15/11).) IW also sent multiple attorneys to numerous hearings in this case. (*See, e.g., id.* at 18-19 (PCG entry on 12/1/10, DJM entry on 12/9/10); Ex. 6.) Thus, the Court should not reduce HTC's expenses for multiple attorneys participating in key hearings and depositions, just as IW did. *Farfaras*, 433 F.3d at 569.

Finally, IW's various other objections to HTC's expenses are vague and misplaced. IW's unspecified objection to "other expenses for depositions, hearings, and trial" is vague and does not even provide the amount in dispute. As such, the Court should reject that objection. *See Hutchison*, 42 F.3d at 1048; *Ohio-Sealy*, 776 F.2d at 664. Further, any objection to expenses for developing invalidity contentions and processing documents IW requested in discovery are meritless. Just as with IW's other vague objections to HTC's expenses, IW does not specify why these expenses are inappropriate. HTC is entitled to its full requested expenses.

-14-

III. **HTC IS ENTITLED TO PREJUDGMENT AND POST-JUDGMENT INTEREST**

HTC has expended extensive resources over five years on a frivolous case that was premised on fraudulently obtained patents. IW never should have brought this litigation. In order to make HTC whole, the Court should award prejudgment and post-judgment interest for HTC's attorneys' fees.

The Court has authority to award prejudgment interest on attorneys' fees awards under 35 U.S.C. § 285. *Unisplay, S.A. v. Am. Elec. Sign Co., Inc.*, 69 F.3d 512, 517 (Fed. Cir. 1995); *Mathis v. Spears*, 857 F.2d 749, 760-61 (Fed. Cir. 1988). Notably, prejudgment interest is an element of complete compensation, intended to compensate a party for the loss of use of its money. *West Virginia v. United States*, 479 U.S. 305, 310 (1987); *Local Okla. Bank, N.A. v. United States*, 452 F.3d 1371, 1378 (Fed. Cir. 2006); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996). Failing to award prejudgment interest when a case was not brought in good faith results in less than full compensation. *Nilssen v. Gen. Elec. Co.*, No. 06 C 04155, 2011 U.S. Dist. LEXIS 13615, at *42-45 (N.D. Ill. Feb. 11, 2011) (awarding pre and post-judgment interest when the patent was held to be invalid for inequitable conduct). Such interest is presumptively available in this case. *See Fortino v. Quasar Co.*, 950 F.2d 389, 397 (7th Cir. 1991) ("the purpose of prejudgment interest is to make sure that an award of compensatory damages is fully compensatory and that it is a salutary purpose – as a matter of fact we have held that such interest is presumptively available in cases under federal law."); *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Thus, the Court should award interest compounded monthly at the prime rate for all of HTC's fees and expenses.

IV. **CONCLUSION**

For the reasons stated above, the Court should grant HTC's request of ███████ for fees and expenses in this case, which includes HTC's fees spent through September 10, 2014.

Dated:  September 11, 2014          Respectfully submitted,

By:   /s/ Martin R. Bader           
Stephen S. Korniczky
Martin R. Bader
Gray M. Buccigross
Matthew M. Mueller
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, CA  92130
Tel:     (858) 720-8900
Fax:     (858) 509-3691
skorniczky@sheppardmullin.com
mbader@sheppardmullin.com
gbuccigross@sheppardmullin.com
mmueller@sheppardmullin.com

Paul J. Korniczky
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 N. Stetson Avenue
Chicago, IL  60601-6731
Tel:     (312) 616-5600
Fax:     (312) 616-5700
pkorniczky@leydig.com

Attorneys for Defendants and Counter-Claimants
HTC CORPORATION and HTC AMERICA, INC.

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that a true and correct copy of the foregoing document was served through the Court's ECF filing system on attorneys of record in the case.

Date:   September 11, 2014                /s/ Martin R. Bader