**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

INTELLECT WIRELESS, INC.,

         Plaintiff,

       v.

HTC CORPORATION and HTC AMERICA,
INC.,

         Defendants and Counter-Claimants.

Case No. 1:09-cv-02945

Honorable Judge William T. Hart

Magistrate Judge Geraldine Soat Brown

**DEFENDANTS HTC CORPORATION AND HTC AMERICA, INC.'S
REPLY IN SUPPORT OF FEE AND EXPENSE MOTION**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................1

II. IW INAPPROPRIATELY RAISES NEW, UNEXPLAINED, AND DUPLICATIVE
    OBJECTIONS ....................................................................................................2

    A.  IW Failed to Comply With Local Rule 54.3 .............................................2

    B.  IW Has Not Cured Its Duplicative Objections ..........................................2

III. IW'S SPECIFIC OBJECTIONS DO NOT SUPPORT ITS REQUEST TO REDUCE
     THE AMOUNT OF HTC'S REQUESTED FEES AND COSTS ...........................3

    A.  HTC's Attorneys Charged Reasonable Rates for Their Work on This Case ..............3

    B.  HTC's Counsel Did Not Engage In Block Billing, Which Is Permitted, and
        HTC's Time Entries Are Descriptive of the Tasks Performed ...................5

    C.  HTC's Work Throughout the Case was Reasonable and Not Duplicative .................7

        1.  Kanabe's Work at Trial was Reasonable and Not Duplicative ......................7

        2.  HTC Justifiably Prepared Its Summary Judgment Motion ............................7

        3.  HTC's Other Work was Reasonable and Necessary, Especially Given
            IW's Willingness to Advocate False Information to HTC and the
            Court..........................................................................................................9

    D.  Work IW Describes as "Administrative" was Necessary .........................10

    E.  HTC's Time Entries are Extremely Descriptive and Minimally Redacted...............10

    F.  HTC's Fees are All Related to This Lawsuit ...........................................12

    G.  HTC's Expenses are Necessary and Justified .........................................13

    H.  Fees from August 26, 2014 Forward.......................................................14

IV. CONCLUSION ................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Berberena v. Coler*
   753 F.2d 629 (7th Cir. 1985)......................................................................................... 11, 12

*Buckhorn Inc. v. Orbis Corp.*
   No. 3:08-cv-459, 2014 U.S. Dist. LEXIS 94459 (S.D. Ohio July 11, 2014)......................... 15

*Cent. Soya Co. v. Geo. A. Hamel & Co.*
   723 F.2d 1573 (Fed. Cir. 1983)............................................................................................ 15

*Cuff v. Trans States Holdings, Inc.*
   No. 10 C 1349, 2013 WL 140607 (N.D. Ill. Jan. 11, 2013), *aff'd*, 13-1241, 2014 WL
   4653010 (7th Cir. Sept. 19, 2014)............................................................................... 6, 7, 13

*Dupuy v. McEwen*
   648 F. Supp. 2d 1007 (N.D. Ill. 2009) ............................................................................ 9, 11

*Farfaras v. Citizens Bank & Trust of Chicago*
   433 F.3d 558 (7th Cir. 2006)...................................................................................... 5, 7, 13

*Firestine v. Parkview Health Sys., Inc.*
   374 F. Supp. 2d 658 (N.D. Ind. 2005).................................................................................. 10

*Golden v. Nadler, Pritikin & Mirabelli, LLC*
   No. 05 C 0283, 2008 WL 341374 (N.D. Ill. Feb. 1, 2008) ................................................... 12

*Hickory Farms, Inc. v. Snackmasters, Inc.*
   No. 05 C 4541, 2008 U.S. Dist. LEXIS 67762 (N.D. Ill. Apr. 2, 2008) ................................... 6

*Hutchison v. Amateur Elec. Supply, Inc.*
   42 F.3d 1037 (7th Cir. 1994)..................................................................................... 9, 14

*Intellect Wireless, Inc. v. HTC Corp.*
   732 F.3d 1339 (Fed. Cir. 2013)............................................................................................. 8

*Intellect Wireless, Inc. v. HTC Corp.*
   910 F. Supp. 2d 1056 (N.D. Ill. 2012) ................................................................................... 8

*Johnson v. GDF, Inc.*
   668 F.3d 927 (7th Cir. 2012)................................................................................................ 3

*King v. State Bd. of Elections*
   No 95 C 827, 2003 WL 22019357 (N.D. Ill. Aug. 26, 2003) ................................................ 12

*Lane v. Piper Jaffray Cos.*
   No. 01-C-925, 2005 WL 1229388 (E.D. Wis. May 24, 2005)............................................... 10

*Microstrategy Inc. v. Crystal Decisions, Inc.*
  586 F. Supp. 2d 256 (D. Del. 2008) ................................................................. 15

*Mostly Memories Inc. v. For Your Ease Only, Inc.*
  594 F. Supp. 2d 931 (N.D. Ill. 2009) ................................................................. 5

*Muzikowski v. Paramount Pictures Corp.*
  477 F.3d 899 (7th Cir. 2007) ............................................................................ 4

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*
  776 F.2d 646 (7th Cir. 1985) ...................................................................... 9, 14

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*
  90 F.3d 1307 (7th Cir. 1996) ............................................................................ 3

*Pickett v. Sheridan Health Care Ctr.*
  664 F.3d 632 (7th Cir. 2011) ............................................................................ 4

*Spegon v. Catholic Bishop of Chicago*
  175 F.3d 544 (7th Cir. 1999) .......................................................................... 10

*In re Synthroid Mktg. Litig.*
  264 F.3d 712 (7th Cir. 2001) ............................................................................ 5

Other Authorities

Local Rule 54.3 ...................................................................................... passim

## I.    **INTRODUCTION**

HTC Corporation and HTC America, Inc. (collectively, "HTC") seek their reasonable fees for defending against Intellect Wireless, Inc.'s ("IW") frivolous lawsuit based on fraudulently obtained patents. IW now asks the Court to ignore its own conduct and instead vaguely objects to HTC's billing entries such that nobody – not the Court, not HTC – can determine how IW reaches its ultimate conclusion that nearly 51% of the $4,800,720.87 in fees and costs that HTC incurred are allegedly unreasonable.[1] For example, IW objects to approximately $40,328 in fees for alleged block billing, but points the Court to only three examples. These three examples (which presumably were the best IW could come up with) do not support IW's objections. More importantly, after providing only three examples, IW then concludes that over 68.25 ***other unidentified*** hours of attorney time are also block billed. IW fails to support its conclusion and does not explain to the Court or HTC how it arrived at 81.5 total objected to hours. IW fails to inform the Court or HTC how it arrived at the 81.5 hours despite the fact that HTC specifically raised the issue in its opening brief.

The approach IW takes in its opposition brief is contrary to the purpose and express language of Local Rule ("LR") 54.3, which requires the party objecting to any fees to specifically identify them in the Joint Statement. Instead of complying with the Local Rules, IW vaguely objects to as many fees and costs as possible in hope of a reduced reward, leaving the Court and HTC no way to determine the time entries that are still in dispute. IW also raises new objections to HTC's fee and expense request that are not included in the parties' Joint Statement. IW's new objections are inappropriate and only serve to multiply the dispute over fees, which has already suffered from IW's previous failures to comply with the express language of LR

---

[1] IW admits that HTC is entitled to at least $2,357,682.36 in fees and expenses.

54.3. As HTC's invoices demonstrate, its fees are reasonable and directly related to defending HTC against IW's frivolous lawsuit, which IW never should have brought in the first place.

## II.   IW INAPPROPRIATELY RAISES NEW, UNEXPLAINED, AND DUPLICATIVE OBJECTIONS

### A.   IW Failed to Comply With Local Rule 54.3

IW failed to comply with LR 54.3 by refusing to identify all of its objections to HTC's request for fees and expenses in the Joint Statement:  "the respondent shall include a similar table giving respondent's position as to the name, compensable hours, appropriate rates, and totals for each biller listed by movant."  LR 54.3(e)(2).  It is undisputed that IW never provided HTC with this information.  Instead, IW only identified overlapping categories of objections without any indication of the fees for each biller that were not objectionable.  (Ex. 1.)

Moreover, the parties' arguments are limited in their briefs to only issues actually raised in the Joint Statement.  *See* LR 54.3(f) ("the motion and any supporting or opposing memoranda shall limit their argument and supporting evidentiary matter to disputed issues.")  However, as addressed in detail below, IW has raised new objections related to billing rates for HTC's attorneys and HTC's expenses that were not included in the Joint Statement.  (*See* Ex. 1.) Finally, in certain circumstances, IW also increases the number of hours that it objects to as compared to the number of hours it identified in the Joint Statement.  The Court should reject IW's new arguments not found in the Joint Statement and award HTC its full request for fees and expenses.

### B.   IW Has Not Cured Its Duplicative Objections

In attempting to explain and justify its duplicative objections, IW summarily tells the Court that it has eliminated its duplicative objections in its opposition brief.  (Opp. at 4-5.)  Yet, IW does not explain its methodology or identify the billing entries it allegedly eliminated from

each category. This is a straightforward process and the only explanation is that IW has intentionally obfuscated its objections so that neither the Court nor HTC can determine what time entries are still at issue. Indeed, the only reference to any specific billing entries is a series of examples, which are a tiny fraction of the total objected to time entries. (Opp. Exs. 4, 6, 9, 11, 13, 15.) Thus, the Court should ignore any objection to time entries other than those identified in the specific examples in IW's brief.

## III.   IW'S SPECIFIC OBJECTIONS DO NOT SUPPORT ITS REQUEST TO REDUCE THE AMOUNT OF HTC'S REQUESTED FEES AND COSTS

### A.   HTC's Attorneys Charged Reasonable Rates for Their Work on This Case

IW's ever shifting objection to HTC's billing rates renders LR 54.3 useless and is an ambush on HTC's reasonable request for attorneys' fees. LR 54.3(f) requires a fee motion to be limited to the disputed issues raised in the Joint Statement:

> FEE MOTION. The movant shall attach the joint statement to the fee motion. Unless otherwise allowed by the court, the motion and any supporting or opposing memoranda shall limit their argument and supporting evidentiary matter to disputed issues.

The rates IW proposed in the Joint Statement are entirely different from the hourly rates IW now proposes. (Ex. 1 at 4.) Moreover, the Joint Statement does not contain information on IW's proposed rates for each of HTC's attorneys, as LR 54.3(e)(2) requires:

> … the respondent shall include a similar table giving respondent's position as to the name, compensable hours, appropriate rates, and totals for each biller listed by movant.

As such, the Court should reject IW's newly proposed lower hourly rates.

If the Court even considers IW's belated hourly rate objection, "[t]he best evidence of an attorney's market rate is his or her actual billing rate for similar work." *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012). This rate is "presumptively appropriate to use as the market rate." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th

Cir. 1996) (internal quotation marks omitted).  This rule is "well established." *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 909 (7th Cir. 2007).  Once the fee applicant establishes that the requested rate is reasonable, "the burden shifts to the other party to offer evidence that sets forth a good reason why a lower rate is essential." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (internal quotation marks omitted).  Here, the rates HTC seeks are the actual billing rates for HTC's attorneys, making them presumptively the market rate.

IW's currently proposed rates are significantly less than the rates IW previously proposed in this case.  IW proposed vastly different rates in the Joint Statement, which demonstrated the reasonableness of HTC's attorneys' hourly rates:

| **Attorney** | **HTC's Actual Rates (per hour)** | **IW Joint Statement Rates (per hour)** | **IW Opposition Rates (per hour)** |
|---|---|---|---|
| Martin Bader (partner with 12 years of experience) | $539.94 | $525-600 | $497 |
| Nick Setty (partner with 22 years of experience) | $772.14 | $601-839[2] | $497 |
| Stephen Korniczky (partner with 27 years of experience) | $737.55 | $840 | $497 |

(Ex. 1 at 4; Opp. Ex. 2.)  As demonstrated above, the actual rates partners who worked on the case and attended trial charged are approximately the same as the rates IW proposed in the Joint Statement.

Now, IW relies on the AIPLA survey, which is critically flawed.  First, the survey is not limited to patent litigators or even litigation attorneys, but collects information from a variety of

different types of practitioners, including corporate IP attorneys, patent prosecution attorneys, trademark attorneys, and copyright attorneys. (Ex. 7 at I-29, I-42 (showing that IP litigation makes up just 21% of the time spent for the partners and associates surveyed); I-31, I-44 (showing that 23 of 35 partners and 17 of 22 associates surveyed in Chicago perform patent prosecution work).) IW does not even attempt to draw a correlation between the general IP rates it cites and the rates for patent litigation attorneys. Thus, IW fails to demonstrate that the *market rate for patent litigation* is lower than the rates HTC's attorneys charged. IW has not met its burden of disproving the reasonable market rate that HTC seeks for its attorneys.

IW's new, lower proposed hourly rates for HTC's attorneys fail to comply with LR 54.3 and are unsupported by the AIPLA survey. HTC has demonstrated that its attorneys' hourly rates are what were actually billed in the market. Thus, the Court should accept HTC's attorneys' hourly rates.

### B. HTC's Counsel Did Not Engage In Block Billing, Which Is Permitted, and HTC's Time Entries Are Descriptive of the Tasks Performed

IW acknowledges that block billing is *permitted* and that HTC's billing entries cannot be objected to unless they are so vague as to prevent the Court from determining whether the time was billed for work on this case. (Opp. at 5.) This is not a high burden for HTC to meet. HTC accepted and paid the bills, which the Seventh Circuit endorses as evidence of sufficient detail. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *Mostly Memories Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 936 (N.D. Ill. 2009). Further, IW engaged in similar billing practices, such that it would be hypocritical to allow IW to object to HTC's billing. *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006) (LR 54.3's

---

[2] IW does not explicitly state a reasonable fee in the Joint Statement for a partner with 16-25 years of experience. This range represents the gap between IW's explicitly stated rates.

"purpose is to avoid exactly the type of hypocritical objections presented by [IW]. Although [IW] object[s] to the use of block billing and 'vague' descriptions by [HTC's] counsel, [IW]'s counsel used similarly vague descriptions and block billing."); *Cuff v. Trans States Holdings, Inc.*, No. 10 C 1349, 2013 WL 140607, at *2 (N.D. Ill. Jan. 11, 2013), *aff'd*, 13-1241, 2014 WL 4653010 (7th Cir. Sept. 19, 2014).

Moreover, rather than specifically identifying all of the allegedly objectionable "block billed" entries, IW offers the Court only three examples that are presumably the worst of HTC's entries. (Opp. at 5.) In Example #1, S. Korniczky describes his preparation for and participation in a Joint Defense teleconference, including the topics discussed. (Opp. Ex. 4.) Clearly, this entry was for work for a single task on this case and counsel should not be forced to track and divide time, as IW urges, based on how long each topic was discussed on the call. *Hickory Farms, Inc. v. Snackmasters, Inc.*, No. 05 C 4541, 2008 U.S. Dist. LEXIS 67762, at *21 (N.D. Ill. Apr. 2, 2008) (attorneys are not required to break down "individual, but related tasks, into single billing entries."). Example #2 is P. Korniczky's first billing entry in this case, in which he describes getting up to speed on the case prior to filing a motion notifying the Court of S. Korniczky and Bader's move to Sheppard Mullin. In Example #3, Mueller describes his work preparing evidence, exhibits, and arguments for trial, which is all related to the single task of preparing for trial in this case. There is nothing vague or confusing about any of these descriptions, they all relate specifically to work done on this litigation, and IW cannot explain why the work performed in any of these entries should not be compensable. Finally, IW fails to identify for the Court or HTC the additional 81.5 hours that are apparently still in dispute. The Court should reject IW's objections because HTC did not block bill, IW's objections are not specific, HTC actually paid the invoices, and IW engaged in the same billing practices.

## C. HTC's Work Throughout the Case was Reasonable and Not Duplicative

### 1. Kanabe's Work at Trial was Reasonable and Not Duplicative

IW attacks HTC's fees by citing to general legal principles that have nothing to do with HTC's work. Here, unlike in *Jardien* and *Hensley* cited by IW, as HTC's invoices demonstrate, all of the time for which HTC seeks reimbursement was actually billed to HTC. IW does not identify any specific entries for Kanabe it finds objectionable, but rather argues that because he did not examine any witnesses, his presence at trial was unnecessary and duplicative. IW ignores that its own attorneys, Mahalek and Gibbons, likewise were part of its trial team and participated in trial activities without presenting arguments or examining witnesses. IW's belated attempt to justify its objection to Kanabe's hard work and long days (and nights) during trial is hypocritical when compared to IW's own practices. *See Farfaras*, 433 F.3d at 569; *Cuff*, 2013 WL 140607, at *2. The Court should deny IW's objection.

### 2. HTC Justifiably Prepared Its Summary Judgment Motion

As evidence of IW's complete disregard for the LR 54.3, IW now objects to 548.1 hours HTC spent on summary judgment briefing, which is nearly *a one-third increase* over the 414.5 hours IW objected to in the Joint Statement. (*Compare* Opp. at 8 *with* Ex. 1 at 4.) IW fails to provide any information on why it *increased* the objected to hours from 414.5 to 548.1 and fails to identify the time entries that are in dispute.

HTC sought to resolve this case on a motion for summary judgment on inequitable conduct to avoid the expense of a bench trial. IW defeated HTC's motion with statements IW and Niro knew were completely and unambiguously false. (Dkt. 160 at p. 11.) For example, in IW and Niro's response to HTC's Statement of Facts, IW disputed many of HTC's statements of fact with information it knew to be false: "Further disputed as Mr. Henderson's functional *prototype could receive and display* a message and *caller ID information* ...." (Dkt. 161,

Response to HTC's Facts at ¶¶ 20, 21, 24, 29 (emphasis added).)  Yet, Henderson had already

explicitly informed its counsel, in writing, that the prototype could not receive caller ID.  (Ex. 8.)

IW and Niro also disputed HTC's statement of fact that Henderson's prototype was not an actual

reduction to practice of Henderson's patents:  "Disputed to the extent that HTC infers that the

functional prototype was not a reduction to practice of the Henderson patents that did not require

the receipt and display of a picture."  (*Id.*, Response to HTC's Facts at ¶ 23.)  However,

"Henderson obviously knew that he had never constructed or reduced to practice a device

capable of transmitting caller information, a picture or an image, and that to state otherwise was

false."  *Intellect Wireless, Inc. v. HTC Corp.*, 910 F. Supp. 2d 1056, 1072 (N.D. Ill. 2012).

Moreover, the Federal Circuit noted that "[i]t is undisputed that Mr. Henderson's original

declaration was unmistakably false."  *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1341

(Fed. Cir. 2013).

     In addition to IW and Niro's outright lies to defeat summary judgment, the summary

judgment briefing in this case was very complex.  The motion relied on declarations that

Henderson filed in nearly a dozen patent file histories, the Court granted HTC a larger page limit

for briefing the complex issues, and there were 88 exhibits attached to the motion.  (Dkts. 133,

165.)  Further, IW moved to strike portions of HTC's summary judgment briefing and filed

supplemental authority, which necessitated responses from HTC. (Dkts. 166, 169, 172, 174.)

Finally, the motion for summary judgment thoroughly and efficiently focused the evidence and

issues for the Court.  Indeed, after the motion was briefed, the Court denied it but, recognizing

the issue was potentially case dispositive, bifurcated the case for a bench trial on inequitable

conduct.  This saved all of the parties a significant amount of fees that otherwise would have

been spent preparing for a trial on invalidity, non-infringement, and damages.

3.      HTC's Other Work was Reasonable and Necessary, Especially Given
        IW's Willingness to Advocate False Information to HTC and the Court

IW objects to over 2,000 hours in time HTC spent in this case as "duplicative and excessive" with little to no explanation for its conclusion. IW's only explanation (which was absent from the Joint Statement) is that "as HTC's time entries show, it was the circumstances … that made the objected-to time entries duplicative and excessive." (Opp. at 9.) IW does not identify the work that was allegedly duplicated or what it believes would be the appropriate amount of time for each task, but instead applies a blanket 50% cut in the work HTC performed. The Court should ignore such vague objections. *See  Hutchison v. Amateur Elec. Supply, Inc.*, 42 F.3d 1037, 1048 (7th Cir. 1994) (party challenging fees has a "responsibility to state objections with particularity and clarity"); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir. 1985). In the only example IW provides the Court, it argues that spending 100 hours preparing for the deposition of the most important witness in this case, Daniel Henderson (the CEO of IW, inventor of the patents-in-suit, and person who repeatedly lied under oath to the PTO), was excessive. The preparation for this critical deposition included, for example, reviewing and analyzing over eight bankers boxes of documents. (Ex. 9.) Spending 100 hours preparing for such a critical deposition in a case where potential damages are in the tens of millions of dollars is certainly not excessive. This one example (which presumably is the best IW could come up with) does not support IW's objections. *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1020 (N.D. Ill. 2009) (noting that it is reasonable for one attorney to take the lead on the project while multiple attorneys edit and provide other support). More importantly, IW then concludes that over 2,354.65 ***other unidentified*** hours of attorney time fall into this category. Finally, IW fails to identify the 2,463.9 hours that are apparently still in dispute. The Court should reject IW's objections.

### D.        Work IW Describes as "Administrative" was Necessary

HTC is not seeking fees for administrative work, but for work that was necessary to the case, including communicating to the client about the status of the litigation and upcoming events.  This is not a case, like those IW cited, in which HTC knew it would automatically receive its attorneys' fees if it prevailed and had no reason to scrutinize invoices.  *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (FLSA case requiring fees to a prevailing plaintiff); *Firestine v. Parkview Health Sys., Inc.*, 374 F. Supp. 2d 658, 661-62 (N.D. Ind. 2005) (Title VII Civil Rights case requiring same); *Lane v. Piper Jaffray Cos.*, No. 01-C-925, 2005 WL 1229388, at *1 (E.D. Wis. May 24, 2005) (42 U.S.C. § 2000e case allowing fees to a prevailing plaintiff).  Nor is it a case in which the fees requested greatly exceed the damages request in the case.  *See Spegon*, 175 F.3d at 548 (noting attorneys' fees seven times the amount of damages).  Rather, HTC incurred and paid these fees in defense of IW's frivolous action with no expectation that HTC would ever be repaid.  Finally, IW fails to identify the 773.25 hours that are apparently still in dispute.  HTC's work on this case was not administrative and IW has not demonstrated otherwise.  The Court should award HTC its full request for fees.

### E.        HTC's Time Entries are Extremely Descriptive and Minimally Redacted

As a further example of IW's absolute disregard for the LR 54.3, IW now objects to 626.35 hours as allegedly being "vague."  (Opp. at 10-11.)  This is an astonishing ***960% increase*** over the time IW objected to in the Joint Statement; amounting to an ***additional 561.25 hours*** to which IW objects.  (*Compare* Opp. at 10-11 *with* Ex. 1 at 5.)  IW once again fails to provide ***any*** information on its reasoning for increasing the objected to hours from 65.1 to 626.35 and which entries are in dispute.

HTC's billing entries adequately describe the activities HTC's attorneys performed throughout the case, especially when placed in the context of other billing entries.  *See*

*Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985) (requiring billing entries to be read in context of other entries). Billing entries only need to be "detailed enough to allow the opposing party and the court to determine that the time billed accurately reflects the time spent on the case." *Dupuy*, 648 F. Supp. 2d at 1029. Moreover, LR 54.3(d)(1) specifically allows redaction of information that the attorney–client privilege or work-product doctrine protects. These privileges protect communications between attorneys and clients, experts, or members of a joint defense group. Such redactions do not provide a valid basis for objection.

IW provides only three specific examples of HTC's allegedly most "vague" billing entries that do not contain redactions. (The other 11 examples all contain privileged information and were thus redacted by HTC.[3]) These three examples, however, do not support a reduction in fees, especially when taken in context. In Example #5, IW objects to Buccigross spending 15 minutes described as: "Strategized regarding upcoming tasks (.25)." (Opp. Ex. 11.) However, IW takes this one sentence out of the context of the entire entry. Remarkably, in a case where the need for candor to the Court could not be more apparent, IW attempts to mislead the Court by only providing partial billing entries in making its objections, leaving out the remaining description of activities. In reality, the full billing entry in HTC's exhibit states:

> Reviewed and analyzed files of prosecuting attorney Robert K. Tendler, and produced by Intellect, for purposes of preparing for depositions, preparing motion for summary judgment of inequitable conduct, and generally defending case (5.25). **Strategized regarding upcoming tasks (.25).** Provided M. Mueller with direction regarding upcoming tasks relating to discovery and non-infringement analysis (.5). Analyzed issues relating to Intellect's production of prosecuting attorney's files with M. Mueller (.25).

---

[3] Absent the redactions, the time entries are certainly not vague as IW argues. If the Court has any concerns about the redacted time entries, HTC is willing to submit unredacted versions for *in camera* review.

(Ex. 3 at 352 (emphasis added to portion taken out of context by IW).)  In the context of the full entry, spending 15 minutes to discuss strategy during the peak of discovery is not unreasonable or vague. [4]  *King v. State Bd. of Elections*, No 95 C 827, 2003 WL 22019357, at *5 (N.D. Ill. Aug. 26, 2003) (hours "spent discussing strategy with co-counsel about [a] case are not unreasonable or excessive.").  In Example #13, P. Korniczky spent 12 minutes on HTC's Second Amended Answer, which was filed that day.  (Dkt. 153.)  Similarly, in Example #14, P. Korniczky spent 12 minutes analyzing the Court's orders dismissing AT&T from the litigation. (Dkts. 157, 158.)  All of these small, discreet tasks to stay abreast of the current status in a major litigation are reasonable and necessary, especially when examined in context.  *Golden v. Nadler, Pritikin & Mirabelli, LLC*, No. 05 C 0283, 2008 WL 341374, at *4 (N.D. Ill. Feb. 1, 2008) (time billed to "conscientious monitoring" of the progress of the overall case is not excessive or duplicative).

### F.    HTC's Fees are All Related to This Lawsuit

As HTC explained in its opening briefing, HTC's fees in its invoices are all related to this litigation.  Unlike in *Jardien* cited by IW, all of the time HTC seeks reimbursement for was actually billed to HTC.

Moreover, IW's objection to HTC's monitoring of claim construction in a related IW case involving the same patents misses the mark.  HTC ***saved time*** by following the claim construction and other issues before Judge Holderman, particularly since IW would go on to mislead the Court that the events in the case pending before Judge Holderman were directly relevant to this litigation.  (*See, e.g.*, Dkt. 106 at 5 (IW arguing that Judge Holderman's decision

---

[4] Another example of IW taking time entries out of context is Example #8, which lists only two of the nine sentences in the full billing entry.  (*Compare* Opp. Ex. 11 *with* Ex. 3 at 435.)  But, objecting to only pieces of an entry fails to consider the time in the context of the full entry. *Berberena*, 753 F.2d at 634.

on inequitable conduct based on withholding prior art was relevant to HTC's allegations of inequitable conduct based on false declarations); Dkt. 160 at 3-4 (IW opposing HTC's motion for summary judgment based on Judge Holderman's decision on inequitable conduct based on withholding prior art).) Similarly, IW hypocritically argues that work related to reexamination before the PTO is unrelated to this case. However, IW's billing entries reveal similar reexamination work performed as part of this litigation. (Ex. 4 at 42-44.) Moreover, IW attempted to use PTO proceedings to influence improperly the Court's decision on inequitable conduct. (Dkts. 172-175.) The Court should reject IW's hypocritical arguments. *Farfaras*, 433 F.3d at 569; *Cuff*, 2013 WL 140607, at *2.

Finally, IW fails to identify the 428.8 hours that are apparently still in dispute. All of HTC's activities relate explicitly to this litigation and HTC is entitled to recover the associated fees for its work on this case.

### G. HTC's Expenses are Necessary and Justified

IW's objections to HTC's expenses further demonstrate IW and Niro's concerted efforts to ignore the facts in their possession and circumvent the Local Rules. Despite HTC explicitly stating that its current request for expenses does ***not*** include any costs sought in its Bill of Costs (Dkt. 330 at 17), IW wrongly argues that HTC has failed to identify which costs are unique to its current motion. (Opp. at 12.) Quite simply, there is no overlap.

Similarly, IW trumpets objections to expenses that HTC is not seeking. HTC explicitly stated in its opening brief that it is not seeking expenses for Setty's Beijing trip, the Shoemake deposition, and the Lambert deposition. (Dkt. 330 at 17 n.5.) Yet, IW lists all of these expenses as "examples" of the "myriad of unreasonable expenses" for which HTC is seeking reimbursement. (Opp. Ex. 15 at #1, 5, 27-30.) HTC is not seeking reimbursement for any of these expenses and could not have made that more clear to IW and the Court. Likewise, HTC

withdraws its request for reimbursement for the $755.57 meal and drinks on June 8, 2012, identified at Example #15 and HTC's request for fees and costs has taken this reduction into account. To make matters worse, IW does not identify all of the expenses to which it is objecting, but only gives "examples" such that HTC and the Court have no way of determining whether any of the other objections are similarly meritless. The Court should not reduce HTC's expenses.

LR 54.3(e) required IW to identify in the Joint Statement the specific expense entries in dispute, so the parties could reduce the issues for the Court to determine. As such, IW is limited to the specific objections it raised in the Joint Statement. LR 54.3(f). IW once again fails to provide ***any*** information on its methodology for a ***three-fold increase*** in the objected to expenses from $56,926.78 to $146,642.51. (*Compare* Ex. 1 at 4-5; Dkt. 330 at 17 *with* Opp. at 13.) Further, IW has still not identified all of the expense entries to which it is now objecting, so HTC has no way of addressing them. Instead, IW provides examples of 30 expense entries totaling $45,201.45 (of which six entries and $5,144.66 HTC previously withdrew) and then argues that over $100,000 in additional, unidentified expenses are objectionable. The Court should reject such vague and unexplained objections. *See Hutchison*, 42 F.3d at 1048; *Ohio-Sealy*, 776 F.2d at 664.

## H. Fees from August 26, 2014 Forward

IW's final objection is to the fees from August 26, 2014 forward. HTC expressly requested fees through the end of the case in the Joint Statement:

> HTC seeks fees and expenses totaling $4,615,609.97 plus the fees and expenses incurred for its compliance with the Local Rules regarding fees, including its fees and expenses motion and this joint motion, and fees for briefing the issue of attorneys' fees against the Niro law firm and its attorneys.

(Ex. 1 at 1.)  Despite this clear statement, IW now claims that it was unaware HTC would seek additional fees until HTC brought its motion.  (Opp. at 13.)  Once again, IW and Niro's ability to ignore the facts contained in a document that IW, Niro, and their attorneys reviewed, negotiated, and edited is exasperating.  Courts have consistently awarded attorneys' fees for time spent through obtainment of the attorneys' fees award.  *Cent. Soya Co. v. Geo. A. Hamel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *see also Buckhorn Inc. v. Orbis Corp.*, No. 3:08-cv-459, 2014 U.S. Dist. LEXIS 94459, at *4 (S.D. Ohio July 11, 2014); *Microstrategy Inc. v. Crystal Decisions, Inc.*, 586 F. Supp. 2d 256, 262 (D. Del. 2008).  HTC submitted its billing records in its opening brief for the time during which it was complying with the Local Rules and briefing the attorneys' fees motion at issue.  (Ex. 5.)  IW has not objected to any of HTC's more recent fees on the merits and the Court should follow the lead of a majority of courts and grant HTC its fees.

## IV.  <u>CONCLUSION</u>

For the reasons stated above, the Court should grant HTC's request of $4,800,702.87 for fees and expenses in this case.

Dated:  November 3, 2014          Respectfully submitted,

By:  /s/ Martin R. Bader
    Stephen S. Korniczky
    Martin R. Bader
    Gray M. Buccigross
    Matthew M. Mueller
    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    12275 El Camino Real, Suite 200
    San Diego, CA  92130
    Tel:     (858) 720-8900
    Fax:    (858) 509-3691
    skorniczky@sheppardmullin.com
    mbader@sheppardmullin.com
    gbuccigross@sheppardmullin.com
    mmueller@sheppardmullin.com

    Paul J. Korniczky
    LEYDIG, VOIT & MAYER, LTD.
    Two Prudential Plaza, Suite 4900
    180 N. Stetson Avenue
    Chicago, IL  60601-6731
    Tel:     (312) 616-5600
    Fax:    (312) 616-5700
    pkorniczky@leydig.com

    Attorneys for Defendants and Counter-Claimants
    HTC CORPORATION and HTC AMERICA, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served through the Court's ECF filing system on attorneys of record in the case.

Date:   November 3, 2014                    /s/ Martin R. Bader