IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTELLECT WIRELESS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 2945 |
| | ) | |
| HTC CORPORATION and HTC | ) | |
| AMERICA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

# OPINION AND ORDER

This case is before the court after trial to determine whether defendants HTC Corporation and HTC America, Inc. ("HTC") are entitled to recover attorney fees and costs from plaintiff's attorneys Raymond Niro, Paul Vickrey, Paul Gibbons, and David Mahalek ( hereinafter "Niro"), as well as from plaintiff Intellect Wireless, Inc. ("IW").  IW has withdrawn its initial opposition and conceded that this case is exceptional within the meaning of the Patent Act's fee-shifting provision which authorizes the award of attorney fees and costs to prevailing parties in exceptional cases.  35 U.S.C. § 285.  IW does continue to dispute the amount of fees that should be awarded.  HTC contends that a finding should also be made that the attorneys for IW are jointly and personally required

to satisfy HTC's attorney fees and costs because IW's attorneys unreasonably and

vexatiously multiplied the proceedings within the meaning of 28 U.S.C. § 1927;

because their litigation conduct was in violation of Fed. R. Civ. P. 11; and/or

based on the court's inherent power to punish litigation misconduct.

The Niro attorneys have filed declarations stating that they were never

informed of false declarations the inventor made to the United States Patent and

Trademark Office ("PTO") in February 2007, and they have stated that they are

not guilty of any misrepresentations in this litigation.  HTC and the Niro attorneys

agree that the issue of the attorneys' liability can be decided on the papers that

have been presented.

## I.  Attorney Liability

The key issue that must be determined is what and when did IW's

attorneys in the infringement litigation know about the inventor's multiple false

statements to the PTO and any false statements in litigation in this court

concerning the patents.[1]  This determination first requires a review of the facts

---

[1]The inventor, Daniel Henderson, was represented before the PTO by
Robert K. Tendler.  Tendler has been suspended by the PTO for four years based
on his conduct in this matter.  *See* PTO Official Gazette, Vol. 1399, No. 1,
2014 WL 412342 (Feb. 4, 2014) (the full decision for ***In re Tendler***,
No. D2013-17 (Director, PTO Jan. 8, 2014) can be found at
http://e-foia.uspto.gov/Foia/RetrievePdf?system=OED&flNm=0755_DIS_2014-0

which led to a declaration that the patents-in-suit were unenforceable due to inequitable conduct before the PTO. *See **Intellect Wireless, Inc. v. HTC Corp.**,* 910 F. Supp. 2d 1056 (N.D. Ill. 2012), *affirmed*, 732 F.3d 1339 (Fed. Cir. 2013). In summary, it was held that patents disclosing technology enabling wireless devices to receive and display caller identification, video messages, and caller pictures were unenforceable because false statements were made to the PTO. The statements related to invention, demonstration, and actual reduction to practice in order to overcome prior art references cited by the patent examiner. Also, false statements were made in order to claim diligence from an alleged date of invention to the date of filing a patent application.

Subsequent to the affirmance of the judgment finding the patents-in-suit unenforceable, HTC sought discovery from the attorney who represented the inventor before the PTO. This discovery establishes that, in February 2007, the inventor clearly knew his statements to the PTO were false. HTC argues that Niro also knew the statements were false.

---

1-08 (visited Dec. 30, 2014)).

A post-trial discovery request produced an email message from Daniel Henderson, the inventor, to Robert Tendler, the attorney then representing him before the PTO, dated February 10, 2007, and stating in part:

> I want to address what I perceive is a potentially lethal blow to the integrity and validity of my patent portfolio from the incorrect declaration faxed to the PTO on Friday. I was asked to read a patent that before Friday I had never seen, and give a thumbnail analysis about it within an hour, which I did. I also found support for a prior invention date by me, which I also did. I followed your instruction and signed the declaration prepared by you in haste without reviewing it, as you felt speed was of the essence. And now it seems that we may be confronted with a very difficult situation as a result.
>
> I am quite upset about the money and time that I have spent to arrive at this point without any clear indication that there will EVER be any other patents allowed. The damage generated by the factually inaccurate declaration I signed is potentially devastating in the event that any patents do issue. I am quite certain that 1 will be deposed ad infinitum about the declaration during litigation and I do not see any way around this.
>
> My concern is that the incorrect declaration will create a weak flank for attack by even marginally-competent litigation counsel on the other side. Since the PTO has already received the incorrect declaration signed by me, we cannot uncrack the egg.
>
> To suggest to the PTO that they disregard a fax received would be worse than the fact that they received it at all. However, we cannot let this go unaddressed. It will come out in litigation that the intellect device shown to Hashimoto in

July 1993 HAD NO WAY of displaying a picture on a two line alphanumeric display, contrary to my recent inaccurate declaration. This of course will cause problems in the file wrapper with two contradictory statements by me and will subject me to intense questioning during deposition and impact my credibility as a witness.

The questions will go like this:

"Do you know of your duty of candor and good faith with the PTO?"

"Do you read documents before you sign them?"

"Are you a careless person when it comes to stating important facts?"

"How do we know that you have not been careless with other factual statements made to the PTO during prosecution?"

"What did you really invent that you showed to Hashimoto?"

"The intellect device shown to Hashimoto and now in the Smithsonian wasn't capable of showing a picture, was it, despite what you swore under penalty of perjury in your 131 affidavit. . . ."
etc. etc. etc.

I have lived through many of these depositions, and my concerns are tempered by the experience of such hostile scrutiny. These are not imaginary issues. The improper declaration and allegations of fraud on the patent office will now be the easiest way to invalidate the entire patent portfolio ana impeach my credibility as a witness. I fully expect that it will also introduce serious concerns for my litigation counsel,

given the potential invalidity arguments that will be posed by
the other side.

* * *

Please contact Examiner Anwah Monday and report to me
where we are in this matter.  Also contact Cliff Kraft at Niro's
office to see what their take is on this development.  As you
suggested, it makes sense to discuss with them what they may
recommend in terms of the road blocks by [Examiner] Fan
Tsang that continue to thwart my efforts in securing
allowance of the patents.  My sense is that he is not finished
with these applications yet.

(Emphasis in the original.)

The patents-in-suit were issued in September and December of 2007.

Thereafter, during 2008 and 2009, IW filed a series of infringement actions in this

court.[2]  IW has asserted that settlements in these actions have amounted to as

much as $23,000,000.

The specific infringement action in this case was filed on May 14, 2009.

The Amended Complaint, filed on August 6, 2009, alleges in part:

3.  Daniel Henderson is the founder of Intellect
Wireless, and the sole inventor of the patents-in-
suit.  Mr. Henderson has been awarded 25 United
States patents with several more pending that relate
to picture/video messaging in wireless devices such

---

[2]*See **Intellect Wireless, Inc. v. T-Mobile USA, Inc.**, No. 08 C 1215
(N.D. Ill.); **Intellect Wireless, Inc. v. LG Elec., Inc.**, No. 08 C 1350 (N.D. Ill.);
**Intellect Wireless, Inc. v. Samsung Elec. Co.**, No. 08 C 5873 (N.D. Ill.).

as PDA's, portable computers and cellular phones.
Mr. Henderson's prototype for a wireless picture
phone device was received as part of the permanent
collection of the Smithsonian Institution in the
National Museum of American History. . . .

On November 6, 2009 Henderson sent an email message to Niro

attorneys, stating in part:

The product named intellipager and intellect was
intended to connote that there was more information sent to a
user than just numeric paging data, and more efficiently sent
in an automatic fashion.  After researching the costs to build
products, and due to limited finances, I decided to construct a
prototype myself using a numeric pager manufactured by
NEC and enclosing it in a prototype case along with a Sharp
pocket autodialer.  This device did not actually receive caller
id automatically from the telephone network as there was no
provision for it by the pager company I used at the time, but
the basic idea for caller id with a name to a wireless device
was demonstrable where upon receipt of a page within the
device, a screen pop would show both the telephone number
and the name of the person calling that was associated with
the number that had called.  During the demonstration I also
showed them a mock-up of the Intellect device that included a
picture of someone sending a message, which was a picture of
myself.  It did not operate but was used in conjunction to
demonstrate what the invention could include.

On November 11, 2010, HTC filed a counterclaim specifically alleging that false declarations were filed by the inventor stating, among other things, that the claimed invention had been reduced to practice and falsely claiming diligence.

Thereafter, during discovery, specific questions were asked about the claimed invention. In February 2011, Niro attorneys informed Henderson: "We're not taking the position that it wasn't an actual reduction to practice. We're trying to be more circumspect than that and convey the impression that we're unsure." In IW's Third Supplemental Response to HTC Corporation's First Set of Interrogatories signed by Niro attorneys, but not Henderson, it is stated at page 7: "Mr. Henderson did build a prototype with functional electronics that he believed was an actual reduction to practice of United States Patent No. 6,278,862."[3] Based on what Henderson had previously stated to his attorneys, this was a false statement. Henderson knew that the mock-ups "did not operate." He told this to the attorney representing him before the PTO and to Niro. Notwithstanding critical knowledge, Niro continued to take the position in successful opposition to

---

[3]Niro points out that the Supplemental Response states that the invention claimed in the later '186 and '416 patents, involved in this case, were never reduced to practice. That was not an issue in the inequitable conduct trial where the focus was on events in 1993 relating to an earlier patent.

HTC's motion for summary judgment, and unsuccessfully at trial, that the declarations were not false. Niro led Henderson to testify at trial:

> Q. It says, I'm replacing the declaration because I think the earlier one--this is your story, right, that I am replacing the declaration because I believe the earlier one may be construed to be inaccurate, correct?
>
> A. Yes
>
> Q. And in your heart, you didn't believe it was inaccurate, correct?
>
> A. That's correct.

Additional testimony by Henderson at trial obfuscating the nature of what he claimed to have reduced to practice is quoted in the court's opinion. *See IW v. HTC*, 910 F. Supp. 2d at 1068-70.

Niro attorneys and Cliff Kraft have each presented declarations stating that Tendler did not consult them about the February 10, 2007 message from Henderson to Tendler. They state that they did not see the actual February 10 email until it was produced in recent discovery. Tendler has also filed a declaration stating that he did not consult with Niro or Kraft about the message. Tendler has also stated that he did not turn over his entire file to Niro, which is contrary to testimony he gave in a pretrial deposition. Crediting these

declarations, however, does not excuse the presentation of Henderson's false

testimony at trial and the extension of this litigation on appeal.

HTC also argues that, in addition to the evidence relating to knowledge

of Henderson's false statements, a basis exists to draw a negative inference with

respect to Niro's knowledge, because Niro has not revealed all of its documents

with respect to preparation for trial. After it clearly appeared that Henderson knew

of his false statements, it was ruled that no attorney-client privilege prevented

discovery of all facts and documents relating to the trial of inequitable conduct.

*See* ***Intellect Wireless, Inc. v. HTC Corp.***, 2014 WL 1797488 (N.D. Ill. May 6,

2014). Nevertheless Niro has not produced all of the documents sought, claiming

relevancy as to some and that some documents are in the possession of IW. HTC

is correct that these reasons are insufficient and warrant a conclusion that the

withheld documents would support HTC's position. *See* Fed. R. Civ. P.

37(b)(2)(A)(i). *Cf.* ***Residential Funding Corp. v. DeGeorge Fin. Corp.***, 306 F.3d

99, 107 (2d Cir. 2002).

The court may award attorney fees under 28 U.S.C. § 1927 "when an

attorney has acted in an 'objectively unreasonable manner' by engaging in 'serious

and studied disregard for the orderly process of justice,' ***Pacific Dunlop Holdings,***

*Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994); pursued a claim that is 'without a

plausible legal or factual basis and lacking in justification,' *id.*; or 'pursue[d] a path

that a reasonably careful attorney would have known, after appropriate inquiry, to

be unsound,' *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491

(7th Cir. 1989)." *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720

(7th Cir. 2006).

Daniel Henderson clearly knew that he had not invented (or reduced to

practice) a wireless picture phone or wireless identification device in 1993,

notwithstanding contrary statements to the PTO (and coincidentally false

representations to the Smithsonian Institution apparently to strengthen his

litigation position). He revealed this to his patent attorney in 2007 and specifically

to Niro in 2009 if not before. Relying on the adverse inference to be drawn from

Niro's failure to disclose documents, it is found that Niro was aware of the false

statements prior to the filing of the present lawsuit. Therefore, Niro is liable for

all reasonable attorney fees and expenses incurred by HTC, not just those incurred

after the November 6, 2009 email from Henderson to Niro.[4] The false presentation

---

[4]HTC also contends that Niro concealed a critical document and made misrepresentations during settlement proceedings conducted by a magistrate judge of this court. Because of the findings made, it is unnecessary to consider the merits of this contention.

of Henderson's activity and knowledge justifies making Niro jointly and severally liable with IW for attorney fees and costs.

## II. Fees and Costs Allowed

HTC seeks fees and related expenses totaling $4,801,476.44. IW and the Niro attorneys contend HTC is entitled to no more than $2,357,682.36.[5] Additionally, HTC has submitted a bill of costs seeking to tax $143,887.37 in costs. The bill of costs was submitted and briefed shortly after the judgment dismissing this case was entered. It seeks costs as against IW only. After the bill was submitted and the appeal of the dismissal was resolved, further discovery was taken and the issues of IW's and the Niro attorneys' liability for fees and expenses was briefed. Based on the ruling that the Niro attorneys are liable under § 1927 for causing unnecessary litigation, the Niro attorneys are also liable for the requested costs. *Dowe v. Nat'l R.R. Passenger Corp.*, 2004 WL 1393603 *4

---

[5]The Niro attorneys submitted to HTC their Local Rule 54.3 objections to the fee request and plaintiff adopted the same objections. Consistently, the brief opposing defendants' actual motion for fees was submitted in IW's name, but it is stated therein that IW "relied upon its former trial counsel Niro, Haller & Niro, Ltd. in preparation of this pleading." IW's opposition to fees therefore should be treated as being the Niro attorneys' opposition as well. As regards the amount of fees and expenses, IW and the Niro attorneys will be referred to jointly as the "Opposition."

(N.D. Ill. June 22, 2004) (amounts awardable under §1927 include taxable costs). Today's ruling will not determine the specific dollars to be awarded as fees and expenses. Instead, the court will rule on the issues raised and leave it to the parties to apply those rulings to the specific amounts claimed.[6] It is expected that the parties will be able to reach agreement as to the specific application and possibly reach agreement as to the amounts to be paid without requiring a judgment to be entered. If a full accord cannot be reached, the court will thereafter resolve any remaining issues.

The first issue to address is what is before the court. Local Rule 54.3 requires that parties exchange information and attempt to resolve disputes regarding the amount of fees prior to the filing of a motion seeking those fees. If a full resolution cannot be reached, the parties are to file a joint statement setting forth their remaining disputes. N.D. Ill. L.R. 54.3(e). "Unless otherwise allowed by the court, the motion and any supporting or opposing memoranda shall limit their argument and supporting evidentiary matter to disputed issues" in the joint statement. *Id.* 54.3(f). As expressly stated in the Rule itself, this is not an absolute rule, but one that can be varied as "otherwise allowed by the court." The

---

[6]To the extent any particular billed entry is rejected for more than one reason, only one hourly reduction should be made.

Opposition complains that HTC's present motion includes amounts that were not included in the joint statement. The additional amounts, however, were not yet finalized at the time of the joint statement or concern work performed thereafter, that is, the briefing of the fee motions. HTC cannot be expected to have included in the joint statement amounts that were concurrent with and subsequent to the joint statement. The additional amounts that are presently claimed by HTC will be considered. The final amount awarded to HTC should include reasonable fees incurred in order to obtain the fee award. When the issue is finally resolved, HTC must estimate the fees for its final work. On the other side, HTC complains that the Opposition's present contentions vary from objections raised in the joint statement, including seeking further reductions and lower billing rates. The issues presently raised still fall within the same general contentions previously raised. An extensive collection of billing documents had to be analyzed and the Opposition contends some were not timely provided before the joint statement was due. The arguments and objections presently raised by the Opposition will all be considered.

As to the § 285 fee award against IW, Federal Circuit law applies including as regards the calculation of the amount of fees. ***Special Devices, Inc. v.***

*OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001); *Innovention Toys, LLC v. MGA Entm't, Inc.*, 2014 WL 1276346 *2 (E.D. La. March 27, 2014); *Nilssen v. Gen. Elec. Co.*, 2011 WL 633414 *6 (N.D. Ill. Feb. 11, 2011); *SunTiger Inc. v. Telebrands Adver. Corp.*, 2004 WL 3217731 *7 n.2 (E.D. Va. March 29, 2004); *Eli Lilly Co. v. Zenith Goldline Pharm., Inc.*, 264 F. Supp. 2d 753, 757-58 (S.D. Ind. 2003).  As to the § 1927 award against the Niro attorneys, however, Seventh Circuit case law applies both as to whether to award fees and as to the method of calculating fees.  *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010); *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003); *Wiley v. RockTenn CP, LLC*, 2014 WL 4929447 *6 (E.D. Ark. Sept. 30, 2014); *SunTiger*, *supra*.  Even as to the § 285 award, however, the parties agree that this court should look to Seventh Circuit law on issues that the Federal Circuit has not addressed.  *Zenith Goldline*, 264 F. Supp. 2d at 758.  Both circuits approve use of the lodestar method in determining a reasonable fee.  *Innovention*, *supra*; *Rey v. Vertrue Inc.*, 2013 WL 4718764 *8 (N.D. Ill. Sept. 3, 2013); *Franklin v. H.O. Wolding, Inc. Group Health & Welfare Plan*, 2004 WL 3059789 *11 (S.D. Ind. Dec. 8, 2004).  In both circuits, the district court has considerable discretion in determining a reasonable fee.

*Bywaters v. U.S.*, 670 F.3d 1221, 1228 (Fed. Cir. 2012); *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010).

The parties disagree as to the appropriate hourly rates for the attorneys and legal staff. Relying on Seventh Circuit case law, defendants contend the rates actually charged and already paid by them are presumed to be reasonable. The Opposition contends that Federal Circuit law does not support use of such a presumption and provides that the appropriate rates to use are those for the Chicago market (where this case is pending), not the rates charged in the non-Chicago markets (San Diego and San Francisco) where HTC attorneys and staff representing most of the billed time are based.

The Seventh Circuit holds that the rate actually charged by an attorney is presumed to be reasonable unless the opponent meets its burden of showing that the rate is not reasonable. As regards an out-of-town attorney, the rate charged is still generally used, but the district judge may, but is not required to, exercise discretion to lower the billing rate if the opponent shows that local counsel could have provided comparably effective legal services and the rate of the out-of-town practitioner was higher than the local market rate. *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 489-90 (7th Cir. 2009). The Seventh

- 16 -

Circuit also recognizes that the community of practitioners to be considered may be a national market. *Id.* at 490. The Federal Circuit, however, generally applies the appropriate rate for the forum in which the case has been filed, unless it is shown that most of the work was actually performed in offices located elsewhere and no local attorneys possessed the special expertise necessary for the particular case. *Bywaters*, 670 F.3d at 1233-34; *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1348-49 (Fed. Cir. 2008); *Masias v. Sec'y of HHS*, 634 F.3d 1283, 1288 (Fed. Cir. 2011). HTC has not attempted to meet this latter exception. In order to avoid the inconsistency of using different rates for the § 285 award against IW and the § 1927 award against Niro, discretion will be exercised in determining the § 1927 award and appropriate rates for patent attorneys in the Chicago market will be used.

The Opposition cites to Chicago-area rates disclosed in the American Intellectual Property Law Association's ("AIPLA") 2013 economic survey. AIPLA's surveys have been considered in other cases. *See, e.g.*, *Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 987 (Fed. Cir. 2000); *Prenda Law, Inc. v. Godfread*, 2014 WL 2699817 *3 (N.D. Ill. June 12, 2014); *Zenith Goldline*, 264 F. Supp. 2d at 766.

The proposed hourly rates are $365.00 for associates and $497.00 for partners, with the hourly rates for legal assistants being $163.61 and $135.00. HTC contends the rates supported by the AIPLA survey are inappropriate because they lump together all intellectual property practitioners without separating out patent litigators, which HTC contends would be higher. HTC, however, offers no alternative source for Chicago rates. Moreover, the rates proposed by the Opposition are actually slightly higher than the rates HTC claims for its Chicago attorneys.[7] The hourly rates proposed by the Opposition are to be used in calculating the lodestar.

HTC also requests prejudgment interest. The Opposition agrees prejudgment interest would be appropriate under Federal Circuit law, but disputes that it should be compounded. There also may be a disagreement as when

---

[7]Paul Korniczky's average billed rate was $485.81 and associate Wittman's average billed rate was $355.00. Presently, neither side points to the rates billed by IW's Chicago counsel as a basis for determining an appropriate Chicago rate. At page 2 of their August 18, 2014 letter setting forth contentions as part of the Local Rule 54.3 process (hereinafter "Contention Letter"), the Opposition listed rates billed by Niro firm attorneys. All of the Niro firm associates and partners with less than six years as partners billed at less than $365.00 per hour. Attorneys who had been partners less than ten years billed at $400.00 per hour, while more experienced partners billed at $525 to $600 per hour, with one or more partner of 25 plus years billing at $840 per hour. The rates based on the AIPLA survey are sufficiently consistent.

prejudgment interest ends and postjudgment interest begins. The Opposition contends prejudgment interest ends when judgment was entered dismissing the case, not when a judgment for attorney fees is actually entered. However, actual billed rates are not being awarded. Instead, all the hours appropriately billed are being awarded at current rates,[8] not historical rates. Employing current rates to calculate the fee award adequately compensates HTC for the time-value of the money. *Trs. of Chicago Plastering Inst. Pension Trust v. Cork Plastering, Inc.*, 2008 WL 728897 *2 (N.D. Ill. March 18, 2008). As to expenses that are to be reimbursed, HTC is entitled to prejudgment interest from the date the expense was paid by HTC until the entry of a judgment awarding those expenses. Prejudgment interest is to include compounding. *Premium Plus Partners, L.P. v. Goldman, Sachs & Co.*, 648 F.3d 533, 538-39 (7th Cir. 2011). Monthly compounding, as requested by HTC, is approved. *See Curtis v. Hartford Life & Accident Ins. Co.*, 2014 WL 4185233 *22 (N.D. Ill. Aug. 20, 2014). Unless the parties settle the fee dispute without the need for the entry of a judgment, HTC must provide the court with a prejudgment interest calculation. Any postjudgment interest is to be calculated in accordance with 28 U.S.C. § 1631(b).

---

[8]AIPLA rates from 2013 are as close to current rates as either side has proposed for calculating Chicago rates.

The opposition contends that certain time entries have been "block billed" and therefore a reduction of 81.5 hours should be made. The items listed at pages 105 to 110 of the Contention Letter have been examined. Considering the amount of hours claimed in the fee petition, this is not a substantial number of entries. These entries did not preclude the Opposition from being able to adequately raise issues as to the reasonableness or propriety of claimed hours. No reduction will be made based on blocked billing.

The Opposition contends that 140.25 hours billed by George Kanabe, an experienced partner, as part of preparation for the inequitable conduct bench trial was excessive, redundant, or otherwise unnecessary. Kanabe made no presentation to the court as part of the bench trial. Four attorneys presented the case in court, with assistance from at least three attorneys other than Kanabe. In response, HTC does not establish why the work of Kanabe was necessary, only contending that IW was also billed for the work at the bench trial by a number of its attorneys. HTC has not met its burden of establishing that the time billed by Kanabe was reasonable and necessary. HTC should not be reimbursed for the 140.25 hours billed by Kanabe.

HTC billed 999.25 hours for work on a summary judgment motion seeking summary judgment based on inequitable conduct. The motion was denied. *See Intellect Wireless, Inc. v. HTC Corp.*, 2012 WL 728242 (N.D. Ill. March 2, 2012). Days before the summary judgment motion was initially filed, IW moved to have a one-day trial on inequitable conduct. That motion was denied. The subsequent trial that occurred, after ruling on summary judgment, lasted four days. The Opposition contends that, after its motion for a trial, the continued work on the summary judgment motion was unnecessary. That represents 548.1 billed hours. Although the summary judgment motion was denied, it brought focus to the issue, helping both the court and, presumably, the parties prepare for the subsequent trial. Bringing the motion and continuing to pursue it is found to have been reasonable. HTC will be reimbursed for the hours expended on summary judgment.

The Opposition contends that 2,463.9 hours should be cut in half as duplicative and excessive. However, other than two instances, the Opposition does not identify these hours. Other than the two instances, this objection will not be considered. *See Nilssen*, 2011 WL 633414 *7 (party opposing fee request must provide specific objections). The Opposition contends that 109.25 hours

expended in preparing for Henderson's deposition is excessive. HTC contends this is justified because over eight bankers boxes of documents had to be examined to prepare for the deposition. Presumably, these documents would have had to be examined separately from taking the deposition. Still, the hours seem excessive. They will be reduced by 25%. The other specific objection is time claimed for a motion for fees. HTC sought fees for part of the costs of preparing a motion for leave to amend to add defenses that IW initially indicated it would oppose, but then did not oppose when the motion to amend was presented. *See* Docket Entry [101]. The motion for fees was denied. *Id.* [107]. Approximately 37 hours[9] is billed for the fee motion. The time appears excessive. It is reduced to 20 hours.

On pages 69 to 105 of the Opposition Letter, the Opposition identifies 946.45 hours of billed attorney time that is largely clerical in nature and therefore should have been included in overhead. *See Karr v. Med-1 Solutions, LLC*, 2014 WL 5392098 *3 (S.D. Ind. Oct. 22, 2014); *O'Brien v. Panino's, Inc.*, 2011 WL 3610076 *2 (N.D. Ill. Aug. 16, 2011). The Opposition contends 773.25 hours of these entries (81.7%) should not be awarded. While the Opposition identifies hours per attorney that total 773.25, it does not specifically tie these

---

[9]The Opposition cites to pages 8-10 of its Opposition Letter, but does not provide a total of hours or fees.

totals to the entries.  An examination of the entries though supports that less than 20% of the hours are properly included in a fee petition.  The 773.25 hours identified by the Opposition will not be awarded.

The Opposition contends that 626.35 hours should not be awarded because vague or unsupported.  The Opposition, however, specifically identifies only 14 time entries.  *See* Answer to Fee Motion [Docket Entry 341], Exh. 11. Only these 14 time entries will be considered.  Almost all of these are entries that were entirely or largely redacted by HTC.  While Local Rule 54.3 allows some redaction, the time claim still must be sufficiently identified.  Moreover, this court has consistently and repeatedly denied leave to file any of the fee motions and related pleadings under seal.  *See* Docket Entries 238, 246, 250, 280, 294, 313, 327, 332, 339.  Despite the denial of the motions to seal, the parties have generally failed to file in the public record unredacted versions of their pleadings.[10]  HTC's failure to provide unredacted time records is not a sufficient justification to allow time entries that have not been adequately explained.  Amplification provided in

---

[10]The parties shall not submit any further requests to file any document under seal.  Any further pleadings that are filed must have complete and unredacted versions filed in the public record.

- 23 -

HTC's reply brief has been taken into account.  HTC is not entitled to fees for items 1-4 and 6-12 listed in Exhibit 11 of the Opposition's answer brief.

Time spent attending the claim construction hearing in another IW case filed in this District will not be compensated.  To the extent rulings in that case were relevant to the present case, HTC could have relied on written pleadings and rulings and, if necessary, transcripts.  To the extent the present fee petition contains time for work before the USPTO, such time should not be included in the fee award.  The Opposition has not specifically identified such time in its brief.  To the extent it can specifically identify such time to HTC, such time should not be reimbursed.

Last, the Opposition raises objections to certain expenses.  Only some of the objected-to expenses are identified in the Opposition's Exhibit 15.  HTC has already agreed that it is not seeking reimbursement for some of these expenses.  It also contends that it has not duplicated any items already included in its bill of costs.  As to remaining disputed expenses, HTC is limited to expenses (as well as billable time) for no more than two attorneys attending a deposition.  Absent a showing that cheaper alternatives were not available, HTC is not entitled to reimbursement for first-class airplane tickets.

Also to be considered is the bill of costs.  As to deposition costs, the

Opposition objects to costs related to certain depositions as not being reasonably

necessary.  The Opposition contends that costs related to witnesses whose

testimony concerned infringement or damages should not be allowed because the

case was resolved based on inequitable conduct.  A party, however, cannot be

certain as to what the outcome of the case will be.  To the extent the depositions

were reasonably related to an issue in the case at the time the transcript was

obtained, the reasonable costs of obtaining the transcript are properly included in

the bill of costs; it is not required that testimony from the transcript be used at trial

or otherwise or that the transcript be "absolutely indispensable."  ***Majeske v. City***

***of Chicago***, 218 F.3d 816, 825 (7th Cir. 2000) (quoting ***Barber v. Ruth***, 7 F.3d

636, 645 (7th Cir. 1993)); ***Press Ganey Assoc., Inc. v. Dye***, 2014 WL 1874897 *3

(N.D. Ind. May 08, 2014).  None of the transcript costs will be disallowed based

on the transcripts not being reasonably necessary.[11]

As the parties agree, per page costs of the transcripts are to be limited to

$4.85.  In accordance with Local Rule 54.1, attendance fees for the court reporters

are limited to $110 for a half day and $220 for a full day.  The Livenote, rough

---

[11]The Opposition contends some transcripts were double-counted.  Any
such double-counting should be eliminated.

draft, and deposition exhibit copying costs have not been shown to be necessary and therefore should not be included in the bill of costs. ***SP Tech., LLC v. Garmin Int'l, Inc.***, 2014 WL 300987 *4-5 (N.D. Ill. Jan. 10, 2014). As to Henderson's second deposition and the deposition of John Love, HTC has established a need for expediting so the expediting fee for those transcripts are proper. Except as to Tendler, HTC has not demonstrated a need for videotape depositions of witnesses. The only videotape costs that are to be allowed are those for Tendler's deposition.

The Opposition contends interpreter costs for Taiwanese deponents should not be allowed. As previously held, the depositions were necessary so these costs will not be disallowed based on that general objection. The Opposition also contends that the deponents spoke adequate English and did not need an interpreter. HTC does not respond to this contention. Since the burden is on HTC to show the need for an interpreter, the interpreter costs will not be allowed.

HTC has sufficiently established its need for all the hearing transcripts that were produced. These amounts will be allowed.

HTC does not establish a need for rush service of process other than to contend that the total was still less than the Marshal would have charged.

Nevertheless, the rush fee is only reimbursable if necessary and that has not been shown. The $617.50 in rush fees will not be allowed. HTC does not dispute that $265.50 in unsuccessful service should not be allowed. That amount should also be removed from the bill of costs.

HTC has sufficiently established that $14,058.60 for in-house copying is a reasonable amount.

There is no objection to $298.52 in copying costs at the Smithsonian Museum.

The parties had an agreement to provide documents in a readable electronic format. The costs of such conversion is awardable under § 1920. *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). $31,599.32 for such conversion and bates-labeling is allowed, which takes into account eliminating certain specific objections raised by the Opposition and unopposed by HTC.

HTC has sufficiently established that it is entitled to $7,389.00 for copying patent files and $17,047.49 for trial exhibits. HTC also sufficiently establishes $2,135.52 for demonstrative exhibits and establishing an internet connection for use at trial.

The Opposition objects to travel costs for HTC's expert and two Smithsonian Museum employees who brought for trial the prototype that is presently in the Smithsonian's collection. The amounts for hotel and food are limited to actual costs or the applicable *per diem* rate, whichever is less. 28 U.S.C. § 1821(d); ***Trading Tech. Int'l, Inc. v. eSpeed, Inc.***, 750 F. Supp. 2d 962, 971 (N.D. Ill. 2010). HTC has established the reasonableness of the airfare. The hotel costs for the expert, however, should be limited to $242.00 per night. As to the Smithsonian employees, the court accommodated their presentation of the prototype. One night of hotel costs for each employee, $242.00 times two, is reasonable. Instead of $173.68 for a limousine ride from the airport, HTC is entitled to reimbursement for the reasonable cost of a taxicab ride shared by two persons.

Within one week, the parties shall meet to determine whether they can agree to the amounts that would result from the application of today's ruling to the fee petition and bill of costs. At the next status hearing, the parties shall report the appropriate amounts and a final judgment to that effect will thereafter be entered. If no such agreement can be reached, the parties shall report as to the issues on which they disagree and a briefing schedule will be set to establish a final amount.

Alternatively, if the parties can reach a settlement finally resolving the amounts due, there will be no need to enter a further judgment.

IT IS THEREFORE ORDERED that defendants HTC Corporation's and HTC America's motions for an adverse inference [307, 312] are granted. Defendants' motion to hold plaintiff Intellect Wireless, Inc. and Attorneys Raymond Niro, Paul Vickrey, Paul Gibbons and David Mahalek jointly and severally liable for attorney fees and costs [300] is granted. Defendants' motions for fees and expenses [329, 330] are granted in part and denied in part. Defendants' bill of costs [222] is granted in part and denied in part. A status hearing is set for January 22, 2015 at 2:00 p.m.

ENTER:

_____
United States District Judge

DATED: JANUARY 8, 2015