IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTELLECT WIRELESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> HTC CORPORATION, HTC AMERICA, INC. <br><br> Defendants. | Case No. 09 C 2945 <br><br> Honorable William T. Hart <br> Magistrate Judge Geraldine Soat Brown |

## **MOTION TO RECONSIDER**

A motion to reconsider is appropriate when there has been an error of law or fact upon which a court has based its decision. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Errors of law or fact should be corrected on reconsideration. *Hicks v. Midwest Transit, Inc.,* 531 F.3d 467, 474 (7th Cir. 2008); *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

Here, HTC caused the Court to follow the Second Circuit, not Seventh Circuit, standard for drawing an adverse inference and, hence, to not consider whether the Niro firm lawyers acted in good faith in reliance on the advice and guidance of the undersigned. It also led the Court to make an error of fact in finding that the four Niro firm lawyers failed to act in good faith in producing documents responsive to document requests made by HTC.

The Niro lawyers hired and acted on the advice of the undersigned in collecting and producing documents that responded to HTC's requests consistent with the agreement reached with counsel for HTC on February 20, 2014. Indeed, immediately after the Henderson February 2007 email was produced by Tendler and the Court

asked the Niro firm lawyers to consider the implications of Rule 11 (January 30, 2014 Transcript at 9), they hired the undersigned attorney to represent them so there could be an independent assessment of the facts surrounding their representation of Henderson and Intellect Wireless. From that point forward, they acted on the advice of counsel on everything from the preparation and filing of briefs in response to discovery requests to the production of documents based on counsel's agreement. There was never any "bad faith" withholding, concealment or destruction of any document and the undersigned counsel can personally attest to that fact.

I. **HTC LED THE COURT TO APPLY THE SECOND CIRCUIT STANDARD FOR DRAWING AN ADVERSE INFERENCE**

In its Opinion and Order (Dkt. 343), the Court found that the Niro lawyers had not produced all documents responsive to HTC document requests 1 and 5:

> Nevertheless Niro has not produced all of the documents sought, claiming relevancy as to some and that some documents are in the possession of IW. HTC is correct that these reasons are insufficient and warrant a conclusion that the withheld documents would support HTC's position. *See* Fed. R. Civ. P. 37(b)(2)(A)(i). *Cf. Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

(*Id.* at 10). The Second Circuit standard applied in the *Residential Funding* case is different than the Seventh Circuit standard which requires "bad faith." Indeed, the Second Circuit law argued by HTC is not only the minority rule, but it has recently been rejected in the proposed amendments to the Federal Rules as drafted by the Judicial Conference's Committee on Rules of Practice. In sum, the amendments to Rule 37 that take effect on December 1, 2015 reject the Second Circuit approach used by the Court (*i.e.,* that an adverse inference can be imposed for negligent conduct, that is, not a willful destruction of documents).

The Seventh Circuit has explained that an adverse inference should be made only on "a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence to support the tendered [adverse inference] instruction." *Spesco, Inc. v. General Electric Co.*, 719 F.2d 233, 239 (7th Cir. 1983). *Accord*, *Miksis v. Howard*, 106 F.3d 754, 763 (7th Cir. 1997) ("Because the jury was properly instructed that it could not draw an adverse inference unless it found willful destruction of evidence, we do not find the prejudice necessary to warrant granting a new trial."); *Bracey v. Grondin*, 712 F.3d 1012, 1020 (7th Cir. 2013) ("Bracey bears the burden of showing defendants … destroyed that video in bad faith. That burden has not been met."); *In re Text Messaging Antitrust Litigation*, 2014 WL 2106727 at *6 (N.D. Ill. May 19, 2014) ("The clear message of Seventh Circuit cases like *Bracey* and others is that a showing of bad faith is required….")

On the basis of the erroneous argument made by HTC (i.e., that the Niro lawyers had not produced responsive documents) the Court found them jointly and severally liable for HTC's fees and costs:

> Relying on the adverse inference to be drawn from Niro's failure to disclose documents, it is found that Niro was aware of the false statements prior to the filing of the present lawsuit. Therefore, Niro is liable for all reasonable attorney fees and expenses incurred by HTC, not just those incurred after the November 6, 2009 email from Henderson to Niro. The false presentation of Henderson's activity and knowledge justifies making Niro jointly and severally liable with IW for attorney fees and costs.

(Dkt. 343, pp. 11-12). That finding should be vacated if for no other reason than that HTC has not and cannot show that any Niro firm lawyer acted in bad faith.

## II. HTC'S REQUESTS AND THIS COURT'S ORDERS WERE FULLY SATISFIED -- THE NIRO LAWYERS ACTED IN GOOD FAITH

The undersigned appeared in this case on February 3, 2014 and immediately

went to work to comply with the Court's Order of January 30, 2014. On February 13, 2014, we filed our formal response in compliance with that Order. On February 19, HTC's counsel raised an issue regarding our response and we immediately scheduled a meeting to resolve any issues. That meeting occurred on February 20 outside of the courtroom and following the presentation of our motion to strike. The substance of that meeting was confirmed by e-mail.

A week later, HTC's counsel wrote and addressed the matter of privilege, but agreed to work with us in resolving any discovery issues that remained. In our reply, we confirmed that we would include agreed upon responsive Category 5 documents beyond the 2007 date. Thereafter, on March 3rd, we served our certificate of compliance and identified certain privileged documents. This Court then resolved the privilege issues. Thus, and in response to the Court's Order of May 29, we produced all of the remaining Category 5 documents as previously agreed and as laid out in the attached Time Line of Compliance with Judge Hart's Order (Exhibit A).

The undersigned was directly responsible for the production of responsive documents in this case as trial counsel for the Niro firm and can represent to this Court that the Niro lawyers acted in complete good faith and at my direction in complying with this Court's May 29, 2014 Order. In a nutshell, the undersigned made sure there was full compliance with that Order and in full accord with the agreement reached at the February 20, 2014 discovery conference with counsel for HTC.

**III. THE COURT'S FACTUAL FINDINGS DID NOT CONSIDER THAT THE PRODUCTION OF DOCUMENTS WAS DONE AT THE DIRECTION OF OUTSIDE COUNSEL**

HTC led this Court to erroneously conclude that the Niro firm had not produced "all of the documents sought [by HTC]" (Dkt. 343 at 10). On the basis of this factual

finding, the Court concluded that an adverse inference was warranted (Dkt. 343 at 29). It was not.

Clients who act at the direction and on the advice of outside counsel can hardly be considered to have acted in bad faith. Here, the undersigned was directly responsible for the production of responsive documents in this case as trial counsel for the Niro firm and can represent to this Court that the Niro lawyers acted at my direction in complying with this Court's May 29, 2014 Order (Dkt. 294). In a nutshell, the undersigned made sure there was full compliance with the two Court Orders. Specifically:

- HTC requested documents in ten specific categories quoted at page 3, defendant's adverse inference motion (Dkt. 312 at 2). Responsive documents to those 10 requests were produced at the direction of the undersigned counsel after a complete review of all potentially responsive documents. This happened on June 5, 2014 (Exhibit B);

- HTC then attempted to broadly restate its earlier requests to encompass additional documents like communications with appellate counsel and experts, invoices, phone records, pretrial work product and more. This was done in a letter to the undersigned counsel dated June 11, 2014 (Exhibit C);

- These newly requested documents were not within the scope of the 10 categories and Paul Vickrey so advised HP's and Palm's counsel on June 16, 2014 (Exhibit D);

- HTC and the Sharp defendants both moved for the imposition of an adverse inference based upon documents that were neither requested nor subject to Judge Hart's Order (Dkt. No. 312);

- The undersigned was personally responsible for the Niro lawyers' full compliance with Judge Hart's Orders;

- This Court was led to believe that all responsive documents had not been produced when, in fact, they had been produced.

Most critically, the undersigned counsel confirmed the Niro lawyers' compliance with the HTC document requests in the following email sent to the Niro firm on June 13, 2014 (Exhibit E), which responds to a June 11, 2014 email to me (Exhibit C):

> GUYS -- see below -- WHY DON'T YOU FOLKS DRAFT A POLITE RESPONSE OVER MY SIGNATURE
>
> WE DO NOT WANT TO GET SIDEWAYS WITH EITHER JUDGE HART OR JUDGE PALLMEYER JUST BECAUSE THESE JERKS ARE NOW OVERREACHING ONCE AGAIN.
>
> THE TONE OF THE LETTER CAN BE CONCILIATORY BUT MUST FIRMLY STATE THAT ALL OF THE DOCUMENTS COVERED BY THEIR ORIGINAL 10 CATEGORIES HAVE BEEN PRODUCED.
> Remember -- MONTHS HAVE PAST SINCE OUR EARLIER PRODUCTIONS AND NOTHING HAVING TO DO WITH THE MORE RECENT PRODUCTION OF THE WITHHELD DOCUMENTS JUSTIFIES THIS LATEST GROUP OF NEW REQUESTS
>
> IF OUR PRODUCTION HAD ACTUALLY BEEN DEFICIENT WHEN WE MADE IT MANY MOONS AGO, WE WOULD HAVE HEARD THE WHINING BACK THEN

(Exhibit E, Email of June 13, 2014). I then wrote to counsel for Intellect Wireless on Saturday, June 14, 2014, making the same point:

> SHELLY – LAST TIME WE WENT THROUGH THIS WE CONFIRMED WITH YOU THAT YOU AND DAN HAD PRODUCED EVERYTHING IN RESPONSE TO THE ORIGINAL 10 REQUESTS WHICH WE HAD SUPPLEMENTED WITH A FURTHER PRODUCTION AFTER THAT CONFERENCE WITH THE LEYDIG GUY MANY MONTHS AGO
>
> *THE CURRENT BADER LETTER SETS FORTH ARE NEW AFTER-THE-FACT REQUESTS HAVING LITTLE TO DO WITH FEES*
>
> IF THESE REQUESTS WERE IN ANY SENSE RELEVANT NOW AND IF THEY WERE PART OF THE ORIGINAL 10, THEY WOULD HAVE RAISED THESE MATTERS BACK ON FEBRUARY 17TH WHEN WE MET AND CONFERRED AND AGREED TO SUPPLEMENT OUR EARLIER RESPONSES.
> PLEASE REVIEW THE ATTACHED – YOU WILL SEE WHAT I MEAN
>
> DO YOU MEAN TO TELL ME THAT THEY WOULD NOT HAVE RAISED THIS NEW ARGUMENT ABOUT THEIR NEWLY CONTRIVED THEORY

ABOUT THE SCOPE OF THE REQUESTS BACK IN FEBRUARY OR MARCH IF THE ORIGINAL 10 REQUESTS ACTUALLY MEANT WHAT THEY NOW <u>PRETEND THEY SAY</u>.

(Exhibit F). At my direction, Mr. Vickrey then wrote HTC's counsel confirming the production of all responsive documents in accordance with my June 13, 2014 email:

> As you know, we produced responsive documents and submitted other responsive documents to Judge Hart for *in camera* inspection. All such documents have been produced, and they establish what you refused to believe in your January 14, 2014 email: Nobody at the Niro firm knew about the February 9, 2007 declaration and/or its inaccuracies prior to filing suit.

(Exhibit D, p. 2).

The undersigned counsel has been a member of the trial bar of this Court for more than 50 years and has served as Chairman of the Illinois Judicial Inquiry Board, Chairman of the American Bar Association Standing Committee on Professional Discipline and Vice Chairman of the ABA Litigation Section on Professional Responsibility. I have also participated in the drafting, implementation and updating of the ABA Model and Illinois Rules of Professional Conduct.

As an officer of this Court and the attorney of record for the Niro firm in this case, I would never have permitted the Niro firm lawyers to withhold from production any properly requested documents. The undersigned can unequivocally represent to this Court that at no time did he or any member of the Niro firm ever withhold any documents they believed were responsive to the 10 requests made by HTC in this case. They also believed, based upon my efforts, that there was full compliance with the applicable Court Orders. Hence, there is simply no basis for the drawing of any adverse inference based upon the failure to timely produce documents.

Attached is the undersigned's March 3, 2014 Certification of Compliance pursuant to the agreement Mr. Kulwin and I reached with HTC's counsel. As noted, the Niro lawyers relied on outside counsel's efforts in satisfying their discovery obligations and could not and did not act in bad faith. Further, HTC's counsel received copies of each of these documents -- the majority of the documents (i.e., some 60) cover a time frame post 2007 through 2012.

## IV.    FOOTNOTE 3 ON PAGE 8 OF THE COURT'S ORDER IS INCORRECT

The Niro lawyers pointed out that they promptly answered an interrogatory notifying HTC that Mr. Henderson did *not* have an actual reduction to practice. In response, the Court made an error of fact in this important ruling:

> Niro points out that the Supplemental Response states that the invention claimed in the later '186 and '416 patents, involved in this case, were never reduced to practice. That was not an issue in the inequitable conduct trial where the focus was on events in 1993 relating to an earlier patent.

(Doc. No. 343, Opinion and Order at p. 8, n. 3). The inequitable conduct trial was focused both (1) on Mr. Henderson's false statement in his Rule 131 declaration – submitted to the Patent Office in February of 2007 in the prosecution of the '210 patent – and (2) on the subsequent, "corrected" Rule 131 declaration which he filed in all of his pending applications, including the applications resulting in the issuance of the '186 and '416 patents that were also pending in 2007. Contrary to the Court's finding, the '186 and '416 patents were at issue in the inequitable conduct trial. Intellect actually sued HTC for infringement of the '186 and '416 patents, which is why Intellect specifically identified those patents in the Interrogatory Response. The specifications in all three patents are identical; the '186 and '416 patents claimed a device, while the '210 patent claimed methods for that device. There could not have been an actual reduction to

practice of the '210 patent without an actual reduction to practice of the '186 and '416 patents. Moreover, HTC argued that all of the co-pending applications should be treated as a single prosecution. This clear error of fact should also be corrected by deleting footnote 3 on page 8. The prompt interrogatory response saying Mr. Henderson had not reduced his invention to practice is, in fact, further evidence of the Niro lawyers' good faith.

**V.     CONCLUSION**

In short, there was no bad faith withholding or destruction of any documents and, under the controlling legal standard of the Seventh Circuit, an adverse inference should not be drawn. For these reasons, the Niro firm lawyers respectfully requests that the Court reconsider and vacate its Order finding them jointly and severally liable for an award of fees and costs.

                                        Respectfully submitted,

Dated: March 13, 2015                    */s Robert P. Cummins*
                                              Robert P. Cummins (IL Bar No. 557838)
                                              Norman, Hanson & DeTroy LLC
                                              Two Canal Plaza, P.O. Box 4600
                                              Portland, Maine  04112-4600
                                              rpc@cumminslawfirm.com
                                              (207) 553-4712
                                              Counsel for Niro, Haller & Niro.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 13, 2015 the foregoing

**MOTION TO RECONSIDER**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

| | |
|---|---|
| Stephen S. Korniczky (skorniczky@sheppardmullin.com) Martin R. Bader (mbader@sheppardmullin.com) Graham M. Buccigross (gbuccigross@sheppardmullin.com) Matthew M. Mueller Sheppard, Mullin, Richter and Hampton LLP 12275 El Camino Real, Suite 200 San Diego, CA  92130 Telephone:  858-720-8900 Facsimile:    858 509-3691  ***Attorneys for HTC Corporation and HTC America, Inc.*** | Paul J. Korniczky (pkorniczky@leydig.com) Leydig, Voit & Mayer, Ltd. 180 N. Stetson Avenue Suite 4900 Two Prudential Plaza Chicago, IL  60601-6731 Telephone:  312-616-5600 Facsimile  :  312-616-5700 (fax)  ***Attorneys for HTC Corporation and HTC America, Inc.*** |

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/ Robert P. Cummins
Attorney for Niro, Haller & Niro