IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INTELLECT WIRELESS, INC., | |
| Plaintiff, | Case No. 1:09-cv-02945 |
| v. | Honorable Judge William T. Hart |
| HTC CORPORATION and HTC AMERICA, INC., | Magistrate Judge Geraldine Soat Brown |
| Defendants and Counter-Claimants. | |

## DEFENDANTS HTC CORPORATION AND HTC AMERICA, INC.'S OPPOSITION TO MOTION TO RECONSIDER

HTC Corporation and HTC America, Inc. (collectively, "HTC") oppose Niro's Motion to Reconsider. Niro's motion does nothing more than rehash the same arguments it made in its prior briefing. A motion to reconsider is "an extraordinary remedy." *3SM Realty & Dev., Inc. v. Fed. Deposit Ins. Corp.*, 393 Fed. Appx. 381, 384 (7th Cir. 2010). Under Federal Rule of Civil Procedure 60, a motion to reconsider is "designed to address mistakes attributable to special circumstances." *Id.* (quoting *Eskridge v. Cook County*, 577 F.3d 806, 809 (7th Cir. 2009)). There is nothing special here that warrants granting such an extraordinary remedy.

Henderson and Tendler candidly discussed the fraud they committed on the PTO in a series of emails in 2007 – emails that had been withheld during discovery prior to trial. In those 2007 emails, Henderson and Tendler both agreed to contact Niro immediately to get Niro's input on how to deal with the fraud. After HTC obtained these revealing "smoking gun" emails from the Tendler disciplinary proceeding, it immediately sought documents from Niro to further determine the scope of Niro's knowledge of and involvement in the fraud. Rather than

voluntarily producing the documents that could clear Niro's involvement, Niro refused to cooperate, forcing the Court to issue two orders instructing Niro to produce several categories of documents. (Dkts. 258, 291.) Niro repeatedly refused to produce the vast majority of the requested documents.

Niro did, however, produce a very limited number of documents. Remarkably, even these limited documents that it did produce demonstrate that (1) Henderson explicitly told Niro that the alleged prototype could not receive caller-ID and did not work, and (2) Niro prepared discovery responses that intentionally obfuscated the fact that Henderson never actually reduced his invention to practice. (Exs. 1–2 [Nov. 9 email; Feb. 2010 email].) Indeed, in one email Niro produced, Niro remarks that its discovery responses are designed to "be more circumspect" and "convey the impression that [Niro and Henderson were] unsure" whether there was an actual reduction to practice. (Ex. 2 [Feb. 2010 email].) These emails alone demonstrate that Niro knew of the fraud and participated in concocting the story Henderson told at trial. More importantly, given the very serious nature of these allegations, if the other withheld documents would have exonerated Niro, undoubtedly, Niro would have produced those documents. There is no other reasonable conclusion that the Court can draw based on this record.

The numerous categories of highly relevant, responsive documents that Niro failed to produce despite the Court's repeated orders to do so further support the Court's Order.[1] When faced with Niro's blatant disregard of two Court orders to produce documents, the Court was more than justified in finding an adverse inference that Niro did not produce these documents

---

[1] Niro's argument otherwise is frivolous and demonstrates the intransigence that led to the adverse inference determination in the first place. The Court has repeatedly found that Niro has not produced documents responsive to HTC requests, "Nevertheless Niro has not produced all of the documents sought." (Dkt. 343 at 10.) Indeed, the Court's Order awarding fees against Niro is the ***third time*** the Court held that Niro is withholding documents that it should have produced. (*See* Dkts. 258, 291, 343.)

because they would be prejudicial to Niro's position. The Court should deny the Motion to Reconsider for at least the same reasons that it granted the Adverse Inference Motion and the Motion for Fees against Niro.

This litigation has been going on for over six years. Niro never should have filed this case. HTC has been forced to incur over $5 million in fees and costs for a lawsuit that Niro and Intellect Wireless, Inc. ("IW") knew was baseless. Meanwhile, IW collected approximately $25 million in licensing fees from the wireless industry and Niro likely received an $8-10 million cut for its part in the scheme to shakedown the wireless industry. This latest motion only serves to increase further HTC's fees and delay its ability to collect them. Niro and IW have dragged out this litigation for six long and expensive years – this case has reached the point where it needs to end.

**I.      Niro Withheld Documents After the Court Twice Ordered Them Produced**

On January 14, 2014, after receiving the "smoking gun" Henderson email, HTC sought documents related to Niro's knowledge and participation in Henderson's fraud. (Ex. 4 [2014-01-14 Email 1 from Buccigross]). On January 21, 2014, after Niro refused to produce the documents, HTC filed its motion to compel documents from Niro, which included ten specifically enumerated categories of documents:

1. All documents relating to Niro's knowledge of the veracity of the Rule 131 declarations during the prosecution of the patents-in-suit.

2. All communications between Niro and Henderson and/or Tendler regarding the Rule 131 declarations prior to filing this lawsuit against HTC.

3. All documents relating to when Niro first became aware of the Rule 131 declarations.

4. All documents relating to when Niro first became aware that the February 9th Rule 131 declaration was false or inaccurate.

5. All documents relating to any advice and/or consultation that Niro provided to Henderson or IW regarding the Rule 131 declarations

during the prosecution of any of Henderson's or IW's patent applications.

6. All communications between Niro and Cliff Kraft regarding the Rule 131 declarations prior to filing this lawsuit against HTC.

7. Phone records from February 2007 for any calls between the Niro firm and IW, Henderson, and/or Tendler.

8. All communications between the Niro firm and IW, Henderson, and/or Tendler during January through May 2007.

9. Invoices and/or any records of time spent by the Niro firm relating to work for Henderson and/or IW from January through May 2007.

10. Copies of any calendar appointments relating to Henderson, IW, and/or Tendler from January through May 2007.

(Dkt. 254.) At the January 30, 2014 hearing on HTC's Motion to Compel, HTC explained that it was seeking, among other things, "all communications [Niro has] had about these [sic] unenforceability issue with Mr. Henderson and Tendler and Intellect and anyone else." (Ex. 5 [2014-01-30 Transcript] at 6–7.) The Court ordered Niro to produce documents responsive to each of the ten requests and warned Niro at that time that sanctions were possible if Niro failed to produce documents. (Dkt. 258; Ex. 5 [2014-01-30 Transcript] at 9–10.)

Despite the Court's warning and the serious nature of the allegations, on February 13 and 18, 2014, Niro only partially responded to each of the ten discovery requests and decided to withhold a large number of responsive documents. (Exs. 6–7 [2014-02-13 Niro Discovery Response; 2014-02-18 Niro Discovery Response].)

On February 19, 2014, HTC immediately notified Niro of the deficiencies in its production in light of the Court's Order. (Exs. 3, 8–9 [2014-02-19 Bader Email 1; 2014-02-19 Bader Email 2].) HTC specifically pointed out that the Court's Order covered documents through 2013, which Niro was withholding, but Niro professed its ignorance of the scope of the Court's Order. (*Id.*)

During February and March, HTC repeatedly sought additional documents from Niro that were within the scope of the Court's Order. (*See* Exs. 10–11 [2014-02-27 Email Chain; 2014-03-12 Letter to Niro].) Instead of complying, Niro repeatedly stonewalled HTC. (Ex. 10 [2014-02-27 Email Chain].)

Thus, on March 27, 2014, HTC was forced to file a second motion to compel the same documents the Court already ordered produced, including documents that Niro was withholding based on privilege. (Dkt. 276.) On May 6, 2014, the Court again ordered production of all documents responsive to HTC's ten requests and held that the attorney–client and work-product privileges do not apply based on the crime-fraud exception. (Dkt. 291.) Niro refused to comply with the Court's second order and, on June 11, 2014, HTC notified Niro of its deficient responses and again explained the scope of its requests. (Ex. 12 [2014-06-11 Letter to Niro].) HTC described in excruciating detail categories of documents that exist, but that Niro has not produced, including:

- Any work product relating to the declarations, HTC's inequitable conduct allegations, Henderson's intent and/or the materiality of the declarations, including without limitation in opposing HTC's motion for summary judgment and/or in preparing for trial. In fact, IW and Niro failed to produce a single document relating to its opposition to the motion for summary judgment and/or its trial preparation on these critical issues in the case for which any privilege no longer attaches. …

- In Niro's opposition to HTC's motion to compel the production of allegedly privileged documents (Dkt. No. 285), Niro represented that law professors studied the prosecution histories of the Henderson patents and HTC's claims of inequitable conduct. However, Niro and IW failed to produce a single communication with the professors or any of their analysis.

(*Id.* at 2–3.) Niro apparently did not read this letter until June 13, 2014. (Dkt. 357-5.) Then, despite the very serious nature of this case, Niro's counsel investigated and considered the issues raised in the letter for only about 30 minutes, utterly disregarded HTC's request, and summarily

concluded that they were "new requests." (*Id.* (comparing the time-stamp of the last two Cummins emails).) Instead of seriously considering the scope of the documents the Court ordered produced, and consistent with Niro's stonewalling and cavalier attitude towards its discovery obligations, Niro simply dismissed HTC's counsel as "JERKS" and refused to produce additional documents. (*Id.*)

After receiving Niro's response that HTC was allegedly making "new" requests, on June 14 and 16, 2014, HTC informed Niro yet again that these were the same documents that HTC had sought since January 2014, and that the Court had twice ordered Niro to produce. (Exs. 13–14 [2014-06-14 Bader Email; 2014-06-16 Buccigross Email].)

One week later, frustrated by Niro's continued stonewalling – by this time having informed Niro at least ten times about the scope of its document requests – HTC filed its Motion for Adverse Inference. (Dkt. 307.)

**II.**    **Argument**

    **A.**    **Niro Cannot Demonstrate That This Is an Extraordinary Situation That Justifies Granting a Motion for Reconsideration**

A motion to reconsider under Federal Rule of Civil Procedure 60 can be brought under six grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence …;
> (3) fraud …, misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; … or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A motion to reconsider is "an extraordinary remedy." *3SM Realty*, 393 Fed. Appx. at 384. In fact, the authority Niro cites holds that a motion for reconsideration should be "rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

Although Niro does not state the ground for its motion, Niro appears to base its motion on an alleged mistake of law. However, Rule 60 is "designed to address mistakes attributable to special circumstances and not merely to [alleged] erroneous applications of law." *See 3SM Realty*, 393 Fed. Appx. at 384 (quoting *Eskridge v. Cook County*, 577 F.3d 806, 809 (7th Cir. 2009)); *Marques v. Fed. Reserve Bank of Chicago*, 286 F.3d 1014, 1017–18 (7th Cir. 2002) ("A legal error by the district court is not one of the specified grounds for [a Rule 60(b)] motion. In fact it is a forbidden ground.")). The authority Niro cites as the basis for a motion to reconsider does not support the broad application Niro gives to it. *See Bank of Waunakee*, 906 F.2d at 1191 (not listing an error of law or fact as a ground for reconsideration, but subsequent changes in the law or facts).[2] Thus, the Court should deny the motion.

Moreover, the Court did not err in its findings or application of the law. Niro rehashes the same arguments it made in its opposition to the Adverse Inference Motion and cites to the same case law as it did in July 2014. (*Compare* Dkt. 318 at 11, *with* Dkt. 357 at 3.) Similarly, there are no new, relevant facts that Niro relies upon since the original briefing on the Adverse Inference Motion. In reality, Niro is simply rehashing its old arguments and further increasing HTC's attorneys' fees. The Court made the correct decision the first time around and Niro cannot meet its burden for reconsideration under Rule 60.

---

[2] If Niro is relying on Federal Rule of Civil Procedure 59 for its motion, Rule 59 is inapplicable to Niro's present motion either because: (1) there is a 28 day deadline to file and Niro filed 64 days after the Court's Order, or (2) it only applies after judgment has been entered, which has not occurred. Fed. R. Civ. P. 59(b), (e). Moreover, under Rule 59, Niro bears the burden of proving "a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). A manifest error "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id.* And Niro cannot base a motion for reconsideration on "new evidence that could have been presented earlier." *Id.* Thus, "Rule 59 is not a vehicle for rearguing previously rejected motions" or to "rehash old arguments." *Id.*

### B. The Court Properly Found an Adverse Inference

#### 1. The Court Applied the Correct Law in Determining an Adverse Inference

The Court applied the correct law in determining that an adverse inference against Niro is warranted under Federal Rule of Civil Procedure 37(b). Rule 37(b) specifically allows for an adverse inference when a party fails to obey a court order:

> If a party … fails to obey an order to provide or permit discovery … the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for the purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence …

Fed. R. Civ. P. 37(b)(2)(A). "Where, as here, the nature of the alleged breach of a discovery obligation is the **non-production of evidence**, a district court has broad discretion in fashioning an appropriate sanction, including … to proceed with a trial and give an adverse inference instruction." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (emphasis added); *see also O'Connor v. Powell*, No. 99 C 6582, 2000 U.S. Dist. LEXIS 8435 (N.D. Ill. June 15, 2000). Contrary to Niro's argument that HTC misled the Court into relying on an improper standard of law, *Residential Funding* is consistent with Supreme Court and Seventh Circuit opinions and Rule 37(b). Both the Supreme Court and the Seventh Circuit have held that "sanctions may be appropriate in any one of three instances—where the noncomplying party acted either with willfulness, bad faith or fault." *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 (1976) (per curiam)). Although the Court cited *Residential Funding* in its Opinion, it is clear that the Court properly relied on Rule 37 in making an adverse inference.

Moreover, in *O'Connor*, the party "failed to obey the court orders and directives to provide discovery," which resulted in the court deeming that liability was established. Similarly, in *Spesco, Inc. v. General Electric Co.*, on which Niro relies, the Seventh Circuit affirmed denial of an adverse inference where the party seeking the inference "failed to allege any intentional acts of misconduct by Spesco **to conceal** or destroy any relevant evidence." *Spesco*, 719 F.2d 233, 239 (7th Cir. 1983) (emphasis added). Thus, Rule 37 and Seventh Circuit precedent supports an adverse inference in the situation, such as here, where Niro has failed to comply with two prior court orders to produce responsive documents.

Finally, the cases cited by Ericsson are not on point. In *Bracey v. Grondin*, 712 F.3d 1012 (7th Cir. 2013), unlike here, the responding party failed to preserve a potentially relevant video prior to litigation and the court denied a motion to compel. *Id.* at 1015–16. None of the individual parties were involved in the decision to not prevent the normal deletion of the video. *Id.* at 1016. In *Spesco*, the court held that evidence withheld was irrelevant, not directly at the heart of the issue being decided here. *Spesco*, 719 F.3d at 239. Finally, the cases Niro cited deal with an adverse inference jury instruction, not the whether a court, as a fact finder, can determine an adverse inference after a party fails to comply with repeated orders to produce documents in response to motions to compel. *Bracey*, 712 F.3d at 1018–19; *Miksis v. Howard*, 106 F.3d 754, 762–63 (7th Cir. 1997); *Spesco*, 719 F.3d at 239. In sum, the Court applied the correct legal standard in determining that an adverse inference is warranted.

### 2. The Court Correctly Determined the Adverse Inference Against Niro

Not only did the Court apply the correct law in determining an adverse inference, but the Court reached the right conclusion based on the facts in this case. It is undisputed that Niro did not produce documents showing its investigation and analysis of the inequitable conduct

allegations, which centers on false Rule 131 declarations. The litany of documents Niro failed to produce includes:

- Any work product relating to the Rule 131 declarations, HTC's inequitable conduct allegations, Henderson's intent and/or the materiality of the declarations;
- A single document relating to IW's opposition to the motion for summary judgment and/or its trial preparation on these critical issues in the case;
- Any pre-suit work product relating to Niro's Rule 11 analysis as it relates to the declarations;
- Any post-suit Rule 11 analysis, including after HTC amended its Answer to include counterclaims of inequitable conduct;
- Any communications between Niro, IW and/or IW's appellate counsel relating to the declarations, HTC's inequitable conduct allegations, Henderson's intent and/or the materiality of the declarations;
- A single communication with the professors, or any of their analysis, related to the investigation Niro claims they performed into the Rule 131 declarations and inequitable conduct;
- Any communications with or about IW's inequitable conduct expert, John Love, or any of his analysis or draft reports.

These few examples of missing documents, which HTC's original requests all cover, demonstrate the blatant disregard that Niro has for the Court's prior orders requiring production and deeming privilege waived. The parties have thoroughly briefed this issue and the Court stated in its most recent Order that Niro withheld documents. (Dkt. 343 at 10.)

Significantly, the correspondence between the parties and HTC's motions to compel demonstrate that from the beginning and throughout the discovery process, HTC sought all documents and communications about the Rule 131 declarations and Henderson's fraud through 2013. (Exs. 3–5, 8–14.) This correspondence, the text of the motions, the hearing transcripts, and the Court Orders all contradict Niro's rehashed argument that HTC expanded the scope of its document requests in June 2014. The scope of these requests has been clear from the beginning and HTC has explained them in great detail to Niro no less than ten times. Yet, Niro preferred to stonewall HTC, refer to HTC's counsel as "JERKS," and take a cavalier approach to HTC's

requests and the Court's orders in an attempt to avoid liability. This cavalier attitude led Niro to dismiss the relevance of HTC's requests within minutes of reading its letters detailing Niro's production deficiencies, rather than seriously investigating the scope of the requests or missing documents. (Dkt. 357-5.) The only reasonable inference for non-compliance is that Niro is hiding documents because they would be prejudicial to Niro's position. As the Court stated, Niro's excuses for its failed production are insufficient to justify withholding the documents in light of the Court's two orders. (Dkt. 343 at 10.)

Niro has also acted in bad faith by repeatedly failing to produce documents and ignoring the Court's Orders. "To find bad faith, a court must determine that the party intended to withhold unfavorable information." *Domanus v. Lewicki*, 284 F.R.D. 379, 388 (N.D. Ill. 2012) (citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998)), *aff'd* 742 F.3d 290 (7th Cir. 2014). The Court made exactly that determination in its previous order. (Dkt. 343 at 10–11.)

Further, "[b]ad faith is found when conduct is 'intentional or in reckless disregard of a party's obligations to comply with a court order.'" *Grochocinski v. Schlossberg*, 402 B.R. 825, 842 (N.D. Ill. 2009) (quoting *Rice v. City of Chicago*, 333 F.3d 780, 785 (7th Cir. 2003)); *see also Marrocco*, 966 F.2d at 224 ("'Bad faith,' for instance, is characterized by conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order."). Here, HTC explained the scope of its document requests on at least ten different occasions. (Exs. 3–5, 8–14.) HTC even explained the scope in court during argument on its first Motion to Compel. (Ex. 5 [2014-01-30 Transcript] at 6–7.) The Court twice ordered Niro to produce these documents and even warned of sanctions based on what Niro produced or failed to produce. (Dkts. 258, 291; Ex. 5 [2014-01-30 Transcript] at 9–10.) Yet, Niro still failed to produce the

documents. To this day, "Niro has not produced all of the documents sought." (Dkt. 343 at 10.) Niro's refusal to produce documents is intentional, no matter what excuse it now proffers.

3. Niro Cannot Hide Behind Purported Mistakes by Its Counsel to Avoid Liability

In a last ditch effort to avoid sanctions for his client, Niro's counsel attempts to deflect blame from Niro to himself.[3] (Dkt. 357 at 1–2, 4–7.) However, the very documents Niro attaches to its Motion belie this valiant effort to deflect the blame. The four Niro attorneys, Ray Niro, Paul Vickrey, Paul Gibbons, and David Mahalek, have over 100 years of combined legal experience. Niro represented itself through the first Court Order requiring production of documents. (*See* Exs. 4–5.) Ray Niro argued against HTC's first motion to compel when HTC explained that it was seeking, among other things, "all communications [Niro has] had about these [sic] unenforceability issue with Mr. Henderson and Tendler and Intellect and anyone else." (Ex. 5 [2014-01-30 Transcript] at 6–7.) Thus, HTC repeatedly explained directly to Niro the scope of the documents it sought. Moreover, Niro, not its counsel, knows exactly what documents it created in its investigation of the Rule 131 declarations and throughout the case as it defended against HTC's inequitable conduct allegations. Niro has no excuse for failing to comply with the Court's Orders, even if, implausibly, its counsel did not recognize the scope of the requests.

Finally, Niro was directly involved with the decision to refuse to produce additional documents throughout the entire post-trial discovery process and after HTC's June letter. Indeed, Niro was asked to ghostwrite a response on behalf of its counsel to HTC's June correspondence. Specifically, Niro's counsel directs Niro to "DRAFT A POLITE RESPONSE

---

[3] Niro does not cite any legal authority in support of its argument that possible mistakes by its counsel prevents it from being liable for failing to comply with multiple Court Orders.

OVER MY SIGNATURE." (Dkt. 357-5.) Niro's counsel even recommends the tone and content of the letter Niro is to draft. (*Id.*) Thus, contrary to the impression that its counsel attempts to create, Niro was directly involved throughout the decision to withhold documents. There is no ground for granting Niro's Motion to Reconsider.

### III. Conclusion

Niro's Motion to Reconsider simply rehashes the same law and evidence from its opposition to HTC's Adverse Inference Motion. The Court applied the correct law and made correct factual findings in its Order finding Niro liable for fees. Niro had numerous opportunities to produce the responsive documents and attempt to exonerate itself, but has refused to do so for over one year. There is no other conclusion that the Court can reach regarding the withheld documents. Moreover, the Court must view Niro's Motion to Reconsider in the context of the litany of evidence showing Niro's misconduct in this case, which the Court previously evaluated in detail. (Dkt. 343 at 1–12.) Although the adverse inference the Court found supports fees against Niro throughout this case, even without the adverse inference the Court was justified in awarding attorneys' fees against Niro based on the additional evidence establishing Niro knew the frivolous nature of this case no later than November 6, 2009. (Dkt. 343 at 7, 11–12.) The Court should deny Niro's Motion to Reconsider.

Dated:  March 26, 2015  Respectfully submitted,

By: /s/ Martin R. Bader
Stephen S. Korniczky
Martin R. Bader
Matthew M. Mueller
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200

San Diego, CA 92130
Tel:       (858) 720-8900
Fax:      (858) 509-3691
skorniczky@sheppardmullin.com
mbader@sheppardmullin.com
gbuccigross@sheppardmullin.com
mmueller@sheppardmullin.com

Paul J. Korniczky
LEYDIG, VOIT & MAYER, LTD.
Two Prudential Plaza, Suite 4900
180 N. Stetson Avenue
Chicago, IL 60601-6731
Tel:       (312) 616-5600
Fax:      (312) 616-5700
pkorniczky@leydig.com

Attorneys for Defendants and Counter-Claimants
HTC CORPORATION and HTC AMERICA, INC.

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served through the Court's ECF filing system on attorneys of record in the case.

Date: March 26, 2015                                            /s/ Martin R. Bader